# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,

              Plaintiff,

v.

CHESAPEAKE APPALACHIA, LLC,

              Defendant.

Civil Action No.

District Court Judge

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Gregory J. Krock
Pa. I.D. No. 78308
Elizabeth M. Thomas
Pa. I.D. No. 322002

**McGUIREWOODS LLP**
Tower Two–Sixty
260 Forbes Avenue, 18th Floor
Pittsburgh, PA 15222–3142
(412) 667–6000 (Telephone)
(412) 667–6050 (Facsimile)
gkrock@mcguirewoods.com
ethomas@mcguirewoods.com

Jonathan T. Blank
Admitted *Pro Hac Vice*

**McGUIREWOODS LLP**
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911
(434) 977–2500 (Telephone)
(434) 980–2222 (Facsimile)
jblank@mcguirewoods.com

*Counsel for Plaintiff Epsilon Energy USA, Inc.*

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
|  | A. The JOAs | 2 |
|  | B. The Settlement Agreement | 3 |
|  | C. Ownership Rights Under the JOAs | 4 |
|  | D. The Proposed Wells | 6 |
|  | E. CHK's Refusal to Cooperate and Allow Epsilon to Access Jointly-Owned Property | 7 |
|  | F. The Koromlan Well Proposal | 11 |
| III. | ARGUMENT | 11 |
|  | A. Epsilon is Likely to Succeed on the Merits Because CHK is Not Meeting its Obligations Under the Settlement Agreement and JOAs and CHK's Interpretation of the Settlement Agreement and JOAs is Wrong. | 12 |
|  | B. Epsilon Will Suffer Irreparable Harm Absent Injunctive Relief | 15 |
|  | C. CHK Will Not Be Irreparably Harmed if Injunctive Relief is Granted | 17 |
|  | D. Granting Injunctive Relief is in the Public Interest | 19 |
| IV. | CONCLUSION | 20 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acierno v. New Castle Cty.*,
    40 F.3d 645 (3d Cir. 1994) ..................................................................12

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*,
    2 A.3d 526 (Pa. 2010) .......................................................................14

*Am. Fed'n of State v. Comm.*,
    417 A.2d 1315 (Pa. Commw. Ct. 1980) ...........................................14

*Campbell Soup Co. v. ConAgra, Inc.*,
    977 F.2d 86 (3d Cir. 1992) ................................................................15

*CBM Ministries of S. Cent. Pa., Inc. v. Pa. Dep't of Transp.*,
    Civ. A. No. 1:15-cv-2147, 2015 WL 7755666 (M.D. Pa. Dec. 2, 2015) ..........12

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*,
    614 F.2d 351 (3d Cir. 1980) .............................................................15

*De Mik v. Cargill*,
    485 P.2d 229 (Okla. 1971) ................................................................16

*Enduro Operating LLC v. Echo Prod., Inc.*,
    413 P.3d 866 (N.M. 2018) ................................................................16

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*,
    No. 3:18-cv-01852 ...............................................................................3

*Green Strip, Inc. v. Berny's Internacionale, S.A.*,
    159 F. Supp. 2d 51 (E.D. Pa. 2001) ................................................19

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
    276 F.3d 160 (3d Cir. 2001) .............................................................12

*Huntley & Huntley v. Borough Council*,
    964 A.2d 855 (Pa. 2009) ..................................................................19

*In the Matter of TT Boat Corp.*,
    Civ.A.–98–0494, 1999 WL 1276837 (E.D. La. 1999) ......................18

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ............................................................... 12

*McCall v. CHK Energy Corp.*,
    817 F. Supp. 2d 307 (S.D.N.Y. 2011),
    *aff'd*, 509 F. App'x 62 (2d Cir. 2013) ................................................. 16

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    C.A. No. 09-125, 2009 U.S. Dist. LEXIS 116520 (W.D. Pa Dec. 15, 2009) .... 17

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    670 F.3d 236 (3d Cir. 2011) ............................................................... 15

*Nerco Oil & Gas, Inc. v. Otto Candies, Inc.*,
    64 F.3d 667 (5th Cir. 1996) ............................................................... 17

