

# EXHIBIT
# A

40th Anniversary

# Susquehanna River Basin Commission

*a water management agency serving the Susquehanna River Watershed*   1971 - 2011

August 15, 2011

TO ALL CONCERNED:

At the June 23, 2011, Commission meeting, the draft minutes of the March 10, 2011, Commission meeting were approved as written. Please attach this notice to your copy of the March 10, 2011, minutes.

120928.1

- DRAFT -

SUSQUEHANNA RIVER BASIN COMMISSION
1721 N. FRONT ST.
HARRISBURG, PA 17102

# MINUTES OF THE
# SUSQUEHANNA RIVER BASIN COMMISSION
## June 23, 2011
#2011-02

The meeting was held at Cecil College, North East, Maryland. Chairman Lynch called the meeting to order at 8:30 a.m.

## ROLL CALL

### Commissioners Present

*Mr. Kenneth P. Lynch*, Director, Region 7, New York State Dept. of Environmental Conservation (NYSDEC)
*Ms. Kelly Heffner,* Dep. Sec. for Water Resources, Pennsylvania Dept. of Environmental Protection (PADEP)
*Mr. Herbert Sachs*, Special Projects Coordinator, Office of the Secretary, Maryland Dept. of the Environment (MDE)
*Col. David E. Anderson*, District Engineer, U.S. Army Corps of Engineers (USACE), Baltimore District

### Alternate Commissioners and Advisors Present

*Mr. Ned Wehler,* CEO, ARM Group, PA Advisor

### Staff Present

*Mr. Paul O. Swartz,* Executive Director
*Mr. Thomas W. Beauduy,* Deputy Executive Director
*Ms. Marcia E. Rynearson*, Director, Administration & Finance
*Dr. James L. Richenderfer*, Director, Technical Programs
*Ms. Stephanie L. Richardson*, Secretary to the Commission
*Mr. Richard A. Cairo*, General Counsel

*Ms. Susan S. Obleski*, Director, Communications
*Mr. John W. Balay,* Manager, Planning & Operations
*Ms. Paula Ballaron,* Manager, Policy Implementation & Outreach
*Mr. Andrew D. Dehoff,* Manager, Project Review
*Mr. Andrew Gavin,* Manager, Monitoring & Protection
*Mr. David W. Heicher,* Manager, Research & Grants

### Also Attending

*Mr. John Booser*, PADEP

*Mr. Dan Bierly*, USACE, Baltimore Dist.
*Ms. Karla Hill*, USACE, Baltimore Dist.

1.     **Welcome & Introductory Remarks**

Chairman Lynch convened the meeting and introduced the members of the Commission. He called on Maryland Delegate David Rudolph to provide opening remarks. Delegate Rudolph welcomed the Commission and the audience to Cecil County and mentioned that he looks forward to continuing to work with the Commission on protecting the Chesapeake Bay and the review of the Lower Susquehanna hydroelectric projects applying for federal relicensing. He also noted the Commission's leadership in regulating water use associated with natural gas extraction in the Marcellus formation and indicated that Maryland will benefit from the experiences of SRBC as it moves forward with its own gas regulatory program in western Maryland. Chairman Lynch also acknowledged the presence of Cecil County Commissioner Robert Hodge.

The commissioners then presented information on significant developments in their jurisdictions and their relevance to the work of the Commission. Commissioner Sachs noted the confirmation of SRBC member Dr. Robert Summers as Secretary of the MDE. He further mentioned Maryland's efforts to formulate its regulatory program for natural gas extraction; important legislation relating to septic tank regulation; and, in cooperation with the USACE, the initiation of a study of the sediments accumulating behind Conowingo Dam.

Commissioner Heffner indicated that the PADEP will be engaging local governments and counties on the use of Best Management Practices (BMPs) and how local governments can cooperate on Chesapeake Bay efforts. A series of meetings with local government and county officials will take place in September and October, with a kick-off summit meeting to be held in August. Pennsylvania also plans to continue its close coordination with SRBC on Marcellus gas regulation.

Commissioner Anderson reiterated the importance of the sediment study to be carried out with Maryland on the lower Susquehanna River and that USACE is hoping that a better understanding of the movement of sediments will emerge from this study. The USACE is also working with Maryland on aquaculture permitting.

Chairman Lynch noted the unanimous passage of legislation in New York that will charge the NYSDEC with the regulation of water withdrawals. NYSDEC will be developing regulations to implement the new law, which will continue to rely on the Susquehanna and Delaware River Basin Commissions for regulation of withdrawals in their respective river basins.

The Executive Director recounted the efforts of Senator William S. James, Delegate Frank Harris, and Commissioner Herb Sachs in guiding the Susquehanna River Basin Compact to enactment by the Maryland Legislature in March 1967. Through their special efforts, potentially fatal objections voiced by Dr. Abel Wolman, a respected water resources expert from The Johns Hopkins University, were overcome.

