**McGuireWoods LLP**
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Tel 412.667.6000
Fax 412.667.6050
www.mcguirewoods.com

**Gregory J. Krock**
Direct: 412.667.6042

# McGuireWoods

gkrock@mcguirewoods.com
Fax: 412.402.4162

April 20, 2021

**ELECTRONICALLY FILED**
Judge Jennifer P. Wilson
Ronald Reagan Federal Building and U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

  **Re:** **Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C. (No. 21–cv–658)**

Dear Judge Wilson:

Defendant Chesapeake Appalachia, L.L.C. ("CHK") fails to address its promise memorialized in the October 8, 2018 Settlement Agreement, that if CHK declined to serve as the operator for an Epsilon well proposal, CHK will not unreasonably withhold cooperation for permitting and access to co-owned assets such as water withdrawal points and well pads. CHK's actions as to the SRBC letter (including its April 19, 2021 letter to his Court), Epsilon's permit application, and access to the well pad are in direct contravention of the Settlement Agreement. CHK either can choose to operate the wells or cooperate with Epsilon—either choice obviates this entire detour. But when CHK does neither, this Court should require CHK to honor its agreement by cooperating and signing a SRBC letter that will not change the status quo.

As to CHK's responsive letter brief, CHK suggests to this Court that Epsilon gave its permit to withdraw water from Wyalusing Creek to CHK without receiving any consideration in return. CHK further suggests that—because it combined that permit with a separate CHK-owned permit (known as a docket) in order to receive a consolidated permit from SRBC, and installed pumps and equipment that made it more efficient to withdraw water under that consolidated permit (which it calls an "infrastructure") for the benefit of the JOAs—the consolidated permit and infrastructure belong exclusively to CHK. CHK's suggestions are baseless. *See* Affidavit of Henry Clanton and exhibits, Exhibit 1.

**Epsilon Has the Right to Use the Jointly-Owned Wyalusing Creek Water Source.** CHK cannot and does not dispute the following facts: (1) Epsilon retained an undivided 50% interest in the "Real Property Interests" conveyed to CHK in the Farmout Agreement in February 2010; (2) Epsilon used its Wyalusing Creek permit to develop three wells that were included in the Real Property Interests; (3) permits used to develop the Real Property Interests were also conveyed in the Farmout Agreement; (4) the month after it signed the Farmout Agreement, Epsilon transferred four permits, including the Wyalusing Creek permit, into CHK's name; (5) CHK combined the Wyalusing Creek permit with a separate CHK owned permit, and received a new permit number for the "consolidated" permit; (6) CHK used the consolidated permit to develop jointly-owned

April 20, 2021
Page – 2 –

wells under the JOAs; (7) CHK installed the infrastructure—as it was required to do under the consolidated permit—to draw water from Wyalusing Creek using the consolidated permit; and (8) CHK invoiced Epsilon for the water-related costs associated with the drilling of the jointly-owned wells under the JOAs. Nevertheless, CHK argues that Epsilon conveyed 100% of its interest in its Wyalusing Creek permit in March 2010 as a separate and unrelated transaction in which it received no consideration. CHK further argues that everything that it did to enhance the value of that permit—by utilizing it to obtain the consolidated permit, and then developing the infrastructure as required by that consolidated permit—inured to its exclusive benefit. This baseless argument is alarming.

It is apparent that Epsilon did not give its permit to CHK. While Epsilon transferred the permit into CHK's name, it did so in accordance with the Farmout Agreement because (as the designated operator) CHK would now utilize the permit to develop jointly-owned wells under the JOAs. Shifting the permit into CHK's name did not divest Epsilon of its undivided 50% interest in the permit. While CHK was entitled (as the operator) to combine the permit with other assets, and incur costs to further develop those combined assets, CHK was required to do so on behalf of both CHK and Epsilon. CHK was entitled to charge Epsilon for its share of any such costs of developing those combined assets. However, CHK cannot claim that those combined assets belong exclusively to CHK. As the co-owner of the combined SRBC permit and infrastructure, Epsilon has the same right to use those assets as does CHK, regardless of whether they are situated within a "Contract Area" under any particular JOA.

**Epsilon Will Suffer Irreparable Harm Without the SRBC Letter.** CHK's insinuation that Epsilon could simply re-propose and develop the wells as currently proposed at an unspecified time in the future is misguided. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211-12 (10th Cir. 2009) (upholding grant of injunctive relief because "lost opportunities and costs and inefficiencies" support a finding of irreparable harm). It does not negate the existence of irreparable harm. For example, capital available to Epsilon changes over time as does the availability of drilling rigs, equipment, and subcontractors.