*Newlife Homecare Inc. v. Express Scripts, Inc.*,
    No. 3:07cv761, 2007 U.S. Dist. LEXIS 33031 (M.D. Pa. May 4, 2007) .......... 19

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*
    *Consumer Pharm. Co.*,
    290 F.3d 578 (3d Cir. 2002) ............................................................... 18

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990) ............................................................... 18

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
    143 F.3d 800 (3d Cir. 1998) ............................................................... 18

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) ............................................................... 11

*Remaley v. Peoples Nat. Gas*,
    307 Pa. 237 (Pa. 1932) ..................................................................... 15

*Robinson Twp. v. Cmw.*,
    147 A.3d 536 (Pa. 2016) .................................................................... 20

*RoDa Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009) .......................................................... 17

*Steckman Ridge GP, LLC v. Exclusive Nat. Gas Storage Easement*
    *Beneath 11.078 Acres,*
    No. 08cv168, 2008 WL 4346405 (W.D. Pa. Sept. 19, 2008)............................19

*Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC,*
    918 F. Supp. 2d 407 (E.D. Pa. 2013)................................................................19

*Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 0.03 Acres &*
    *Temp. Easement for 0.02 Acres in S. Londonderry Twp., Lebanon Cty., Pa.,*
    No. 4:17-CV-00565, 2017 WL 3485752 (M.D. Pa. Aug. 15, 2017)..................12

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,*
    No. 04-977, 2007 WL 4262725 (M.D.N.C. Nov. 30, 2007) ............................18

*Walsh v. Powell,*
    76 Pa. D. & C. 108 (Pa. Com. Pl. 1951)............................................................15

*Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n,* 894 F.3d 509,
    524 (3d Cir. 2018)..............................................................................................12

## STATUTES

58 Pa.C.S. § 3202.......................................................................................................20

Plaintiff Epsilon Energy USA, Inc. ("Epsilon") submits the following Memorandum of Law in Support of its Motion for Preliminary Injunction.

## I. INTRODUCTION

Epsilon seeks to enjoin Defendant Chesapeake Appalachia, LLC ("CHK") from continuing to blatantly and willfully disregard Epsilon's right to drill new oil and gas wells under the parties' joint operating agreements ("JOAs") and a 2018 Settlement Agreement and Release ("Settlement Agreement"). Epsilon sued CHK in 2018 for similar behavior. In the Settlement Agreement that resolved that lawsuit, CHK agreed that — ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████.

CHK has elected not to participate in four new wells Epsilon proposed under the JOAs. However, CHK refuses to cooperate with Epsilon so that it can proceed with the wells. CHK is denying Epsilon access to a jointly-owned well pad and refusing to sign a document necessary for Epsilon to obtain a permit needed to utilize a joint-owner water source to drill the wells. Despite the Settlement Agreement's unambiguous language, CHK is asserting that it has "veto power" to prevent Epsilon from drilling any well in which CHK elects not to participate. CHK's current interpretation of the Settlement Agreement and JOAs is in bad faith and, if not

abated, will irreparably harm Epsilon's property rights by deteriorating its mineral interests.

## II.   FACTUAL BACKGROUND

### A.   The JOAs

Beginning in 2009, Epsilon and CHK (along with other parties) began entering into JOAs for drilling units covering acreage subject to oil and natural gas leases they would combine (or "pool") for the purposes of oil and natural gas development. On or about February 1, 2010, Epsilon and CHK entered a Farmout Agreement covering the Poulsen North and South Units and incorporating a draft model JOA ("Poulsen JOA"). *See* **Exhibit 1** (the Poulsen JOA appears in Schedule 7.1.2 at 61).

On or about October 18, 2010, Epsilon and CHK entered into JOAs covering the Baltzley South and Baltzley North Units ("Baltzley JOAs"). *See* **Exhibit 2** and **Exhibit 3**. On or about December 16, 2010 Epsilon and CHK entered into a JOA covering the Craige Unit ("Craige JOA"). *See* **Exhibit 4**.[1]

Any working interest owner (a "JOA Party") is entitled to propose the drilling and completion of a well ("Well Proposal"). *See* Exhibits 1-4 (Article VI.1). Upon receipt of the Well Proposal, the other JOA Parties must elect whether they will consent to participate with their working interests. *Id.* CHK is the designated default

---

[1] Collectively, "the Units."

operator to perform well-related operations under each of the JOAs. *Id.* (Article V.A). If CHK consents to participate in the Well Proposal, then CHK acts as the operator. *Id.* (Article VI.2(a)). If CHK does not consent to participate, however, one of the consenting parties can act as the operator. *Id.* In addition, if any JOA Party wishes to propose alternative operations that conflict with the Well Proposal, it has 30 days to do so. *Id.* (Article VI.6).