2.     **Presentation:  Water Resources Program – A Focus on the Chesapeake Bay Priority Management Area**

Mr. Dave Heicher, Manager, Research & Grants, presented the FY 2012-2013 Water Resources Program to the Commission and a resolution (Exhibit A) for its adoption. He provided some background on the Program's origins in the Susquehanna River Basin Compact, its purpose, function, and relationship to the SRBC Comprehensive Plan as an implementation tool. He went on to describe the Priority Management Areas (PMAs) set forth in the Program, which track the PMAs established by the Comprehensive Plan. The Program addresses 65 of the 74 actions identified in the PMAs. For this year's Water Resources Program, input was received from 12 federal agencies, 12 state agencies, and 21 regional and county organizations. Eleven non-governmental organizations (NGOs) had also offered comments.

Mr. Heicher then called on Mr. Andrew Gavin, Manager, Monitoring & Protection, to provide information on the Chesapeake Bay PMA. Mr. Gavin covered a number of areas, including flow protection studies, long-term water quality monitoring, the sediment studies mentioned by Commissioners Sachs and Anderson, support for TMDL studies, and wetland establishment and enhancement. Commissioner Sachs stressed the importance of the portions of the Bay PMA addressing freshwater inflows to the Chesapeake Bay.

Following Mr. Gavin's presentation, Commissioner Anderson moved approval of the resolution adopting the FY 2012-2013 Water Resources Program.  This motion was seconded by Commissioner Sachs and unanimously adopted by the Commission.

3.     **Hydrologic Conditions Report**

Mr. John Balay, Manager, Planning & Operations, reported on hydrologic conditions in the basin. The spring period was unusually wet, with precipitation much above normal through the period. April precipitation alone was 75 percent above normal. The surplus precipitation has resulted in normal stream flow and ground water levels throughout most of the basin. The 90-day forecast is for continued above normal precipitation.

The 2011 hurricane season began on June 1. Forecasters are predicting an above average hurricane season, with the climatic phenomenon known as "La Nina" warming the waters of the Atlantic Ocean.

4.     **Minutes of the March 10, 2011, Meeting**

On a motion by Commissioner Sachs, seconded by Commissioner Heffner, the minutes of the regular business meeting of March 10, 2011, were unanimously approved as written.

5.     **Counsel's Report**

The General Counsel presented the following report on legal matters affecting the Commission:

### Green Seal Claim – Whitney Point Section 1135 Project Modification

The Commission participated as a non-federal sponsor in the Whitney Point Section 1135 Project Modification designed to improve environmental conditions downstream of Whitney Point Lake through low flow water releases. Certain other features were added at the lake to enhance wildlife habitat and expand recreational facilities.

As reported previously, Green Seal Environmental, Inc., the contractor who did excavation and island construction work for the enhancements at the Whitney Point Lake, filed a cost overrun claim with USACE in 2009 demanding a nearly $600,000 extra payment due to alleged differing site conditions. After rejection of most of that claim by USACE's Contracting Officer, Green Seal filed an appeal of the Contracting Officer's Decision with the Armed Services Board of Contract Appeals.

On June 6, 2011, the Commission received word from USACE staff and counsel that the "Discovery Phase" of the appeal is still underway and that no trial date has yet been scheduled. Staff will keep the Commission informed of further developments as the litigation goes forward in the coming months.

### Administrative Appeal of Allegheny Defense Project

The Allegheny Defense Project filed an administrative appeal on May 2, 2011, and an amendment to that appeal on May 23, 2011, regarding the Commission's approval of three into-basin diversions from the Ohio Basin at the March 10, 2011, Commission meeting. Consideration of this appeal occurred in the public hearing portion of the meeting, item 8 (d) below.

6.  **Proposed Rulemaking**

Deputy Executive Director Thomas Beauduy presented a proposed rulemaking package that would amend the project review regulations of the Commission. Most of these amendments relate to the approval of natural gas development projects of both a conventional and unconventional nature.

In summary, the amendments would:  1) Include definitions for new terms that are used in the proposed rulemaking; 2) provide for administrative approval of interbasin transfers of flowback and production fluids between drilling pad sites that are isolated from the waters of the basin; 3) provide for administrative approval of out-of-basin transfers of flowback or produced fluids from a Commission-approved hydrocarbon development project to an out-of-basin treatment or disposal facility; 4) insert language authorizing "renewal" of expiring approvals, including Approvals by Rule (ABRs); 5) delete specific references to geologic formations that may be the subject of natural gas development using hydrofracture stimulation and replace with a generic category – "unconventional natural gas development;" 6) broaden the scope of ABRs issued to include hydrocarbon development of any kind utilizing the waters of the basin, not just unconventional natural gas well development; 7) memorialize the current practice of requiring post-hydrofracture reporting; 8) standardize at 15 years the term of ABR approvals for both gas

120928.1

and non-gas projects; and 9) provide further procedures for the approval of water sources utilized at projects subject to the ABR process.

With the Commission's authorization, a proposed rulemaking notice would be published in the Federal Register and the member state notice publications inviting comments on the amendments through August 23, 2011. Public hearings would also be held on August 2, 2011, at the Rachel Carson State Office Building, 400 Market Street, Harrisburg, Pennsylvania 17101, beginning at 10:00 a.m., and on August 4, 2011, at the Holiday Inn Binghamton Downtown, 2-8 Hawley Street, Binghamton, New York 13901, beginning at 7:00 p.m. Details on the proposed rulemaking would also be placed on the Commission's web site www.srbc.net.

On a motion by Commissioner Heffner, seconded by Commissioner Sachs, the Commission unanimously authorized the Commission staff to proceed with the proposed rulemaking notice, and to schedule the related public hearings.