Moreover, if Epsilon's proposals expire, CHK could argue that its purportedly "competing" Koromlan Well takes precedence and forever prevents Epsilon from proceeding with one of the Proposed Wells. The potential dissipation of Epsilon's mineral interests constitutes irreparable harm. *See Minard Run Oil Co. v. U.S. Forest Serv.*, C.A. No. 09-125, 2009 U.S. Dist. LEXIS 116520, at *88-89 (W.D. Pa Dec. 15, 2009).

**CHK Will Not Suffer Prejudice By Signing the SRBC Letter.** In its response letter brief, CHK conflates the alleged prejudice that it will suffer by signing the SRBC letter with the alleged prejudice associated with allowing Epsilon to serve as the operator of the Proposed Wells. The latter issue will be addressed during the briefing on Epsilon's motion for preliminary injunction in early May 2020. The only issue related to the SRBC letter is whether—if CHK signs the letter in late April, and the Court denies Epsilon's motion following the injunction hearing—CHK will suffer prejudice by virtue of the fact that it signed the SRBC letter. CHK sidestepped this issue because it is undisputed that CHK will not be prejudiced by signing the SRBC letter.

As set forth in Epsilon's initial letter brief, nothing in the SRBC letter affords Epsilon the right to withdraw any quantity of water from Wyalusing Creek. The SRBC letter merely sets forth the

obligations under the SRBC permit if Epsilon withdraws water from Wyalusing Creek. If CHK signs the SRBC letter, Epsilon cannot proceed in a manner inconsistent with this Court's ultimate ruling on the preliminary injunction. In fact, Epsilon is willing to prepare a letter (with input from CHK) that can be sent to the SRBC in the event that the Court were to deny the preliminary injunction stating that the SRBC letter CHK signed is rescinded, and that Epsilon acknowledges the rescinded letter does not afford Epsilon any right to withdraw any quantity of water from Wyalusing Creek.

Furthermore, "a public interest exists in the enforcement of contracts." *Id.*; *Green Strip, Inc. v. Berny's Internacionale, S.A.*, 159 F. Supp. 2d 51, 56 (E.D. Pa. 2001). The public interests will be advanced by preventing CHK from (1) signing a Settlement Agreement in which it expressly agreed to allow Epsilon to access jointly-owned water sources and impoundments in 2018 and (2) refusing to honor that agreement in 2021.  In addition, the public benefits from the efficient development of oil and gas resources so as to ensure there is not an adverse effect on the supply of natural gas or an adverse impact on natural gas prices.  *Steckman Ridge GP, LLC v. Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres*, No. 08cv168, 2008 WL 4346405, at *17 (W.D. Pa. Sept. 19, 2008); *see also Huntley & Huntley v. Borough Council*, 964 A.2d 855, 865 (Pa. 2009). Forcing Epsilon to develop an alternative water source and infrastructure is the exact inefficiency that Pennsylvania seeks to avoid.

**<u>The Court May Enter Injunctive Relief While CHK's Motion to Dismiss is Pending</u>**. A district court possesses inherent powers of equity sufficient to enable it to preserve the status quo until the question of its jurisdiction can be resolved."  *Fernandez-Roque v. Smith,* 671 F.2d 426, 431 (11th Cir. 1982). "[P]ending a decision on the question of jurisdiction, a District Court has the power to issue a temporary restraining order in order to preserve existing conditions." *Stewart v. Dunn,* 363 F.2d 591, 598 (5th Cir. 1966). "Thus, it is not necessary for this Court to make a final determination on the issue of jurisdiction as a predicate to issuing preliminary injunctive relief, it is sufficient that plaintiff has shown a reasonable probability that it will ultimately prevail on this issue." *Star Creations Inv. Co. v. Alan Amron Dev., Inc.*, No. CIV. A. 95-4328, 1995 WL 495126, at *16 (E.D. Pa. Aug. 18, 1995) (citation omitted).

Despite CHK's assertion to the contrary, Epsilon is seeking to preserve the status quo. The consolidated SRBC permit and infrastructure have been used to develop the jointly-owned wells under the JOAs. By requiring CHK to sign the SRBC letter, the Court will retain the ability to preserve the status quo (if it grants the motion for preliminary injunction) by ensuring that Wyalusing Creek can be utilized as a water source to develop additional wells under those JOAs.

Respectfully submitted,

/s/ Gregory J. Krock

Gregory J. Krock