**B.    The Settlement Agreement**

In September 2018, Epsilon filed a complaint against CHK in this Court styled *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 3:18-cv-01852. Among the allegations in that suit, Epsilon asserted that CHK failed to follow the JOAs' election processes in order to thwart Epsilon's efforts to propose and drill wells. Before an injunction hearing occurred, the parties settled. The Settlement Agreement entered on October 8, 2018 is attached as **Exhibit 5**.

CHK explicitly agreed in the Settlement Agreement that "████████ ████████████████████████████████████████████████ ████████ ." *Id.* at ¶ 8. With respect to any well Epsilon has proposed, CHK further agreed that:



*Id.* at ¶ 8(d).  Accordingly, CHK agreed: ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████

## C.    Ownership Rights Under the JOAs

Under each JOA, the oil and gas interests any JOA Party owns or acquires in the defined geographical area (the "Contract Area") are treated as joint property. Exhibits 1-4 (Article III).  The JOAs further require that CHK grant all other JOA Parties "full and free access at all reasonable times to all operations . . . conducted . . . on the Contract Area." *Id.* (Article V.D.5).  While the JOA Parties "shall be free to act on an arm's-length basis in accordance with their own respective self-interest, [that freedom is] subject [ ] to the obligation of the parties to act in good faith in their dealings with each other with respect to activities hereunder." *Id.* (Article VII.A).

The Wyalusing Creek surface water withdrawal ("Wyalusing Creek") is the Craige well pad's water source. *See* SRBC Letter, **Exhibit 6**.  Epsilon's contractor initially acquired the right to withdraw water from Wyalusing Creek from the Susquehanna River Basin Commission ("SRBC"), and subsequently transferred that water permit into Epsilon's name. *See* Notice of Request for Transfer, **Exhibit 7**.  In the Farmout Agreement, Epsilon conveyed an undivided one-half interest in

4

Wyalusing Creek to CHK. *See* Exhibit 1 (1.1). Exhibit A to the Farmout Agreement sets forth the "Real Property Interests" covered, including the B. Poulsen #1H, B. Poulsen #2H, and Hardic #2H wells, which were drilled and supported by Wyalusing Creek. *Id.* (Exhibit A).

The Farmout Agreement explicitly states the "Real Property Interests" include "[a]ll . . . *permits*, . . . and *all other rights and appurtenances on or used in connection with the Real Property Interests*, Wells. . . described in Exhibit 'A'." *Id.* (1.1.9) (emphasis added). As a permit conveying the right to use the water source Epsilon utilized to drill and support the Poulsen and Hardic Wells, and a right or appurtenance "on or used in connection with the Real Property Interests" described in Exhibit A, the SRBC Wyalusing Creek permit was among the conveyed assets under the Farmout Agreement. Consequently, the jointly-owned Wyalusing Creek permit (and the corresponding right to withdraw water at Wyalusing Creek) constitutes property contributed for joint use under the JOAs.

The JOAs require that "any [ ] facility necessary for the operation and development of the Contract Area shall be included as an integral part of any proposed operation made under Article VI.B of this Agreement . . . . Facility includes, but is not limited to . . . water handling and disposal facilities located within the Contract Area and specifically applicable to the proposed operation." *See* Exhibits 1-4. The consenting parties under the JOAs are required to pay their pro

rata share of the expenses associated with the building, repair, and use of the water facilities in the Contract Area. *See id.* (Article VII.A). A water impoundment and related water facilities were constructed in order to utilize Wyalusing Creek to drill and further develop wells under the JOAs. Accordingly, Epsilon has paid the invoiced amounts issued by CHK in conjunction with water used in the operations of wells as permitted under the appropriate JOA procedures.