**PUBLIC COMMENTS**

The Commission invited general comments from the public. Mr. Jim Eberhardt, Mayor of Perryville, Maryland, offered two comments. First, he indicated that the Town of Perryville does routine water quality monitoring at its water treatment plant and would be happy to share the results of that monitoring with the Commission. Secondly, he commented on the large amount of debris that came down the Susquehanna River during the recent high flows, which clogged marinas and posed a hazard to navigation through Memorial Day.

**7.    Preliminary Introduction on Dockets**

Dr. Jim Richenderfer, Director, Technical Programs, provided an explanation of the contents and conditions of a typical Commission docket approval. Noting first what projects are covered by Commission regulations, he then explained how docket approvals are structured and how conditions such as limits on instantaneous withdrawals and daily maximum withdrawals work to protect streams. He placed special emphasis on an explanation of passby flow requirements, which protect water sources and the aquatic environment by halting stream withdrawals during low flow events. He also indicated the types of information that applicants are expected to have in their applications.

He explained how staff carefully scrutinizes each application on its merits, with some reviews such as groundwater withdrawals taking as much as a year to finalize. He emphasized that staff only makes recommendations on the disposition of project applications. The final decision on applications rests with the Commission.

**PUBLIC HEARING**[1]

The Commission convened a public hearing covering six topics:   1) action on a compliance matter/settlement offer; 2) action on the rescission of approval for two projects;

---

[1] The account of this public hearing contained in these minutes should only be considered an unofficial summary. A stenographic transcript was made containing the official record of the hearing.

3) action on project applications (including those involving diversions); 4) consideration of an administrative appeal filed by the Allegheny Defense Project regarding three into-basin diversions approved at the March 10, 2011, meeting of the Commission; 5) action on amendments to the Regulatory Program Fee Schedule; and 6) action on amendments to the SRBC Comprehensive Plan. The General Counsel announced where all notices of this public hearing had been published.

8.   **Regulatory Program Actions**

   a.   **Compliance Matter**

   The Deputy Executive Director recommended that the Commission accept a settlement in lieu of penalty offer from Nature's Way Purewater Systems, Inc., Pittston Facility, in the amount of $15,000.00 regarding the operation of a project without Commission approval. Chairman Lynch asked if the alleged violation had caused any environmental harm, to which Mr. Beauduy responded that it had not. On a motion by Commissioner Sachs, seconded by Commissioner Anderson, the Commission unanimously accepted the settlement offer from the project sponsor as presented by Mr. Beauduy.

   b.   **Docket Rescissions**

   Mr. Andrew Dehoff, Manager, Project Review, recommended that the Commission approve docket rescissions for the following project approvals:

   - Anadarko E&P Company LP (West Branch Susquehanna River-2) (Docket No. 20090306), Renovo Borough, Clinton County, Pa.
   - Pennsylvania Food Group, LLC (Docket No. 20030411), West Donegal Township, Lancaster County, Pa.

   On a motion by Commissioner Heffner, seconded by Commissioner Sachs, the Commission unanimously rescinded these docket approvals.

   c.   **Docket Actions**

   Chairman Lynch then called on Mr. Dehoff to review the list of project applications, starting first with the projects not involving diversions. Before describing the projects that staff was recommending for approval, Mr. Dehoff noted that three projects were not ready for Commission action and were therefore recommended for tabling as follows:  1) Dunn Lake LLC (Dunn Lake), Ararat Township, Susquehanna County, Pa., application for surface water withdrawal of up to 0.999 mgd; 2) Keystone Clearwater Solutions, LLC (Babb Creek), Morris Township, Tioga County, Pa., application for surface water withdrawal of up to 0.950 mgd; and 3) SWEPI, LP, Pennsylvania American Water Company, Warren District, Warren City, Warren County, Pa., application for an into-basin diversion of up to 3.000 mgd from the Ohio River Basin.

120928.1

The non-diversion applications recommended for approval, as presented by Mr. Dehoff, included the following projects[2]:

- Anadarko E&P Company LP (Pine Creek – Jersey Mills), McHenry Township, Lycoming County, Pa. (Exhibit B1)
- Aqua Pennsylvania, Inc., Monroe Manor Water System, Monroe Township, Snyder County, Pa. (Exhibit B2)
- Carrizo Marcellus, LLC (Meshoppen Creek), Washington Township, Wyoming County, Pa. (Exhibit B3)
- Carrizo Marcellus, LLC (Middle Branch Wyalusing Creek), Forest Lake Township, Susquehanna County, Pa. (Exhibit B4)
- Carrizo Marcellus, LLC (Unnamed Tributary to Middle Branch Wyalusing Creek), Forest Lake Township, Susquehanna County, Pa. (Exhibit B5)
- Chesapeake Appalachia, LLC (Wappasening Creek), Windham Township, Bradford County, Pa. (Exhibit B6)
- Chesapeake Appalachia, LLC (Wyalusing Creek), Rush Township, Susquehanna County, Pa. (Exhibit B7)
- Chesapeake Appalachia, LLC (Wysox Creek), Rome Township, Bradford County, Pa. (Exhibit B8)
- Exelon Generation Company, LLC, Peach Bottom Atomic Power Station, Peach Bottom Township, York County, Pa. (Exhibit B9)
- Exelon Generation Company, LLC, Three Mile Island Generating Station, Londonderry Township, Dauphin County, Pa. (Exhibit B10)
- Fox Road Waterworks, LLC (South Branch Tunkhannock Creek), Tunkhannock Township, Wyoming County, Pa. (Exhibit B11)
- Hydro Recovery, LP, Blossburg Borough, Tioga County, Pa. (Exhibit B12)
- Keystone Clearwater Solutions, LLC (Driftwood Branch), Emporium Borough, Cameron County, Pa. (Exhibit B13)
- Keystone Clearwater Solutions, LLC (Lycoming Creek), Lewis Township, Lycoming County, Pa. (Exhibit B14)
- LHP Management, LLC (Fishing Creek – Clinton Country Club), Bald Eagle Township, Clinton County, Pa. (Exhibit B15)
- Mount Joy Borough Authority, Mount Joy Borough, Lancaster County, Pa. (Exhibit B16)
- Nature's Way Purewater Systems, Inc., Covington Township, Lackawanna County, Pa. (Exhibit B17)
- Nature's Way Purewater Systems, Inc., Dupont Borough, Luzerne County, Pa. (Exhibit B17)
- New Morgan Landfill Company, Inc., Conestoga Landfill, New Morgan Borough, Berks County, Pa. (Exhibit B18)
- Seneca Resources Corporation (Genesee Forks), Pike Township, Potter County, Pa. (Exhibit B19)
- Talisman Energy USA Inc. (Wappasening Creek), Windham Township, Bradford County, Pa. (Exhibit B20)
- Tennessee Gas Pipeline Company (Meshoppen Creek – Loop 319), Springville Township, Susquehanna County, Pa. (Exhibit B21)
- Tennessee Gas Pipeline Company (Susquehanna River – Loop 317), Asylum Township, Bradford County, Pa. (Exhibit B22)
- Tennessee Gas Pipeline Company (Tioga River – Loop 315), Richmond Township, Tioga County, Pa. (Exhibit B23)
- Tennessee Gas Pipeline Company (Unnamed Tributary of North Elk Run), Richmond Township, Tioga County, Pa. (Exhibit B24)
- Tennessee Gas Pipeline Company (Towanda Creek – Loop 317), Monroe Township, Bradford County, Pa. (Exhibit B25)
- Tennessee Gas Pipeline Company (White Creek – Loop 319), Springville Township, Susquehanna County, Pa. (Exhibit B26)
- Williamsport Municipal Water Authority, Williamsport City, Lycoming County, Pa. (Exhibit B27)

Commissioner Anderson moved that the Commission take action on these projects not involving diversions in accordance with the recommendations of Mr. Dehoff.

---

[2] Docket decisions are not included with the hard copy of the minutes. However, they are available upon request and at www.srbc.net.

This motion was seconded by Commissioner Heffner and unanimously adopted by the Commission.

Mr. Dehoff then reviewed the following projects involving diversions of water into the Susquehanna River Basin from the Ohio and Delaware River Basins and recommended their approval:

- Chief Oil & Gas LLC, Borough of Ebensburg, Cambria Township, Cambria County, Pa. (Exhibit B28)
- Chief Oil & Gas LLC, Cambria Somerset Authority, Summerhill Township, Cambria County, Pa. (Exhibit B29)
- Chief Oil & Gas LLC, Highland Sewer and Water Authority, Portage Township, Cambria County, Pa. (Exhibit B30)
- Nature's Way Purewater Systems, Inc., Nature's Way Springs Borehole 1 (BH-1), Foster Township, Luzerne County, Pa. (Exhibit B31)
- Penn Virginia Oil & Gas Corporation, Port Allegany Borough, McKean County, Pa. (Exhibit B32)
- Triana Energy, LLC, Johnson Quarry, Roulette Township, Potter County, Pa. (Exhibit B33)

The Deputy Executive Director noted that the Allegheny Defense Project (ADP) had filed objections to approval of the above diversions from the Ohio Basin. Mr. Beauduy summarized ADP's objections, refuting each one of them and covering several issues, including the authority of the Commission to approve into-basin diversions, the conditions governing out-of-basin actions by the Commission, alleged violations of the common law riparian rights doctrine, and application of the National Environmental Policy Act (NEPA) to the Commission.

Commissioner Sachs moved that the Commission take action on the diversion projects in accordance with the recommendations of Mr. Dehoff. This motion was seconded by Commissioner Anderson and unanimously adopted by the Commission.

d.   **Administrative Appeal of Docket Nos. 20110316, 20110317, and 20110318, by Allegheny Defense Project (ADP)**

The Allegheny Defense Project (ADP) did not appear at this hearing, and the main points of its appeal were therefore summarized by Deputy Executive Director Beauduy, who referred to earlier remarks pertaining to the approval of the above listed diversion projects and ADP's objections thereto. The issues raised in ADP's administrative appeal were essentially the same as those entered on the record by ADP at the March 10, 2011, public hearing when the Commission took action to approve the challenged projects.