### D.    The Proposed Wells

Epsilon shared its growth and production goals with CHK and, in May 2020, disclosed its ideas for proposed wells at the Craige well pad. **Exhibit 8** (May-June 2020). In subsequent communications, CHK continued to push options that did not include Epsilon's suggested wells. *Id.* Epsilon advised that it intended to move forward with the suggested wells in order to ensure it could meet permitting timelines, and reminded CHK that the JOAs authorized Epsilon to proceed with the wells even if CHK did not consent to participate. *Id.* (October 14-15, 2020).

In a separate communication, Epsilon provided CHK with further reason to participate in Epsilon's suggested wells — the JOA Parties would benefit from a 10% discount on the gathering rate. **Exhibit 9** (Oct. 16, 2020; Dec. 16, 2020). Two months later, CHK responded it wanted Epsilon to stop proposing new wells. *Id.* (Dec. 16, 2020) (CHK wanted Epsilon "not to propose on CHK . . ."). Epsilon responded it would consider other options but needed to continue pursuing its

opportunities as allowed under the JOAs. *Id.* (Dec. 17, 2020). CHK retorted it had a "veto power" because it had inserted language in the JOAs "with the intent to prevent the development of wells that CHK did not want to drill." *Id.* (Dec. 18, 2020).

With discussions at a standstill, Epsilon formally proposed four wells on December 23, 2020 in accordance with JOA procedures: Craige N 1LH, Craige N 1UHC, Craige N 4UHC ("Craige North Wells") and Craige S 3LHC ("Craige South Well") to be located in Rush Township, Susquehanna County, Pennsylvania ("Proposed Wells"). **Exhibit 10** (Dec. 23, 2020 Well Proposals). In conjunction with the Proposed Wells, CHK had to elect between three options: (1) participate in the wells and serve as the operator; (2) elect not to participate but serve as the operator for the consenting parties; or (3) elect not to participate and decline to serve as the operator, such that Epsilon would be the operator. *Id.* Three other JOA Parties elected to participate in the Craige South Well while none of the other JOA Parties elected to participate in the Craige North Wells.

### E. CHK's Refusal to Cooperate and Allow Epsilon to Access Jointly-Owned Property

During discussions on January 12, 2021, Epsilon reiterated its need to develop new wells while CHK continued to push alternative options. On January 19, 2021, CHK responded it did not consent to participate in the Proposed Wells and would not serve as the operator. **Exhibit 11** (Jan. 19, 2021 Non-Consent Letter). CHK

also asserted Epsilon was not permitted to serve as the operator, and advised it would not allow Epsilon access to the Craige well pad to drill the Proposed Wells.

That same day, CHK proposed a new well known as the Koromlan 107HC ("Koromlan Well"). **Exhibit 12** (Jan. 19, 2021 Koromlan Well Letter). CHK suggested that Epsilon's Proposed Wells were in conflict with the Koromlan Well. *Id.* On January 20, 2021, CHK further stated: "Chesapeake maintains the right to operate the Craige pad site and associated wells, and hereby does not grant approval or authority to Epsilon, or anyone else, to operate from referenced pad. . . . Subsequently, Chesapeake has plans to drill the Koromlan 107HC in early 2022, which is in conflict with Epsilon's proposed Craige S 3LHC." **Exhibit 13** (Jan. 20, 2021).

On February 9, 2021, Epsilon notified CHK that Epsilon had satisfied all of the requirements necessary to proceed with the Proposed Wells. **Exhibit 14** (Feb. 9, 2021 Epsilon's Notice of 100% Subscription). On February 11, 2021, CHK responded by continuing to (1) assertthat the JOAs do not permit Epsilon to drill new wells if CHK elects not to participate and (2) stating that CHK would not sign a commitment letter Epsilon required in order to obtain the Proposed Wells' water permitting. **Exhibit 15** (Feb. 11, 2021). Epsilon replied it did not understand how CHK could claim a "super veto power that is counter to the JOAs or [the] Settlement Agreement. It is not in good faith . . . Epsilon has continued to act in good faith and

seeks only to have [CHK] recognize its rights under the JOA and the Settlement Agreement . . ." *Id.* Two minutes later, CHK retorted: "Respectfully, this is not a good faith/bad faith discussion. The plain language of the JOA does not allow for Epsilon to assume operatorship." *Id.*