All written submittals, including the appeal papers filed by ADP on May 2, 2011, and the amended appeal filed by ADP on May 23, 2011, were provided to the Commission in advance of this public hearing. ADP had admitted in its filings that this appeal involved only legal issues and that the Commission should not hold a separate

adjudicatory or evidentiary hearing, but simply decide the legal issue at today's public hearing.

Mr. Beauduy supplemented his earlier remarks refuting ADP's objections to the diversions and covered such additional issues as the lack of standing of ADP to pursue this appeal. He also submitted a position paper outlining the staff's legal position on the issues raised in the appeal.

Counsel for the project sponsors whose approval were being appealed agreed that ADP had no standing to pursue the appeal and had presented no grounds for overturning the approvals.

On a motion by Commissioner Anderson, seconded by Commissioner Sachs, the Commission unanimously denied ADP's administrative appeal.

9.      **Amendments to Regulatory Program Fee Schedule**

Ms. Marcia Rynearson, Director, Administration & Finance, presented a resolution (Exhibit C) amending the Commission's Regulatory Program Fee Schedule.

Ms. Rynearson briefly highlighted some of the more significant changes to the current schedule, including a 50 percent reduction in the fee for group transfers of 50 or more approvals in one transaction and a downward adjustment in the interest rate charged on fees paid in installments. Adjustments in fee amounts mandated by earlier resolutions were also implemented in the amended schedule. If approved by the Commission, the amendments would take effect on July 1, 2011.

On a motion by Commissioner Heffner, seconded by Commissioner Sachs, the Commission unanimously adopted the resolution amending the Regulatory Program Fee Schedule.

10.     **Comprehensive Plan Amendments**

The General Counsel presented a resolution (Exhibit D) amending the Comprehensive Plan for the Management of the Water Resources of the Susquehanna River Basin. Article 14, Section 14.1 of the Susquehanna River Basin Compact directs that the Commission develop and adopt, and from time to time, review and revise a comprehensive plan for the immediate and long range development and use of the water resources of the basin.

By Resolution 2008-08 of December 4, 2008, the Commission adopted a substantially revised Comprehensive Plan. This resolution provided that the Commission's Annual Water Resources Program, which is also adopted pursuant to Article 14 of the Compact, should hereafter implement and be based upon the Comprehensive Plan, and be annually incorporated in the Comprehensive Plan. In action earlier in the meeting, the Commission adopted a revised

FY 2012-2013 Water Resources Program based on the Comprehensive Plan, and therefore Counsel recommended that the Commission now incorporate that Water Resources Program into the Comprehensive Plan.

Resolution 2008-08 also calls for the annual incorporation of approved water resources projects and certain plans adopted by the Commission into the comprehensive plan. In addition to the Water Resources Program, the proposed resolution provides for the incorporation of projects approved by separate action of the Commission between January 2010 and June 2011, and the Migratory Fish Management and Restoration Plan for the Susquehanna River Basin adopted by Resolution 2011-02 at the last meeting of the Commission in March.

Commissioner Sachs commented on the importance of the comprehensive plan as a water resources management tool of the Commission and the need to continually update the plan to maintain its effectiveness. He then moved adoption of the resolution presented by counsel to amend the plan. This motion was seconded by Commissioner Heffner and the resolution was unanimously adopted.

## END OF PUBLIC HEARING

### 11.   Presentation:  PPL Pooled Assets Concept

Mr. Gary Petrewski, Environmental Manager for PPL, Inc., made an informational presentation on the "pooled assets" concept for mitigation of consumptive use by existing and future consumptive use projects. According to Mr. Petrewski, the pooled assets concept would use a cooperative approach to bring about coordinated use of water storage that would lessen inefficiencies, leverage existing and future storage, and ultimately maximize public benefits.

The Executive Director responded that staff is generally supportive of the concept, but that detailed discussions will be needed before any implementation efforts are undertaken by the Commission.

### 12.   Contracts/Grant Approval/Ratification

The Director of Administration & Finance presented the following contracts/grants for approval/ratification:

### a.   Contract Amendment Approval – Biological Assessment and Consulting Services, EcoAnalysts, Inc.

Ms. Rynearson requested that the Commission ratify a contract amendment with EcoAnalysts, Inc. in the amount of $31,900. EcoAnalysts was previously under contract to provide support for aquatic resource surveys. This contract amendment will provide for this firm's involvement in 1) the development of aquatic resource survey protocols for ponds, lakes, reservoirs, and other bodies of water; 2) the development of protective criteria for sensitive fish and macroinvertebrate taxa, as related to water withdrawal activities; 3) assisting with developing protocols to assess the macroinvertebrate and fish

120928.1

communities in the lower Susquehanna River reservoir system; and 4) other related services.

b. **Joint Funding Agreement Approval – Operation and maintenance of a network of rain gages located in Pennsylvania, U.S. Geological Survey**

Ms. Rynearson requested that the Commission ratify a Joint Funding Agreement (JFA) with the U.S. Geological Survey (USGS) in the amount of $269,710. Under the JFA, the USGS will provide operation and maintenance services for a network of 47 rain gages located in Pennsylvania to support the Susquehanna Flood Forecast and Warning System (SFFWS). The National Weather Service provided $330,910 of SFFWS grant funding to the Commission. This JFA is made possible by these funds.

c. **Joint Funding Agreement and Amendment Approval – Operation and maintenance of a network of rain gages and stream gages located in New York, U.S. Geological Survey**