Epsilon's request for assistance in obtaining the Proposed Wells' water permit was not a surprise to CHK. Back on July 1, 2020 — when Epsilon shared its development plans with CHK — Epsilon sought CHK's assistance in obtaining the requisite approval from the Pennsylvania Department of Environmental Protection ("PaDEP") and the SRBC for the Proposed Wells' water management plan. **Exhibit 7** (July 1, 2020; Sept. 18, 2020). In particular, Epsilon asked CHK to sign a standard SRBC letter so that Epsilon could utilize water from Wyalusing Creek — an asset that ***Epsilon jointly owns and contributed*** to the joint operation governed by the JOAs — to drill the Proposed Wells.

After making its formal proposals in December 2020, Epsilon renewed its efforts to obtain the water permit necessary to drill the Proposed Wells. On January 29, 2021, the SRBC provided Epsilon with a commitment letter CHK had recently used to obtain a similar permit. **Exhibit 16** (Jan. 29, 2021). Using the commitment letter CHK recently used, Epsilon prepared a draft commitment letter (to be signed by CHK) that would enable Epsilon to obtain the Proposed Wells'

water permit. After reviewing the draft letter, the SRBC confirmed it was acceptable and would enable Epsilon to obtain the Proposed Wells' water permit. *Id.*

On February 9, 2021, Epsilon sent the proposed SRBC letter to CHK for execution so Epsilon could finalize the Proposed Wells' permitting. **Exhibit 14** (Feb. 9, 2021). On February 11, 2021, CHK advised it would not sign the SRBC letter. *Id.* (Feb. 11, 2021). Furthermore, CHK made clear in its communications with Epsilon it would not grant Epsilon access to the well pad in order to drill the Proposed Wells. *See* **Exhibit 10**.

Because elections to the Proposed Wells were made on January 22, 2021, Epsilon would normally have until April 22, 2021 to commence operations before its Well Proposals expired. Because of a title-related issue, however, Epsilon is permitted an additional thirty (30) days until May 22, 2021 to commence operations. In order to commence drilling activities, Epsilon requires approval from the PaDEP for its water management plan. Information provided by PaDEP suggests that Epsilon will need to submit its completed water management plan April 14-21, 2021 in order for Epsilon to commence drilling activities by May 22, 2021.[2] Epsilon cannot finalize its water management plan until CHK executes the SRBC letter.

---

[2] The PaDEP has reviewed and approved certain of the proposed water sources in Epsilon's water management plan. For this reason, it is now anticipated PaDEP's review will be more limited and expeditious than a full review.

## F.  The Koromlan Well Proposal

The Koromlan Well Proposal indicates the wellbore would traverse the Craige, Poulson North, Poulson South, and Davis Units.  It would also traverse a drilling unit not yet formed, which CHK described as "the Bradbury Unit."  In addition, the Koromlan Well's path is too close to the Craige South Well's path. Finally, the Koromlan Well would traverse a block of acreage known as the Rushboro Ventures block that is not believed to be leased (or whose lease is in question).

On February 9, 2021, Epsilon informed CHK the Koromlan Well proposal did not meet the JOA requirements for submitting a proposal.  While Epsilon noted the Koromlan Well's path would traverse non-unitized acreage, as well as acreage with a title defect, Epsilon indicated it might support a similar well if these issues could be overcome (provided CHK proposed such a well in compliance with the JOAs). **Exhibit 17**, Feb. 9, 2021, Koromlan Well Proposal Response.

## III.  ARGUMENT

In order to obtain a preliminary injunction, the moving party must establish (1) a likelihood of success on the merits, (2) denial of injunctive relief will result in irreparable harm, (3) granting the injunction will not result in irreparable harm to the other parties, and (4) granting the injunction is in the public interest.  *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  The primary purpose of

preliminary injunctive relief "is maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). "Status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).[3]

### A. Epsilon is Likely to Succeed on the Merits Because CHK is Not Meeting its Obligations Under the Settlement Agreement and JOAs and CHK's Interpretation of the Settlement Agreement and JOAs is Wrong.