Ms. Rynearson requested that the Commission ratify a JFA with the USGS in the amount of $177,840, and an amendment to the JFA in the amount of $82,440, for a total of $260,310. Under the JFA, as amended, the USGS will provide operation and maintenance services for a network of 26 rain gages and stream gages located in the New York portion of the basin to support the SFFWS. Funding for these gages comes from several sources, as follows:

| | |
|---|---|
| SFFWS grant funds from NWS | $61,200 |
| SRBC SFFWS grant funds | $67,160 |
| Contribution from New York DEC | $97,000 |
| SRBC Regulatory Fees | $34,950* |

*to cover unfunded gages that are critical to SRBC's Regulatory Program

d. **Grant Approval – Community Based Source Water Protection Project (from PADEP)**

Ms. Rynearson noted that staff will continue development of source water protection plans for selected surface water supply systems in the lower Susquehanna River Basin and continue to operate, maintain, and expand the Commission's Early Warning System for public water suppliers. These activities will address local source water protection issues as well as the development of a regional source water protection strategy.

PADEP - $100,000          SRBC - $0          Total - $100,000

On a motion by Commissioner Heffner, seconded by Commissioner Sachs, the Commission unanimously approved/ratified the contracts/grant in accordance with Ms. Rynearson's recommendations.

**13.     Acquisition of New Headquarters Facility**

The Director of Administration & Finance reported on efforts to acquire a new headquarters facility for the Commission. A request for proposal containing specifications for a new facility was published and the Commission received 10 proposals. Each proposal was evaluated using established criteria. The list was narrowed to three sites. Staff will continue to undertake due diligence on these sites and report back to the Commission with a recommendation and a capital budget proposal to carry out the project. No further action was needed by the Commission.

**14.     FY-2013 Budget**

The Director of Administration & Finance presented a resolution (Exhibit E) providing for the FY-2013 Budget and making allocated requests for funding from the member jurisdictions. The FY-2013 Budget totals about $12.4 million, which is smaller than the FY-2012 Budget of $16.6 million. Staff anticipates a decrease in Approval by Rule applications and the FY-2013 budget level has therefore been reduced accordingly. The $12.4 million in expenditures will include an estimated $9.2 million from the general fund and $3.2 million from the Water Management Fund.

Ms. Rynearson also made it clear that this budget was fully subject to the budgetary processes of the member jurisdictions.

On a motion by Commissioner Heffner, seconded by Commissioner Sachs, the Commission unanimously adopted the FY 2013 budget resolution.

**15.     Support of Additional FY-2012 Funding of U.S. Geological Survey's National Streamflow Information Program**

Mr. John Balay presented a resolution (Exhibit F) urging the U.S. Congress to appropriate funds to the USGS's National Streamflow Information Program (NSIP) and for the federal executive branch to support the increase. NSIP is a program through which critical stream gages in the New York and Pennsylvania portions of the basin, which might otherwise be threatened by budget cuts, can continue to be funded to support the SFFWS and other important water management efforts.

Commissioner Anderson commented that, while NSIP is important, this resolution concerns the budget of a federal agency and the federal government would therefore abstain from a vote on the resolution. On a motion by Commissioner Sachs, seconded by Commissioner Heffner, the Commission adopted the resolution by the unanimous vote of all three state members, with an abstention by the federal member.

**16.     Election of Officers**

Executive Director Swartz noted that election of officers for the coming Fiscal Year normally takes place at the June meeting of the Commission. On a motion by Commissioner Anderson, seconded by Chairman Lynch, the Commonwealth of Pennsylvania was unanimously

120928.1

elected the Chair of the Commission, and the State of Maryland was elected the Vice Chair of the Commission.

**ADJOURNMENT**

There being no further business before the Commission, the Chairman adjourned the meeting at approximately 12:40 p.m. The next regular meeting of the Commission is scheduled for September 15, 2011, in Cooperstown, New York.

| | |
|---|---|
| _____ | _____ |
| Date Adopted | Stephanie L. Richardson |

120928.1



Exhibit B7

# SUSQUEHANNA RIVER BASIN COMMISSION

1721 North Front Street • Harrisburg, Pennsylvania 17102-2391
(717) 238-0423 Phone • (717) 238-2436 Fax
www.srbc.net

Docket No. 20110607
Approval Date:  June 23, 2011

## CHESAPEAKE APPALACHIA, LLC

**Surface Water Withdrawal of up to 0.715 mgd
from Wyalusing Creek**

## Section 1.  Approval

After review of the record, including the technical findings of Susquehanna River Basin Commission (Commission) staff, the Commission determines that no adverse impacts to area surface water or groundwater withdrawals are anticipated by the operation of this project, and that the project is physically feasible, does not conflict with or adversely affect the Commission's Comprehensive Plan, and does not adversely influence the present or future use and development of the water resources of the basin.  Accordingly, the application of the project sponsor requesting a withdrawal in support of the project identified in Section 2, from the source identified in Section 3, is hereby approved by the Commission in accordance with the conditions set forth below.

Commission staff has coordinated with the Pennsylvania Department of Environmental Protection (PADEP), Department of Conservation and Natural Resources (DCNR), and the Pennsylvania Fish and Boat Commission (PFBC) during review of this project.