To establish a reasonable probability of success on the merits, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). The plaintiff must only satisfy this burden for one claim. *See CBM Ministries of S. Cent. Pa., Inc. v. Pa. Dep't of Transp.*, Civ. A. No. 1:15-cv-2147, 2015 WL 7755666, at *5 n.2 (M.D. Pa. Dec. 2, 2015). To establish a declaratory judgment claim, the plaintiff must prove a present and judiciable controversy exists, including that (1) Epsilon's claim involves a real and present harm, (2) a conclusive legal judgment may be reached, and (3) a decision will alleviate legal uncertainty. *Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 524 (3d Cir. 2018).

---

[3] "It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or on the merits.'" *Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 0.03 Acres & Temp. Easement for 0.02 Acres in S. Londonderry Twp., Lebanon Cty., Pa.*, No. 4:17-CV-00565, 2017 WL 3485752, at *2 (M.D. Pa. Aug. 15, 2017).

Here, Epsilon is likely to succeed on its declaratory relief claim. As set forth in Section III.B., Epsilon's claim involves a real and present harm. Further, a conclusive legal judgment may be reached that will alleviate legal uncertainty regarding Epsilon's rights and CHK's obligations under the Settlement Agreement and the JOAs. The JOAs set forth the procedure for drilling a well in the event CHK elects not to participate and declines to serve as the operator. *See* Exhibits 1-4 (Article VI.1). When a dispute arose regarding this procedure, and Epsilon filed its prior lawsuit in 2018, the parties confirmed in their Settlement Agreement that:



Exhibit 5, at ¶¶ 8, 8(d). CHK did not consent to participate and declined to serve as the operator for the Proposed Wells. Accordingly, Epsilon was designated as the operator.

However, CHK is not cooperating with Epsilon so that it can proceed with the Proposed Wells. CHK continues to take the position that it will not allow Epsilon to access the Craige well pad in order to drill the Proposed Wells. In addition, CHK

is refusing to sign the SRBC letter so that Epsilon can use the jointly-owned Wyalusing Creek in order to drill the Proposed Wells. The Settlement Agreement and JOAs' terms require CHK's cooperation and it has failed to follow those terms.

To justify its refusal, CHK asserts that it effectively possesses "veto power" to prevent Epsilon from drilling new wells in which CHK has elected not to participate. This assertion is specious. Nothing in the JOAs allows CHK to veto a Well Proposal to drill a new well that Epsilon has properly submitted. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 544 (Pa. 2010) (insurer could not use a "reservation of rights letter to reserve a right it [did] not have pursuant to the contract," as such would be "tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract"); *Am. Fed'n of State v. Comm.*, 417 A.2d 1315, 1318 (Pa. Commw. Ct. 1980) ("To allow [a] party to [an] agreement unilaterally to amend the contract . . ., would be particularly repugnant to the constitutional concept which respects the sanctity of contract.").

Even assuming CHK possessed such veto power under the JOAs (it does not), CHK surrendered that power in the Settlement Agreement. The Settlement Agreement not only ███████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████. CHK's blatant disregard for the Settlement

Agreement, signed approximately two years ago to resolve a similar dispute, is disturbing and needs to be rectified.

## B. Epsilon Will Suffer Irreparable Harm Absent Injunctive Relief.

Risk of irreparable harm means a clear showing of immediate irreparable injury or presently existing actual threat. *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Where a party shows that an injunction is the only means of protecting the plaintiff from harm, it has met this standard. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Where "interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (depriving mineral right owners of their "unique oil and gas extraction opportunities" constituted irreparable injury). Because CHK is obstructing Epsilon's right to develop its jointly-owned property, and has threatened to drill a well (albeit in 2022) that would be too close to one of the Proposed Wells Epsilon is attempting to drill, Epsilon's damages are incapable of calculation. *See Remaley v. Peoples Nat. Gas*, 307 Pa. 237, 246-47 (Pa. 1932) (affirming injunction to prevent operator's drilling that exceeded authority under lease agreements because the "threatened damage [was] irreparable, or incapable of measurement at law"); *see also Walsh v. Powell*, 76 Pa. D. & C. 108, 114 (Pa. Com. Pl. 1951) ("The removal

or destruction of a material part of the substance of the land, such as the soil or minerals contained in it, is generally considered to be an irreparable injury.").