## Section 2.  Project Information

Information concerning the project sponsor, water use type, and location are set forth in the table below.

| Project Information | |
|---|---|
| Project Sponsor: | Chesapeake Appalachia, LLC |
| Approval Type: | Surface Water Withdrawal |
| Water Use Type: | Development of Natural Gas Wells |
| Municipality: | Rush Township |
| County: | Susquehanna County |
| State: | Pennsylvania |

120928.1

*A water management agency serving the Susquehanna River watershed*

Chesapeake Appalachia, LLC                                    Docket No. 20110607
Wyalusing Creek

## Section 3.  Source Information

Information concerning the source of water from which the withdrawal will be made is set forth in the table below.

| Source Information | |
|---|---|
| Approved Source: | Wyalusing Creek |
| Subbasin: | Middle Susquehanna |
| Watershed Boundary Dataset (WBD): | 0205010607 (Wyalusing Creek) |
| Withdrawal Location (degrees): | Lat: 41.787697 N        Long: -76.112886 W |
| Water Use Designation: | Warm Water Fishery (WWF) |
| Flow Statistics (cfs): | Q7-10 = 6.78; Average Daily Flow = 211.9 |
| Drainage Area (square miles): | 150 |
| Special Flow Protection Required: | Yes |
| cfs – cubic feet per second | |

## Section 4.  Approved Withdrawal Quantities and Limitations

The withdrawal approved hereunder is subject to the quantitative limits and restrictions set forth in the table below.

| Approved Withdrawal Quantities and Limitations | |
|---|---|
| Peak Day Withdrawal Amount (mgd): | 0.715 (Not to Exceed, When Available) |
| Maximum Instantaneous Withdrawal Rate (gpm): | 700 (Not to Exceed) |
| Flow Protection Type: | Passby; 20% Average Daily Flow |
| Flow Protection Rate (cfs): | 42.38 |
| Flow Protection Rate (gpm): | 19,022 |
| Method for Flow Protection Monitoring: | USGS Real-Time Gage 01534000; Tunkhannock Creek near Tunkhannock, Pennsylvania |
| Flow Protection Trigger Flow (cfs): | 109.80 |
| mgd – million gallons per day gpm – gallons per minute | USGS – U.S. Geological Survey |

The withdrawal is also subject to all other conditions set forth in this docket approval.

## Section 5.  Existing Approved Withdrawals

A summary of major conditions applicable to the existing approved withdrawals are listed in the table below.

120928.1

Chesapeake Appalachia, LLC                                          Docket No. 20110607
Wyalusing Creek

| Existing Approved Surface Water Withdrawals | | | |
|---|---|---|---|
| Source | Peak Day Withdrawal (mgd) | Commission Docket No. | Docket Expiration Date |
| Wyalusing Creek | 0.216 | 20081227* | 12/4/2012 |
| Wyalusing Creek | 0.499 | 20090610 | 6/8/2013 |
| * Chesapeake Appalachia, LLC acquired Commission Docket No. 20081227 from Epsilon Energy USA, Inc., and transferred ownership on April 21, 2010. | | | |

Because this approval is consolidating the existing approved withdrawals listed above, and as specified in Condition 18 in Section 7, all conditions of the dockets referenced above are superseded by this approval. The approved withdrawal from the source identified in Section 3 shall henceforth be subject to all conditions contained herein.

## Section 6.  Standard Conditions

1.  The project sponsor shall comply with all Commission regulations, including metering and reporting requirements contained in Commission Regulation 18 CFR §806.30.

2.  Prior to any withdrawal from the source listed in Section 3, the project sponsor shall install and maintain metering on the withdrawal in accordance with Commission Regulation 18 CFR §806.30.  The project sponsor shall notify the Commission, in writing, and submit digital photographs of the meter when it has been installed and certify the accuracy of the measuring device to within five (5) percent of actual flow.

3.  Within sixty (60) days from the date of this approval, the project sponsor shall submit a metering plan to the Commission for review and approval by Commission staff that accounts for all withdrawals.  Following approval, the project sponsor shall execute the plan and complete any installation of meters in accordance with the approved schedule.

4.  Within sixty (60) days from the date of this approval, the project sponsor shall submit an intake design to the Commission for review and approval by Commission staff.  The project sponsor shall obtain necessary general or individual permits from the jurisdictional permitting agency prior to use of the intake.  Any modifications proposed by the project sponsor for the permitted intake structure shall be submitted for review and approval by Commission staff in accordance with Commission Regulations 18 CFR §806.21 and §806.23.  The existing intake constructed for Docket No. 20090610 shall be removed, and the project sponsor shall conduct any restoration in accordance with the jurisdictional permitting agency regulations.

5.  The project sponsor or any other person shall allow authorized employees or agents of the Commission, without advance notice, at any reasonable time and upon presentation of appropriate credentials, and without delay, to have access to and to inspect all areas where the project is being constructed, operated, or maintained, or otherwise exercise all investigative powers authorized under Commission Regulation 18 CFR §808.12.