Importantly, "[o]wners of undivided interests in the *working interest* in an oil and gas lease are tenants in common." *De Mik v. Cargill*, 485 P.2d 229, 231 (Okla. 1971) (emphasis added); *McCall v. CHK Energy Corp.*, 817 F. Supp. 2d 307, 315 (S.D.N.Y. 2011), *aff'd*, 509 F. App'x 62 (2d Cir. 2013). Epsilon therefore owns an undivided interest in the subsurface oil and gas in all of the JOAs' Contract Areas. As one oil and gas commentator explained, "no single owner has exclusive or separate rights as to any particular portion of the tract, but all such owners have a common ownership and share proportionately in the enjoyment of the property as a whole." 1–5 Kuntz § 5.1 (2011).

In addition, it is important that Epsilon promptly commence drilling operations on the Proposed Wells. Epsilon could forfeit the opportunity to drill the Proposed Wells if it does not commence operations within the time period set forth in the Well Proposals (and it is unclear whether the same factors that support their development will be present in the future). *Enduro Operating LLC v. Echo Prod., Inc.*, 413 P.3d 866, 871 (N.M. 2018) (listing factors that would prove that an operator commenced drilling operations and had not breached this provision of JOA). For this reason, CHK's interpretation of the Settlement Agreement and JOAs and failure to cooperate — is preventing Epsilon from obtaining the required water permit and

preparing the Craige well pad — is preventing Epsilon from commencing the drilling operations within the time period set forth in its Well Proposals. *Minard Run Oil Co. v. U.S. Forest Serv.*, C.A. No. 09-125, 2009 U.S. Dist. LEXIS 116520, at *88-89 (W.D. Pa Dec. 15, 2009) (granting injunctive relief because the defendant's ban on drilling caused irreparable harm); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211-12 (10th Cir. 2009) (upholding grant of injunctive relief because "lost opportunities and costs and inefficiencies" are appropriate irreparable harm findings). Epsilon's mineral interests underlying the Units will be irreparably harmed if Epsilon is unable to promptly drill the Proposed Wells.

### C. CHK Will Not Be Irreparably Harmed if Injunctive Relief is Granted.

The potential harm to Epsilon's mineral interests far exceeds any harm CHK might experience if the Court grants injunctive relief. The only harm CHK could arguably face is the delay in production and development of the Koromlan Well, which is not slated for development until 2022. This harm is particularly speculative given the lack of information CHK provided in its well proposal and the continuing issues surrounding developing the Koromlan Well.[4]

---

[4] In cases of delayed production, some courts have expressed concern that allowing recovery of lost profits may result in a double recovery as the oil and gas reserves are produced later. Courts thus look for other ways to measure the loss. *See, e.g., Nerco Oil & Gas, Inc. v. Otto Candies, Inc.*, 64 F.3d 667, 668-70 (5th Cir. 1996) (comparing discounted stream of net revenue that would have been earned over the life of production with no delay to a discounted stream of net revenue with delay);

Moreover, "the injury [CHK] might suffer if an injunction were imposed may be discounted by the fact that [CHK] brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) ("The self-inflicted nature of any harm suffered by [defendant] also weighs in favor of granting preliminary injunctive relief."). By intentionally disregarding the Settlement Agreement's unambiguous terms, in an attempt to veto Epsilon's current development activities in favor of a well CHK desires to drill in 2022, the only harm CHK could experience would be self-inflicted. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) ("By virtue of this recalcitrant behavior, the [defendant] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself.")

In short, the requested injunction will not burden CHK in any cognizable way. The injunction would simply prevent CHK from doing that "which the law already prohibits." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, No. 04-977, 2007 WL 4262725, at *3 (M.D.N.C. Nov. 30, 2007); *see also*

---

*In the Matter of TT Boat Corp.*, Civ.A.–98–0494, 1999 WL 1276837, at **2–7 (E.D. La. 1999) (same). Furthermore, Epsilon has requested expedited discovery to uncover CHK's true motivations in proposing the Koromlan well given the significant delay in when CHK proposes to drill.

*Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 420 (E.D. Pa. 2013) ("In balancing the hardships to the parties, any injury defendants might suffer as a result of the . . . preliminary injunction is significantly outweighed by the irreparable harm plaintiff would continue to suffer. . . .").

### D. Granting Injunctive Relief is in the Public Interest.

If a plaintiff "demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Newlife Homecare Inc. v. Express Scripts, Inc.*, No. 3:07cv761, 2007 U.S. Dist. LEXIS 33031, at *26 (M.D. Pa. May 4, 2007) (citation omitted). Moreover, it is well established that "a public interest exists in the enforcement of contracts." *Id.* (granting preliminary injunction); *Green Strip, Inc. v. Berny's Internacionale, S.A.*, 159 F. Supp. 2d 51, 56 (E.D. Pa. 2001) ("an injunction is consistent with the public interest in requiring parties to live up to their legal contracts.").

In addition, the public benefits from the efficient development of oil and gas resources so as to ensure there is not an adverse effect on the supply of natural gas or an adverse impact on natural gas prices. *Steckman Ridge GP, LLC v. Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres*, No. 08cv168, 2008 WL 4346405, at *17 (W.D. Pa. Sept. 19, 2008). Pennsylvania courts have repeatedly recognized the importance of the efficient development of natural resources. *See Huntley &*

*Huntley v. Borough Council*, 964 A.2d 855, 865 (Pa. 2009) ("The state's interest in oil and gas development is centered primarily on the efficient production and utilization of the natural resources in the state."); *Robinson Twp. v. Cmw.*, 147 A.3d 536, 559 (Pa. 2016) ("[T]he primary purpose of [the Pennsylvania Oil and Gas Act] was 'to provide a maximally favorable environment for industry operators to exploit Pennsylvania's oil and natural gas resources, including those in the Marcellus Shale Formation.'") (citing 58 Pa.C.S. § 3202)). The requested injunction will serve the public interest by facilitating the efficient development of oil and gas in Pennsylvania.

## IV.   CONCLUSION

For the forgoing reasons, Epsilon has demonstrated a likelihood of success on the merits, the existence of imminent irreparable harm, the balance of harms tips decidedly in its favor, and an injunction will advance the public interest. The Court should therefore grant the relief set forth in the proposed order Epsilon submitted contemporaneously with its Motion and this Memorandum in Support.

Dated: April 9, 2021

Respectfully submitted,

/s/    *Gregory J. Krock*
Gregory J. Krock
Pa. I.D. No. 78308
Elizabeth M. Thomas
Pa. I.D. No. 322002

MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000 (Telephone)
(412) 667-6050 (Facsimile)
gkrock@mcguirewoods.com
ethomas@mcguirewoods.com

Jonathan T. Blank
*Pro Hac Vice Request Forthcoming*
MCGUIREWOODS LLP
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911
(434) 977-2500 (Telephone)
(434) 980-2222 (Facsimile)
jblank@mcguirewoods.com

*Counsel for Plaintiff*
*Epsilon Energy USA, Inc.*

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,

           Plaintiff,

       v.

CHESAPEAKE APPALACHIA, LLC,

           Defendant.

Civil Action No.

District Court Judge

## CERTIFICATE OF COMPLIANCE REGARDING BRIEF

The undersigned hereby certifies that this Memorandum of Law complies with the word–count limitations contained in Rule 7.8(b)(2) of the Local Rules for the United States District Court for the Middle District of Pennsylvania. Exclusive of the tables of contents and authorities, the Memorandum of Law contains 4,950 words according to the word count function the Microsoft Word 2010 software with which the memorandum was produced.

/s/   *Gregory J. Krock*
Gregory J. Krock
Pa. I.D. No. 78308

MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000 (Telephone)
(412) 667-6050 (Facsimile)
gkrock@mcguirewoods.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

**Memorandum in Support of the Motion for Preliminary Injunction** has been

served on served upon the following by mail, this <u>9th day of April 2021</u>:

Chesapeake Appalachia, LLC
c/o The Corporation Company
1833 S. Morgan Road
Oklahoma City, OK 73128

<u>/s/     *Gregory J. Krock*</u>