120928.1

6.  The project sponsor shall keep daily records of the project's withdrawal and shall report the data to the Commission quarterly, and as otherwise required.  The project sponsor shall also keep daily records of any other person receiving the water withdrawn under this approval for natural gas development and shall report the data to the Commission as required.  The project sponsor shall only supply water withdrawn hereunder to persons who have properly registered this docket approval pursuant to Commission Regulation 18 CFR §806.22(f)(12)(i).  Quarterly monitoring reports shall be submitted on-line and are due within thirty (30) days after the close of the preceding quarter.  Any alternative measuring, monitoring, or accounting procedure requested by the project sponsor shall be submitted for review and, if appropriate, approved by Commission staff prior to implementing or modifying existing equipment or procedures.

7.  The project sponsor shall maintain the totalizing meter and other measuring devices, accurate to within five (5) percent, so as to provide an accurate record of withdrawals and consumptive water uses, and certify to the Commission once every two (2) years, or as otherwise requested, the accuracy of all measuring devices and methods to within five (5) percent of actual flow.

8.  The project sponsor shall comply with the water conservation requirements specified in Commission Regulation 18 CFR §806.25(b).

9.  To satisfy the Commission's registration requirement, the project sponsor shall register with the PADEP all surface water and groundwater sources described in this docket in accordance with 25 PA Code §110.201, Pennsylvania Water Resources Planning Act, Act 220 of 2002.

10.  If the project sponsor fails to comply with the provisions of the Susquehanna River Basin Compact or any rule, regulation, or order of the Commission, or any term or condition of this docket, the project is subject to enforcement actions pursuant to Commission Regulation 18 CFR §808.

11.  Commission approval shall not be construed to exempt the project sponsor from obtaining all necessary permits and/or approvals required for the project from other federal, state, or local government agencies having jurisdiction over the project.  All such permits and/or approvals shall be obtained prior to the withdrawal of water.  The Commission reserves the right to modify, suspend, or revoke this action if the project sponsor fails to obtain or maintain such approvals.

12.  The Commission reserves the right to reopen any project docket or issue such additional orders, as may be necessary, to mitigate or avoid adverse impacts or otherwise to protect public health, safety, welfare, or the environment, pursuant to Commission Regulation 18 CFR §806.32.

13.  Commission approval confers no property rights upon the project sponsor.  The securing of all rights necessary and incident to the project sponsor's development and operation

120928.1

Chesapeake Appalachia, LLC                                                    Docket No. 20110607
Wyalusing Creek

of the project shall be the sole and exclusive responsibility of the project sponsor, and this approval shall be subject thereto.

14.  This project is approved for inclusion in the Commission's Comprehensive Plan for the Water Resources of the Susquehanna River Basin.

15.  If the project is discontinued for such a time and under such circumstances that an abandonment of the project may be reasonably inferred, the Commission may rescind the approval of the project unless a renewal is requested by the project sponsor and approved by the Commission.

16.  Should the project's approved withdrawals uses be expected to exceed the amounts listed herein, the project sponsor is required to make application for modification to this approval at that time.

17.  This approval is effective until December 4, 2012, the termination date of Docket No. 20081227, which originally approved the source location specified in Section 3 of this approval. As specified in Commission Regulation 18 CFR §806.31(e), the project sponsor shall submit an application by June 4, 2012, and obtain Commission approval prior to continuing operation beyond December 4, 2012.

## Section 7.  Special Conditions

18.  This approval hereby supersedes and rescinds Commission Docket Nos. 20081227 and 20090610.

19.  The project sponsor shall cease all withdrawals from the approved source when streamflow, as measured at the U.S. Geological Survey stream gage specified in Section 4, is less than the flow protection trigger flow specified in Section 4, and shall not reinstate withdrawals until the streamflow has remained above such flow protection trigger flow for 48 hours.  The project sponsor shall keep daily records of the U.S. Geological Survey stream gage and shall report the data to the Commission, as required.  The project sponsor may propose alternative flow monitoring to the Commission for staff review and, if acceptable, approval.

20.  Prior to any withdrawal of water, the project sponsor shall post at each entry to the property from a public right-of-way a sign that meets Commission specifications and displays a project description.  The project description shall identify the project sponsor, project name, docket approval number, and conditions of the surface water withdrawal approval including quantity, rate and passby flow requirement, docket expiration date, and contact information for the project sponsor and the Commission.  The sign shall be installed prior to any withdrawal of water and be maintained for the duration of the approval.  The project sponsor shall submit digital photographs as proof of sign installation prior to the initiation of the withdrawal.

21.  The project sponsor shall keep daily records of the well sites or companies receiving the water withdrawn under this approval and shall report the data to the Commission as required.

120928.1

Chesapeake Appalachia, LLC                                    Docket No. 20110607
Wyalusing Creek

22.  The project sponsor shall maintain legal access to the withdrawal location for the duration of the approval.

23.  The project sponsor shall demonstrate to the satisfaction of the Commission that all water withdrawn from surface water sources, while under control of or on a facility owned or operated by the project sponsor, is transported, stored, injected into a well, or discharged with appropriate controls and treatment to prevent the spread of aquatic nuisance species.

**CERTIFICATION:**  I, Stephanie L. Richardson, Secretary to the Susquehanna River Basin Commission, do hereby certify that the foregoing project docket was approved by the Susquehanna River Basin Commission on June 23, 2011.

Dated: June 24, 2011                  *Stephanie L Richardson*
                                      Stephanie L. Richardson

120928.1