EPSILON ENERGY USA, INC.    :
                            :
        vs                  :    1:21-CV-00658-JPW
                            :
                            :
CHESAPEAKE APPALACHIA, LLC  :


            BEFORE:      HONORABLE JENNIFER P. WILSON

            PLACE:       Harrisburg, Pennsylvania

            PROCEEDINGS: Telephonic Oral Argument

            DATE:        Monday, April 26, 2021; 2:00 p.m.


APPEARANCES (telephonically):

For the Plaintiff:        Gregory J. Krock, Esquire
                          Elizabeth M. Thomas, Esquire
                          McGUIRE WOODS, LLP
                          260 Forbes Avenue, Suite 1800
                          Pittsburgh, PA  15222
                              - and -
                          Jonathan T. Blank, Esquire
                          McGUIRE WOODS, LLP
                          310 Fourth Street, N.E., Suite 300
                          Charlottesville, VA  22902

For the Defendant:        John B. Dempsey, Esquire
                          Nicholas F. Kravitz, Esquire
                          Richard L. Armezzani, Esquire
                          MYERS BRIER & KELLY, LLP
                          425 Spruce Street, Suite 200
                          Scranton, PA  18505

Joining call, Counsel for Chesapeake, Joseph Tarantelli, Esq.

1                    (2:00 p.m., convene.)

2          THE COURT:  Good afternoon.  This is Judge Wilson

3   joining for a hearing in Epsilon Energy, USA, Inc. versus

4   Chesapeake Appalachia LLC at this court's 21-CV-658.  This is

5   an on-the-record oral argument.  I said hearing.  I will strike

6   that.  It is an oral argument on one component of Plaintiff's

7   motion for preliminary injunctive relief.

8          Before we delve into the preliminary issue that the

9   Court would like to address, let me just ask Plaintiff's

10  Counsel to state appearances on the record.

11         ATTORNEY KROCK:  Your Honor, this is Greg Krock on

12  behalf of Plaintiff Epsilon.  With me are my colleagues,

13  Jonathan Blank and Elizabeth Thomas.

14         THE COURT:  Let me turn to Defendant's Counsel and ask

15  you to state your appearances for the record.

16         ATTORNEY DEMPSEY:  Good afternoon, Your Honor.  This

17  is Jack Dempsey on behalf of Chesapeake.  Appearing with me are

18  Nicholas Kravitz and Rich Armezzani.

19         Judge, my colleague, Joseph Tarantelli, who is an

20  attorney with Chesapeake, Mr. Tarantelli, has not admitted an

21  appearance in the case, and he is not admitted in Pennsylvania.

22  And he would not expect the Court's permission to address any

23  of the matters before the Court today, but he would like the

24  opportunity, if the Court would permit it, to listen to the

25  oral argument, just as he would do if the matter were going to

1    be conducted in open court.

2            So I note that Epsilon has indicated it has no

3    objection to that.  And I would ask the Court to consider my

4    request that Mr. Tarantelli be able to listen to the argument.

5            THE COURT:  Thank you for previewing that ahead of

6    today's argument.  I'm aware of the issue.  There being no

7    objection, and the Court thinking that's entirely appropriate,

8    then permission is granted and Attorney Tarantelli is welcome

9    to join us.

10           ATTORNEY DEMPSEY:  Thank you, Your Honor.

11           THE COURT:  Certainly.  So the issue that's before the

12   Court for today's purposes is -- I will refer to, adopting to

13   the nomenclature utilized by the parties, as the SRBC

14   commitment letter issue, which, as I indicated a moment ago, is

15   merely a component of the ultimate relief requested in

16   Plaintiff's motion for preliminary injunction.  I have reviewed

17   the parties' letter briefs as well as the supporting documents

18   that were filed at documents 15, 27 and as amended, 28 and 29.

19           In addition, the preliminary issue I wanted to address

20   before I hear your arguments is that Plaintiff filed a motion

21   to seal an exhibit, which would namely be a transcript from the

22   2018 case.  That motion was received by the Court in the form

23   of a courtesy copy sent by e-mail on Friday with the Court's

24   permission, and the original motion has now been docketed, as

25   of just a short while ago, today.

1      Is there any opposition from Defendant with respect to

2 the motion to seal?

3      ATTORNEY DEMPSEY:  No, Your Honor.  There is no

4 objection to the sealing of the transcript.

5      THE COURT:  All right.  So I will -- after the

6 argument today I'll be glad to grant the motion to seal, which

7 I will file of record.  But I just wanted to clarify this

8 issue.  And I will also review the transcript which has been

9 submitted, so that will be part of the record for purposes of

10 today's proceeding.

11      Before we go ahead and proceed with the argument, I

12 just want to find out on behalf of Epsilon who will be

13 presenting the argument today.

14      ATTORNEY KROCK:  This is Greg Krock, Your Honor.  And

15 I will be presenting the argument.

16      THE COURT:  So I will assume, for the benefit of our

17 court reporter, and she and I will both rely on this

18 assumption, that if anyone is speaking on behalf of Epsilon

19 today that it's you, Attorney Krock.  If you elect to defer to

20 some other counsel, if you could please specifically note that

21 so that our court reporter and I know who is arguing.

22      Who will be arguing this matter on behalf of the

23 Defendant?

24      ATTORNEY DEMPSEY:  Your Honor, this is Jack Dempsey.

25 I will.

1          THE COURT:  Same request.  If any other attorney -- if

2     you want to defer to any other attorney, please specifically

3     note that so we know who is speaking.  Alright?

4          ATTORNEY KROCK:  Yes, Your Honor.

5          THE COURT:  All right.  With those preliminary matters

6     being addressed, let's go ahead and proceed.

7          Attorney Krock, I'm happy to hear your argument.

8          ATTORNEY KROCK:  Thank you, Your Honor.

9          As Your Honor pointed out, the current issue involving

10    the SRBC commitment letter is a very, very narrow one; just a

11    subset of our request for preliminary injunctive relief.  And

12    it's really a timing issue that has caused us to kind of

13    segregate the SRBC commitment letter issue.

14         Epsilon will not be able to use the water from

15    Wyalusing Creek to drill its proposed wells unless it gets

16    Pennsylvania DEP approval of its Water Management Plan.  The

17    approval of the Water Management Plan will not convey the

18    substantive right to use that water from Wyalusing Creek as a

19    water source.  The approval from the DEP will merely establish

20    that using that water would be acceptable to the Pa. DEP.  It's

21    not some type of a violation.

22         The problem, and the reason we appreciate the Court

23    segregating this issue for us, is that Pennsylvania DEP will

24    not begin reviewing Wyalusing Creek as a potential water source

25    under that Water Management Plan unless and until Chesapeake

1    signs that commitment letter.  So the realty is we need the

2    letter just so that the Pennsylvania DEP can start its review

3    process so that in the future, in May, after this Court

4    conducts an injunction hearing, if Your Honor grants our

5    motion, then the approval will be in place and then we can take

6    advantage of that water source.  That's why timing is so

7    critical and why the issue is so narrow.

8           Now, I believe we've established in our letter brief

9    and our reply brief all of the required injunction elements

10   that relate to the SRBC commitment letter; the likelihood of

11   success on the merits, irreparable harm absent the letter, and

12   the absence of any harm to Chesapeake or anybody else if that

13   letter is signed now as opposed to waiting until, you know,

14   May, after the injunction hearing.

15          As far as success on the merits, Your Honor, I think

16   it's important to start by pointing out something that I think

17   was apparent in our papers; but the ownership of permits in the

18   oil and gas industry, like the SRBC permit, is a little bit

19   unique and a little bit unusual simply because it is so common

20   in the industry to form joint operating agreements in which

21   many people contribute different assets and funds but only one

22   person kind of serves as the operator, who is the custodian

23   that controls the various assess.  And the SRBC water permit is

24   not the only instance in which that occurs.

25          If you look, for example, at drilling permits for the

1  Pennsylvania DEP website, it's not that unusual for a lot of

2  JOA parties to get together and collectively contribute the

3  funds that are necessary to submit the permit, but the permit

4  is issued only in one person's name.  And when you go and look

5  on the website for the Pennsylvania DEP, there is one person's

6  name that is associated with that drilling permit, the

7  operator.  But that doesn't mean the operator is the exclusive

8  owner of the permit.  The permit can still be co-owned by lots

9  of other folks.

10  That's exactly the same for the SRBC water permits.

11  They use the word owner or project sponsor.  But that doesn't

12  necessarily mean that the person in whose name the permit

13  exists is the only owner of that permit.

14  THE COURT:  Attorney Krock, let me ask you a question,

15  though.  I have in front of me the proposed SRBC commitment

16  letter.  And this was filed at document 4-5.  This is the draft

17  that was submitted, as I understand it, to Chesapeake back on

18  February 9th of 2021, and it is of record in this case.

19  In the second and third paragraphs of this letter,

20  it -- and my understanding is this was drafted by Epsilon -- it

21  states that the supply of water relative to docket number

22  2017-0605, which I'll just refer to as Wyalusing Creek water

23  source, that that supply of water will be provided subject to

24  the terms and conditions of the Water Sharing Agreement that is

25  envisioned between Epsilon and Chesapeake.

1    And then it goes on to say that this letter does not

2    obligate Chesapeake to sell water to Epsilon.  Rather, it

3    simply states a willingness to do so, subject to availability.

4    So what I'm having trouble understanding is why those

5    two paragraphs are not effectively an admission by Epsilon that

6    the Wyalusing Creek water source is not jointly owned.

7    You can go ahead and address that.

8    ATTORNEY KROCK:  Yeah.  I mean, the language there we

9    included to mirror -- because we knew there was a dispute.  We

10    knew we can't say hey, they're not going to sign a letter if we

11    say we own an undivided one-half interest.  They're not going

12    to sign that letter while this dispute is ongoing.

13    So what we did is we asked the SRBC for, you know,

14    essentially hey, can you guys a help us draft this letter, what

15    are the typical language that would come in here, you know, if

16    the person wanting to use the water was someone who was not

17    named as the project sponsor or the owner on the SRBC permit.

18    And this was, I think, a similar component of that language.

19    So we figured we could include neutral language that

20    would allow us to get the letter signed and to get it in the

21    Pennsylvania DEP's hands without committing on either side to

22    having this letter be binding as far as who actually owns the

23    water source.

24    THE COURT:  All right.  You can proceed with your

25    argument.  Well, actually, no.  Let's stay here for a moment.

1    I don't perceive this language to be neutral.  Explain to me
2    how that's neutral.  It seems to expressly envision future
3    agreement and/or a financial arrangement not just to share the
4    water source but, indeed, for Epsilon to potentially purchase
5    the access to the water source from Chesapeake.
6         Neutral language I would imagine to be something like
7    this commitment letter is being entered into without prejudice
8    to the parties ultimately seeking a resolution as to joint
9    ownership of this water source.
10        Wouldn't that be more in the nature of neutral
11   language?
12        ATTORNEY KROCK:  Um.  Yeah, I will agree with that,
13   Your Honor.  And I guess I should back up and say when we
14   originally proposed the letter -- and maybe I guess I was
15   thinking more on the most recent iteration that we didn't
16   change.  But at the time that we proposed the letter and put it
17   together, I guess we were probably even one step ahead and
18   didn't -- you know, the lawyer -- I don't even know if the
19   lawyers had helped draft this letter, I think it was some of
20   the business people, and it was before some of the issues had
21   even come to a head.
22        So to a certain extent, I think they were just trying
23   to be -- express a willingness to cooperate on certain things
24   and to reach a middle ground so that the project could move
25   forward.  So I don't think anyone envisioned that as saying

1   hey, you know, this is a binding acknowledgment that we don't

2   have a right to do this.  But we weren't trying to be

3   heavy-handed on it either.  And just say listen, we will reach

4   an arrangement somehow as far as the water, because when -- I

5   mean, I think we even have to acknowledge that through the

6   combined permit, we contributed a portion of that and

7   Chesapeake contributed a portion of that and that we co-own an

8   undivided 50 percent interest in the water.

9          But this water is actually going to be used for

10  drilling wells under the JOA.  And the JOAs, we're allowed to

11  reallocate that.

12         So I think there was an acknowledgment on our part

13  that while we would be using the water source and we own an

14  undivided 50 percent interest, we weren't necessarily

15  exclusively using it for our own purpose.  We were using it

16  under the JOA and that there still might be some agreement

17  necessary in order to reflect that; that this wasn't being used

18  exclusively by Epsilon for Epsilon wells, this was being used

19  for JOA wells in which other parties are going to own an

20  interest.

21         So there still may be a necessity of having some water

22  agreement in place.  But it's because this is being used, you

23  know, for wells that are JOA wells and not necessarily just

24  Epsilon wells.

25         THE COURT:  All right.  You can proceed with your

1    argument.  I think I understand your response.

2          ATTORNEY KROCK:  Okay.  I guess there are two separate

3    but related issues associated with the SRBC commitment letter,

4    Your Honor.  One is do we own an undivided 50 percent interest

5    in the permit itself, which is the right to withdraw water from

6    Wyalusing Creek.  The second is does Epsilon co-own the

7    facility or the infrastructure that have been constructed to

8    pump the water out and store it and to utilize the impoundment.

9    Again, related but separate issues.

10          We believe that while there are some facts that are

11   disputed about the co-ownership of the permit itself, that if

12   you just look at the undisputed facts, those are sufficient to

13   satisfy our burden of establishing a likelihood of success on

14   the merits.  Just the undisputed facts.

15          It's undisputed that Epsilon was the sole and

16   exclusive owner of an SRBC permit to withdraw water from

17   Wyalusing Creek.  And that was a permit that was docket number

18   2008-1227.  And I think Your Honor may have figured out that

19   the first four digits of the docket -- or the permit number was

20   the year that it was issued.  So that was a 2008 permit.

21          It was undisputed that Epsilon and Chesapeake signed a

22   farmout agreement in February of 2010 in which Epsilon conveyed

23   an undivided 50 percent interest in certain assets to

24   Chesapeake so that Chesapeake would then serve as the operator

25   under a series of JOAs to develop those assets.  It is

1    undisputed that just one month later, one month after the

2    farmout agreement, Epsilon conveyed certain SRBC water permits

3    and transferred them into Chesapeake's name, including the

4    Wyalusing Creek permit.  But there were several others.

5           It is undisputed that Chesapeake then combined the

6    permit that Epsilon had conveyed into its name with a separate

7    permit that Chesapeake had that was in close proximity on

8    Wyalusing Creek.  It had a permit.  Epsilon had a permit.  They

9    were very close in Wyalusing Creek.  So Chesapeake decided to

10   combine them together to form a consolidated or a combined

11   permit.

12          It is undisputed that when that combined permit came

13   up for renewal just a year later, the SRBC continued to

14   reference in that renewed combined permit the old Epsilon

15   permit, the one at 2008-1227.  That permit is still identified

16   as the source, or the origin, of the entire project.

17          Finally, it is undisputed that Chesapeake continued to

18   use the combined permit to withdraw water from Wyalusing Creek

19   to drill wells under the JOAs that are jointly owned by

20   Chesapeake and Epsilon and others.

21          So we believe that just those undisputed facts would

22   be sufficient to establish that there is an undivided

23   50 percent interest in that combined permit that still belongs

24   to Epsilon.

25          Now, Chesapeake's response and Chesapeake's position

1   would -- and Chesapeake would have this Court believe one of

2   two things.  First, that Epsilon did not retain a 50 percent

3   undivided interest pursuant to the farmout agreement and that

4   this permit had nothing to do with the farmout agreement but

5   was a separate, completely different transaction a month later

6   in which Epsilon just decided to give its permit for no value,

7   no consideration.

8         The second thing that I believe Epsilon is asking this

9   Court to find is that somehow even if there was a co-ownership,

10   once Chesapeake decided to combine the permits together that

11   somehow that served to extinguish our interest.  And on an

12   ongoing basis, it's only Chesapeake that has an interest in the

13   combined permit.

14         But neither of these arguments are consistent with the

15   agreement, and they're not consistent with common sense.  You

16   know, we have pointed out in our papers the language in the

17   farmout agreement that makes clear that not just the underlying

18   wells and some of the assets but also other permits, other

19   instruments that were necessary to develop the wells that

20   Epsilon was contributing to the farmout were also included.

21         Your Honor, it's not uncommon in these type of

22   transactions to have a list of some assets that are included

23   but then say that's including but not limited to, we can't

24   necessarily be sure we have identified every single asset

25   that's included.  So those are clearly illustrative.  But

1   clearly, they're also broad categories of assets that are

2   included, and clearly these permits fall within those broad

3   categories of assets that were included.

4          But from a common sense standpoint, the assets clearly

5   have value.  We are here fighting vigorously over the ownership

6   of this permit.  So the notion that a month after the farmout

7   was signed that Epsilon just decided to give this entire permit

8   100 percent to Chesapeake simply defies logic.

9          A similar argument, Your Honor; after the permits were

10  combined, the notion that Epsilon's interest somehow was

11  extinguished is simply illogical.  You know, as the operator of

12  jointly-owned assets, Chesapeake was certainly entitled to take

13  actions to try to enhance their value or do things to -- in

14  furtherance of the farmout agreement and the JOAs.

15         So we are not suggesting in any way, shape or form

16  that Chesapeake acted improperly in combining the permits and

17  building out the infrastructure.  That was certainly something

18  that Chesapeake was entitled to and even expected to do in

19  order to jointly develop these assets.  I think it's great they

20  did.

21         But Chesapeake's actions as a matter of law enure to

22  the benefit of both of the parties that contributed to the

23  permit not just Chesapeake.

24         The final comments as far as the permit, Your Honor,

25  is while there are certain things that are undisputed, I think

1    one of the things that is disputed is kind of the location of

2    the withdrawal point.  And we went back and did some digging on

3    that.  And I hope our letter reply is clear.  But we have

4    confirmed that when the two permits were combined together, the

5    Epsilon permit and the Chesapeake permit, the SRBC used our

6    withdrawal point on the Epsilon permit.  That was the location

7    point that was utilized.

8          And by looking through kind of the chain of title, if

9    you will, we have confirmed that the actual coordinates of the

10   withdrawal point that is being used today in the combined

11   permit is, in fact, the location of the withdrawal point that

12   related to the Epsilon permit all the way back in 2008.  So

13   that water source right now is the exact withdrawal point of

14   the former Epsilon permit.

15          THE COURT:  What is the significance of that fact?

16          ATTORNEY KROCK:  Well, their argument that we sought

17   in opposition to our motion was that somehow that our permit

18   was somewhere else, and that when they say it was extinguished

19   or it ceased to exist, that somehow there had been a

20   significant change and now the water is being withdrawn from a

21   completely separate location that is different from where our

22   water supply source was.

23          Now, I would argue, Your Honor, even if that were the

24   case, I still think we would own an undivided 50 percent

25   interest because the permits were combined and the volumes were

1    combined.  So I'm not saying that's dispositive.  But I am

2    suggesting that it was Chesapeake that argued somehow that the

3    location had changed, and the reality is it hasn't.  It's the

4    same point where we were withdrawing water back before the

5    farmout agreement was signed.

6         THE COURT:  Okay.

7         ATTORNEY KROCK:  As far as the infrastructure, Your

8    Honor, the combined permit contemplated that there would be an

9    infrastructure that would be built out.  That's inherent in the

10   permit and the -- you know, the process of withdrawing water

11   from Wyalusing Creek.  So it was completely understood by, I

12   think, everybody that there was going to be infrastructure as

13   far as pumps and equipment and storage facilities in order to

14   draw this volume of water out of Wyalusing Creek to drill

15   wells.

16        Now, under the JOAs, each JOA party is required to pay

17   its pro rata share of the costs of developed infrastructure

18   under the JOA.  And quite frankly, even absent the JOAs under

19   kind of the 50/50 ownership that we had with Chesapeake as far

20   as Wyalusing Creek, we would be expected to pay our pro rata

21   share of any costs to develop a jointly-owned asset.  That's

22   fair.

23        So you know, we fully anticipate and expect that to

24   the extent Chesapeake's incurred capital costs to enhance the

25   value of a jointly-owned asset that they are entitled to, you

1    know, charge us for our pro rata share of those costs.

2           Now, for the wells that were drilled under the JOAs,

3    it's our understanding that Epsilon did pay water costs.  We

4    saw bills that said hey, these are costs associated with water

5    for developing wells in which you own an interest, and you've

6    got to pay your pro rata share of the costs.

7           The problem is we're not exactly sure what those costs

8    were.  It wasn't clear to us, were these capital costs that

9    were being passed on to us, were these other costs?  And

10   Epsilon asked for an audit and said we would like to better

11   understand what these costs were, and we didn't receive the

12   information that Epsilon wanted to assess that.  So it wasn't

13   entirely clear what were the costs and what was passed on.

14          We now understand, from looking at Chesapeake's

15   argument in this case, they seem to be arguing that they can

16   pick and choose what costs they want to pass on to us and have

17   us pay for so that we jointly own these assets.  But they are

18   suggesting if they elected not to, whether intentionally or

19   unintentionally, if they failed to pass costs on to us and if

20   they incurred all of the capital costs, well, then it's their

21   asset and they can keep it and they can exclude us from it.

22          That's really not the way the operator-ship works.

23   It's now how one works when one owns an undivided 50 percent

24   interest in an asset.  They can't pick and choose when they

25   want to pass costs on to us and when they don't in order to try

1    to kind of gain control over a jointly-owned asset.

2              So to this date we're not sure how what we paid in

3    water costs and how they were calculated.  But it really

4    doesn't matter.  They have gotten an obligation.  We have an

5    obligation to pay our pro rata share of those costs.  And if

6    they don't charge it for us, they can't then come back and say

7    well, you didn't pay it so we own the asset.

8              So the bottom line is that we can figure out what was

9    charged to us and what was not as far as the development of the

10   infrastructure.  But we're entitled to use that infrastructure.

11   We're a co-owner of that just as much as we are of the

12   Wyalusing Creek permit.

13             So for those reasons, Your Honor, I think we have

14   established the likelihood of success on the merits as far as

15   both the permit itself and the infrastructure.  I think

16   that's -- you know, the most challenging issue is, I think, as

17   far as irreparable harm to Epsilon.  I think we have kind of

18   covered that already with the deadlines for our permits and

19   avoiding the arguments that our well proposals have either

20   expired or been in breach.

21             The only thing I will point on irreparable harm is

22   that it seems like Chesapeake's position is that we can simply

23   re-propose these wells if our proposals expire and that because

24   the gas will still be in the ground, that we haven't lost

25   anything.  So that the ability to re-propose wells simply

1    defeats any finding of irreparable harm.

2         The argument -- this type of argument has been

3    rejected by courts, including the Third Circuit.  I think we

4    cite the Minard Run case in our papers and that interfering

5    with their development is irreparable harm.  The Minard Run

6    case cited in our papers, I believe I said which stands for the

7    proposition that real property interests are unique and that

8    the interference with the development of real property is also

9    unique and gives rise to irreparable harm.  Otherwise, you

10   could never get an injunction in a case like this.

11        You would always be able to say that as long as the

12   property is not permanently taken from the plaintiff that the

13   plaintiff can never get an injunction, because there will

14   always theoretically be an opportunity to develop that property

15   in the future.  And that's not the law.  There are plenty of

16   cases out there, including the oil and gas context when

17   injunctions are granted.

18        The reasons for that is other courts have recognized

19   that specifically with oil and gas development, the logistics

20   associated with the development are very, very challenging and

21   things change as far as conditions.  For example, you know, a

22   company's cash position changes over the years.  So does the

23   party have the capital available to proceed with the well?

24   What about some of the other JOA parties who have consented;

25   what is their situation like?  Are they going to be able to

1  participate in a well a year from now or two years from now?

2  THE COURT:  Mr. Krock, I understand your argument in

3  response to the opposition from Chesapeake, but I want to ask

4  you a slightly different question on the element of irreparable

5  harm.  And that is this.

6  So on page three of your initial letter brief -- so

7  this is at document 15 -- you noted that Pennsylvania DEP has

8  already reviewed and approved certain proposed water sources in

9  Epsilon's Water Management Plan.

10  And so my question has to do with timing.  Today is

11  April 26th.  My understanding is Epsilon is proposing to begin

12  drilling at the proposed site on May 22, which is in 27 days.

13  As a practical matter, is there enough time remaining in the 27

14  days between now and May 22 for Pennsylvania DEP to review and

15  approve the Wyalusing Creek water source --

16  ATTORNEY KROCK:  I believe so.

17  THE COURT:  -- in addition to those already approved?

18  ATTORNEY KROCK:  Yes, I believe so.  I mean, we --

19  it's hard for us, you know, to -- and it's a challenge to

20  represent to Your Honor exactly how long it's going to take

21  because while our folks have a good working relationship with

22  people at the Pennsylvania DEP, they really can't commit to a

23  certain day.  So we will try to ask them to expedite things.

24  We will call and ask for updates and input.  And sometimes you

25  get slightly different responses, depending on who you talk to

and when.

So we did get the Pennsylvania DEP to at least assess some of the other water sources, the smaller ones and the other ones that in and of themselves aren't sufficient for the project. But I think we have done what we can to expedite the process so that we do still believe that if the SRBC commitment letter is signed today or tomorrow or even this week that we still will get approval in time for us to move forward.

THE COURT: All right. I think you just answered my related question but I just want to verify. In the event that this component of your injunctive relief request is denied; meaning if I don't order Chesapeake to sign the commitment letter, I take it that the already-approved water sources would not be sufficient for the proposed well.

Am I understanding that correctly?

ATTORNEY KROCK: That's correct, Your Honor.

THE COURT: All right. So this leads to my next question, which is if I were to deny your request for expedited resolution of the commitment letter issue or otherwise deny the requested relief regarding the commitment letter, then again, as a practical matter, does this cause your motion for preliminary injunction to become moot?

ATTORNEY KROCK: It's a challenging question, Your Honor. I would say not necessarily but potentially. And by that I mean there are other avenues that we could pursue at the

1    11th hour to try to see if there is something else we could do

2    from a water standpoint.  But that would be -- the likelihood

3    of success would be pretty minor.

4         So timing wise, I think we have a lot -- we have a

5    little bit more wiggle room; where if it was a timing of hey,

6    listen, you know, the SRBC commitment letter might be delayed,

7    we might not get it until later than we would really like to,

8    is there still ways we can make this project work?  The answer

9    is yes.

10         If the statement is well, you are not and you are

11    never going to be able to draw water from Wyalusing Creek, if

12    there is something else you can do to make these wells happen,

13    there are things we might be able to try, which is why I'm

14    reluctant to say it would become moot.  But I think from a

15    practical standpoint it may become moot because those efforts

16    would likely not be successful.

17         THE COURT:  I'm not sure -- in the two different

18    scenarios that you laid out, I want to make sure we're

19    understanding each other, because I think the scenario I

20    presented is a slightly different one.  And that is this.

21         If I were to decline to take expedited action, as I'm

22    being requested to do and I have entertained the possibility of

23    doing, in the form of essentially carving out the SRBC

24    commitment letter issue; or in the alternative, if I were to

25    deny the sort of preliminary request for relief, which is order

1  Chesapeake to sign the SRBC commitment letter, and so through

2  one of those courses of action, now you don't have a signed

3  commitment letter.

4      Now we go forward to the hearing on your motion for

5  preliminary injunction, which I think is scheduled for May

6  11th, absent the SRBC commitment letter being submitted to

7  Pennsylvania DEP, does it become an impossibility for Epsilon

8  to go forward as planned on May 22, such that I could

9  anticipate you'll say to me on May 11th hey, Judge, sorry, this

10  is now a moot point because we can't obtain approval within the

11  remaining 11 days from DEP of the Wyalusing Creek water source?

12      ATTORNEY KROCK:  The answer to is that question -- I

13  apologize, Your Honor.  I did misunderstand.  When I said we

14  have more flexibility on the timing, I think that's what I

15  meant, is that if Your Honor does not give us the expedited

16  relief that we're seeking today so that the Pennsylvania DEP

17  can start reviewing the Wyalusing Creek, you know, option, is

18  that a problem for us?  Yes.  But will it completely moot the

19  hearing on the 11th and 12th?  I don't think so.

20      And I think that's -- I think we could probably --

21  it's not -- it would be challenging for us.  But my

22  understanding is that we may be able to do other activities as

23  long as we -- if we were successful at the injunction hearing

24  on the 11th and 12th and Your Honor allows us access to the

25  Craige well pad and orders Chesapeake to cooperate with us,

1    there may be things that we could do to satisfy the

2    commencement of operations of the well that don't require the

3    extensive water source from Wyalusing Creek so that we would

4    satisfy our obligations to commence operations but not need the

5    water.

6         Again, that -- it's not something that is optimal and

7    it would be challenging.  So I'm not suggesting that our

8    request for the interim emergency relief for the SRBC

9    commitment letter isn't important because it is.  I'm just

10   suggesting it's conceivable we could still maneuver things such

11   that we could -- we could still arguably commence operations by

12   the May 22nd date and we wouldn't need the water on that date.

13   We might not need the water for a short period of time after

14   that.

15        Does that make sense, Your Honor?

16        THE COURT:  I think so.  I think to some extent,

17   though, that that does undermine your irreparable harm

18   argument.  Why does that not undermine your irreparable harm

19   argument?

20        ATTORNEY KROCK:  Well, because I think some of the

21   costs of things -- if we're not going to get that permit, we

22   would actually have to start doing things that are interfering

23   with existing operations on the existing wells.  So in order

24   for us to drill new wells on the Craige well pad, we have to do

25   certain work or Chesapeake has to do certain work, somehow in

combination, to shut in the existing wells and to start doing

things on the well pad.

If we were to start doing that and then not get

approved by the SRBC and not have this water source, we would

be doing all sorts of activities that are interfering with

existing wells that are keying up the preparation for the new

well that would then all be for naught if we don't have that

approval.

So the reality is we would be doing things that in

good oil field practice one would not do until one has one's

water permit lined up. So it's not physically impossible. But

from a practical standpoint, it's just not the way you do

things in the industry and it's problematic.

THE COURT: Okay. I understand. All right. Is there

anything else you would like to let me know before I turn to

Defendant's Counsel?

ATTORNEY KROCK: The last comment I would leave you

with, Your Honor, is pretty much the first one is how narrow

the issue is. As far as the harm that might be caused, we read

Chesapeake's response to argue significantly about the evils of

having two separate operators working on the same well pad.

And while we disagree with that, we think that if Chesapeake

cooperates, there is no issue whatsoever, we don't view that as

the issue for today. We view that as the issue for the

ultimate injunction hearing.

1       The issue today is if Chesapeake signs the SRBC
2   commitment letter and we submit it to the Pennsylvania DEP
3   today, is there any harm and will they suffer any harm if Your
4   Honor rules against Epsilon at the injunction hearing and says
5   that we're not entitled to move forward.  That is the issue
6   that comes into play as far as will somebody else be harmed.
7   And clearly, Chesapeake will not be harmed by signing this
8   letter, because if Your Honor rules against us at the
9   injunction hearing, there will be no permanent effect or
10  downside of having signed the letter.
11      THE COURT:  All right.  Thank you, Mr. Krock.  Let me
12  turn to, I think it was Mr. Dempsey arguing on behalf of
13  Chesapeake.  Attorney Dempsey.
14      ATTORNEY DEMPSEY:  Thank you, Your Honor.  Judge, I
15  would like to pick up just with the series of questions that
16  you just posed to Mr. Krock, and I would like to focus there
17  for a moment.
18      What you are being asked to do today without a hearing
19  and on an emergency of Epsilon's making is to grant a mandatory
20  injunction.  And you've just asked the question whether the --
21  whether the injunction is necessary, whether it is necessary
22  that it be entered today before a hearing, whether it is
23  necessary at all.
24      The answer you got to that question demonstrates the
25  inability of Epsilon to demonstrate irreparable harm.  The

1    answer was is it -- is it necessary, would it moot the case?

2    No, I'm not going to say it would moot the case.  There are

3    other things we could try.  It would be more challenging.  It

4    would not be as optimal.  The suggestion is it may be more

5    expensive.

6         But that is not the standard, as the Court well knows.

7    And this Court entered a preliminary injunct-- a mandatory

8    injunction -- it's the only one, Your Honor, that we could

9    identify as having been entered by the Court in Drenth versus

10   Boockvar -- and carefully articulated the standard that

11   attaches and the burden, quite frankly.

12        It is Epsilon's burden to come into court and make a

13   clear showing of the four elements for success on a mandatory

14   injunction.  It's a heightened standard when you are asking a

15   party to change its position, which is what they are asking

16   here.

17        And when you put the question squarely to them, does a

18   decision by the Court that doesn't grant the request today moot

19   your proposal, the answer is no, they can't say that.

20        And so at the very least, this is not a question for

21   the Court for today; not in the face of the answer you got to

22   that question.

23        And Your Honor, we would submit that this is not a

24   case that would warrant mandatory injunctive relief under any

25   circumstances.  Mr. Krock gave a very extensive presentation to

1    the Court about how things work in the industry and ownership

2    doesn't necessarily mean ownership in the industry.  And

3    ownerships of permits, it's very common that even though it's

4    owned by everyone, the Commonwealth of Pennsylvania would

5    identify it as owned by Chesapeake.

6         And respectfully, that -- all of that argument does

7    not meet the standard that this Court articulates in Drenth

8    versus Boockvar, and that is the standard in the Third Circuit.

9    And that's a clear showing of a right to success, a likelihood

10   of success on the merits and irreparable harm.  Those are the

11   gatekeeper factors.

12        And then three and four are that the Defendant's harm

13   would not outweigh the Plaintiff's harm and that the public

14   interest favors the mandatory injunction.  They have made none

15   of that showing, Judge.  The way they have chosen to structure

16   their water permit argument is to argue that they have

17   co-ownership of the permit.  They have done it a couple of

18   different ways.

19        If you look at the initial complaint that was filed by

20   Epsilon in this case, they argued in a verified pleading that

21   they acquired the permit from Chesapeake in a purchase and sale

22   agreement.  They said their subordinate entity, or subsidiary

23   entity, purchased the water assets from Chesapeake, and they

24   attached, in redacted form, a purchase and sale agreement from

25   February of 2016.

It turns out that agreement never closed.  It was never finalized.  So no one purchased anything under that agreement because it didn't close.  Ironically, the reason it didn't close was because Equinor withheld its consent to have Epsilon operate.  But it didn't close, nevertheless.

So that was the first tact taken by Epsilon to establish co-ownership.

The current tact is to argue that Epsilon took its 2008 permit and conveyed it as part of a farmout agreement, and the date of the farmout agreement is February 1, 2010.  And that agreement, which has schedules, and the schedules include easements, does not mention this permit.  It does not mention it at all.

The argument that they asserted, and you can look at the agreement, you can construe the term easement as encompassing the 2008 permit and that they conveyed it through that -- through that agreement.

Now, we have offered to the Court a letter that demonstrates Epsilon was writing to Chesapeake 59 days later expressing that they had the intent to convey that permit; not that it was conveyed already on February 1, 2010.  They say we intend to convey the 2008 permit.  And then they did, in total, not with a 50 percent retention.  And that's what the documents reflect.

So what happens?  Chesapeake goes to the SRBC and it

1    changes ownership on the permit.  And we have given that to the

2    Court, as well.  And the current record ownership -- let me

3    back up.  The record ownership as of April 2010, which we

4    provided to the Court as Exhibit B to our April 19 petition, as

5    of April 2010, the SRBC recognized that this docket, the 2008

6    docket, was owned by Chesapeake in full.

7            Now, that location was not at the current location.

8    But let's not jump to that right away.

9            The record of the SRBC confirms that that permit was

10   100 percent owned by Chesapeake, and that's the evidence before

11   the Court, on an element that Epsilon takes on the burden of

12   showing by clear evidence is co-owned.  And this is their

13   second attempt.

14           What Epsilon has done is to attempt to sort of

15   quantity trace.  So they take and they look at this permit and

16   they say it included the right to take 216,000 gallons from a

17   location near Chesapeake's location and we gave it over to

18   Chesapeake.

19           Now they say, Judge -- and even though it's not an

20   undisputed fact on their version, they say Judge, common sense

21   means we wouldn't have just given it to them.  We would have

22   kept 50 percent.  But that is not what the papers reflect.  So

23   the Court --

24           THE COURT:  Mr. Dempsey, let me ask you to pause there

25   for a moment.  There is just a logical tug in the favor of

1    Plaintiff on that argument.

2            So can you just respond to the fairly common sense

3    assertion by Counsel for Epsilon that it does seem unlikely

4    that Epsilon would have just, out of the spirit of generosity,

5    given its water source permit to Chesapeake without any

6    consideration in return?  Is there a response to that?

7            ATTORNEY DEMPSEY:  Well, Your Honor, there is not

8    evidence before this Court as to why it is that Epsilon

9    conveyed that permit in April of 2010.  The evidence before the

10   Court is that they did so.  The farmout agreement does not

11   reflect the conveyance of that permit.  That is the evidence

12   before the Court.  We are not in a factual hearing.  And I

13   don't have evidence to offer to the Court as what motivated or

14   what was received in return by Epsilon.  But respectfully,

15   Epsilon has not made that showing either.

16           They suggest to the Court that the Court should just

17   apply its common sense and why would they convey this asset

18   over to Chesapeake without consideration.  There is no showing

19   that they didn't receive consideration.  And I don't come to

20   the proceeding today, Judge, with that evidence.  But the

21   evidence before the Court, candidly, is that Epsilon just asked

22   this Court to assume it was conveyed 60 days earlier as part of

23   a farmout agreement that doesn't reference it.

24           THE COURT:  Understood.  Fair point.  And obviously

25   it's Plaintiff's burden to prove likelihood of success on the

1    merits evidentiarly.

2        ATTORNEY DEMPSEY:  Thank you.  And Judge, as you have

3    articulated in Drenth, it's not simply a 51 percent burden.

4    They are obligated to make a clear showing that the notion of a

5    mandatory injunction is an extraordinary remedy that is never

6    awarded as a right.  And that is the law.  And you don't have

7    that before you.

8        And respectfully, that is the end of the analysis from

9    our perspective.  But this notion of permit tracing, which the

10   law doesn't contemplate, the SRBC attributes ownership of this

11   docket to Chesapeake as of April of 2010.  If you look at the

12   2011 docket, which Chesapeake applied for and obtained in its

13   own name, it says very expressly -- and we have attached this,

14   Judge, as Exhibit C to our April 19th submission; it's at

15   document 27-3 and it's at page C-17.  It's part of the 2011

16   permit.  What it points out is that this approval -- so it's

17   the SRBC-2011 approval, this approval hereby supersedes and

18   rescinds commissioned docket numbers 2008 and 2009.  And I'm

19   not reading the entirety of the permit number.  But the 2008

20   permit was rescinded as of no later than June 2011 when the

21   SRBC issued that docket.

22       It was at a different location.  Chesapeake, since

23   2009, has withdrawn water from the Wyalusing Creek at what is

24   identified on Exhibit A, which we submitted to Your Honor, the

25   first image on Exhibit A, that withdrawal point is the

1    withdrawal point that Chesapeake utilized prior to 2010.  It's

2    the withdrawal point that's connected to the 2012 permit, which

3    is carried forward in Chesapeake's 2017 permit.  It's never

4    changed.  That is the withdrawal point.

5          And the infrastructure that's identified in the

6    picture to the right of the withdrawal point is infrastructure

7    that Chesapeake designed and paid for and constructed in 2011.

8          Those are the facts.  And in a process here where this

9    Court is being asked to accommodate a timing rush -- so we

10   don't even get to a May 11 hearing when evidence can be offered

11   and received by the Court -- but instead accommodate Epsilon on

12   a basis ahead of that, enter a mandatory injunction to

13   accommodate them, and then the Court asked the question that

14   demonstrates it would be -- not only does it fail to meet the

15   Third Circuit standard, as Your Honor articulates in Drench,

16   but it is not necessary; I would argue, admittedly, as of this

17   afternoon unnecessary.

18         And I'm happy to address the Court's questions, if I

19   can just make one final point.

20         The argument that has been advanced that, Judge, just

21   have them sign the letter and it really doesn't prejudice them.

22   Just ask Chesapeake to go ahead and sign.  That's -- Your Honor

23   started with questions about what that letter says.  And it

24   sure says more than that.

25         The letter is not something that's going to be taken

1    by Epsilon and filed away. Epsilon is going to take this

2    letter and they're going to submit it to the Commonwealth of

3    Pennsylvania and they are going to suggest that Chesapeake has

4    committed to supply Epsilon with water from this

5    permitted-withdrawal location using the Chesapeake

6    infrastructure.

7          So that would be a representation being made to the

8    Commonwealth of Pennsylvania for the purpose of gaining

9    Pennsylvania's approval of a Water Management Plan that is a

10   condition of their permit and that is not yet approved.

11         And among other things, the draft letter that they

12   would have us execute identifies a water-sharing agreement that

13   will be entered in the future between Chesapeake and Epsilon.

14   It says Chesapeake understands that it will, in any event,

15   remain responsible for compliance with the terms and conditions

16   of the Chesapeake docket, SRBC docket number 2017-0605. So

17   this is an acknowledgment of continued responsibility by

18   Chesapeake that would be submitted to the State of Pennsylvania

19   dealing with an asset that Chesapeake owns and has no

20   obligation to grant Epsilon rights over.

21         And even the final paragraph that Your Honor pointed

22   out, the letter does not obligate Chesapeake Appalachia to sell

23   water to Epsilon. Rather, it states a willingness to do so,

24   subject to availability as determined by Chesapeake. So it

25   limits the grounds upon which Chesapeake could refuse to

1    whether water is available under the capacity that Chesapeake

2    gains by the permit.

3            That all changes very much the status quo, because

4    that is not the state of affairs today.

5            The -- well, I don't want to belabor it.  But I think

6    respectfully, the moving party here with the burden has not met

7    their showing.

8            And Judge, one final point on this irrepairable

9    injury, which I think is fully answered as of this moment, is

10   what Epsilon does not address is the fact that they went out

11   and got their own permitted location two and a half miles

12   closer to the Craige well pad, which is where they would

13   propose to conduct this drilling.

14           They have the right under that permit to access

15   715,000 gallons of water a day.  They have had that right since

16   they gained that permit in 2019.  So if they -- if it is

17   Epsilon's objective and has been their objective, according to

18   their pleading, to commence this drilling for months and

19   months, they could have accessed that water.  They can access

20   it today and tomorrow.

21           Presumably they have built infrastructure in order to

22   permit them to access the water, but that's a cost issue for

23   them.  They have an independent source, multiple independent

24   sources that they have identified, but certainly one that is

25   two and a half miles closer to the Craige pad that gets them

1   the same 715,000 gallons a day of water.

2          So respectfully, Judge, at the very least this is an

3   issue to be addressed on a full evidentiary record on May 11.

4   If the Court cares to consider what is the evidence before it

5   right at the moment, certainly Epsilon has made nowhere near

6   the showing necessary to warrant this extraordinary remedy.

7          So I would ask that the Court deny or refuse to compel

8   Chesapeake to sign a commitment letter.

9          THE COURT:  All right.  Thank you, Counsel.  I think I

10  understand both of your arguments.  I will take this matter

11  under advisement and render a decision as quickly as possible.

12         Court is adjourned.

13         ATTORNEY KROCK:  Thank you, Your Honor.

14         ATTORNEY DEMPSEY:  Thank you, Your Honor.

15               (2:58 p.m., court adjourned.)

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, Lori A. Fausnaught, RMR, CRR, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the telephonic within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

s/Lori A. Fausnaught, RMR, CRR
----------------------------
Lori A. Fausnaught, RMR, CRR
Official Court Reporter

REPORTED BY:

    LORI A. FAUSNAUGHT, RMR, CRR
    Official Court Reporter
    United States District Court
    Middle District of Pennsylvania
    Lori_Fausnaught@pamd.uscourts.gov

         (The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)

**ATTORNEY DEMPSEY: [8]** 2/16 3/10 4/3 4/24 26/14 31/7 32/2 36/14
**ATTORNEY KROCK: [17]** 2/11 4/14 5/4 5/8 8/8 9/12 11/2 15/16 16/7 20/16 20/18 21/16 21/23 23/12 24/20 25/17 36/13
**THE COURT: [24]** 2/2 2/14 3/5 3/11 4/5 4/16 5/1 5/7 5/14 8/24 10/25 15/15 16/6 20/2 20/17 21/9 21/17 22/17 24/16 25/14 26/11 30/24 31/24 36/9

**0**

**0605 [2]** 7/22 34/16

**1**

**100 [1]** 14/8
**100 percent [1]** 30/10
**11 [3]** 23/11 33/10 36/3
**11th [1]** 23/6
**11th and [2]** 23/19 23/24
**11th hey [1]** 23/9
**11th hour [2]** 22/1
**1227 [2]** 11/18 12/15
**12th [1]** 23/19
**12th and [1]** 23/24
**15 [2]** 3/18 20/7
**15222 [1]** 1/18
**17 [1]** 32/15
**1800 [1]** 1/17
**18505 [1]** 1/24
**19 [1]** 30/4
**1:21-CV-00658-JPW [1]** 1/4

**2**

**200 [1]** 1/23
**2008 [8]** 11/20 15/12 29/9 29/16 29/22 30/5 32/18 32/19
**2008-1227 [2]** 11/18 12/15
**2009 [2]** 32/18 32/23
**2010 [8]** 11/22 29/10 29/21 30/3 30/5 31/9 32/11 33/1
**2011 [5]** 32/12 32/15 32/17 32/20 33/7
**2012 [1]** 33/2
**2016 [1]** 28/25
**2017 [1]** 33/3
**2017-0605 [2]** 7/22 34/16
**2018 [1]** 33/2
**2019 [1]** 35/16
**2021 [2]** 1/12 7/18

**21-CV-658 [1]** 2/4
**216,000 gallons [1]** 30/16
**22 [3]** 20/12 20/14 23/8
**22902 [1]** 1/20
**22nd [1]** 24/12
**26 [1]** 1/12
**260 [1]** 1/17
**26th [1]** 20/11
**27 [3]** 3/18 20/12 20/13
**27-3 [1]** 32/15
**28 [2]** 3/18 37/6
**29 [1]** 3/18
**2:00 [2]** 1/12 2/1
**2:58 [1]** 36/15

**3**

**300 [1]** 1/20
**310 [1]** 1/20

**4**

**4-5 [1]** 7/16
**425 [1]** 1/23

**5**

**50 [2]** 11/23 16/19
**50 percent [9]** 10/8 10/14 11/4 12/23 13/2 15/24 17/23 29/23 30/22
**50/50 [1]** 16/19
**51 percent [1]** 32/3
**59 [1]** 29/19

**6**

**60 [1]** 31/22
**658 [1]** 2/4

**7**

**715,000 [1]** 36/1
**715,000 gallons [1]** 35/15
**753 [1]** 37/6

**9**

**9th [1]** 7/18

**A**

**ability [1]** 18/25
**able [7]** 3/4 5/14 19/11 19/25 22/11 22/13 23/22
**about [5]** 11/11 19/24 25/20 28/1 33/23
**above [1]** 37/9
**above-mentioned [1]** 37/9
**absence [1]** 6/12
**absent [3]** 6/11 16/18 23/6
**acceptable [1]** 5/20
**access [5]** 9/5 23/24 35/14 35/19 35/22
**accessed [1]** 35/19
**accommodate [3]** 33/9

33/11 33/13
**according [1]** 35/17
**acknowledge [1]** 10/5
**acknowledgment [3]** 10/1 10/12 34/17
**acquired [1]** 28/21
**acted [1]** 14/16
**action [2]** 22/21 23/2
**actions [2]** 14/13 14/21
**activities [2]** 23/22 25/5
**actual [1]** 15/9
**actually [4]** 8/22 8/25 10/9 24/22
**addition [2]** 3/19 20/17
**address [6]** 2/9 2/22 3/19 8/7 33/18 35/10
**addressed [2]** 5/6 36/3
**adjourned [2]** 36/12 36/15
**admission [1]** 8/5
**admitted [2]** 2/20 2/21
**admittedly [2]** 33/16
**adopting [1]** 3/12
**advanced [1]** 33/20
**advantage [1]** 6/6
**advisement [1]** 36/11
**affairs [1]** 35/4
**after [7]** 4/5 6/3 6/14 12/1 14/6 14/9 24/13
**afternoon [2]** 2/2 2/16 33/17
**again [3]** 11/9 21/20 24/6
**against [2]** 26/4 26/8
**ago [2]** 3/14 3/25
**agree [1]** 9/12
**agreement [24]** 7/24 9/3 10/16 10/22 11/22 12/2 13/3 13/4 13/15 13/17 14/14 16/5 28/22 28/24 29/1 29/3 29/9 29/10 29/11 29/15 29/17 31/10 31/23 34/12
**agreements [1]** 6/20
**ahead [7]** 3/5 4/11 5/6 8/7 9/17 33/12 33/22
**all [18]** 4/5 5/5 6/9 8/24 10/25 15/12 17/20 21/9 21/17 25/5 25/7 25/14 26/11 26/23 28/6 29/13 35/3 36/9
**allow [1]** 8/20
**allowed [1]** 10/10
**allows [1]** 23/24
**already [5]** 18/18 20/8 20/17 21/13 29/21
**already-approved [1]** 21/13
**Alright [1]** 5/3
**also [5]** 4/8 13/18 13/20 14/1 19/8
**alternative [1]** 22/24

**always [2]** 19/11 19/14
**am [2]** 16/1 21/15
**amended [1]** 3/18
**among [1]** 34/11
**analysis [2]** 32/8
**answer [6]** 22/8 23/12 26/24 27/1 27/19 27/21
**answered [2]** 21/9 35/9
**anticipate [2]** 16/23 23/9
**any [15]** 2/22 4/1 5/1 5/2 6/12 14/15 16/21 19/1 26/3 26/3 27/24 31/5 34/14 37/23 37/23 33/13
**anybody [1]** 6/12
**anyone [2]** 4/18 9/25
**anything [3]** 18/25 25/15 29/2
**apologize [1]** 23/13
**APPALACHIA [3]** 1/6 2/4 34/22
**apparent [1]** 6/17
**appearance [2]** 2/21
**appearances [3]** 1/15 2/10 2/15
**Appearing [1]** 2/17
**applied [1]** 3/18
**apply [2]** 31/17 37/23
**appointed [1]** 37/5
**appreciate [1]** 5/22
**appropriate [1]** 3/7
**approval [11]** 5/16 5/17 5/19 6/5 21/8 23/10 25/8 32/16 32/17 32/17 34/9
**approve [1]** 20/15
**approved [5]** 20/8 20/17 21/13 25/4 34/10
**April [8]** 1/12 20/11 30/3 30/4 30/5 31/9 32/11 32/14
**April 19 [1]** 30/4
**April 19th submission [1]** 32/14
**April 2010 [2]** 30/3 30/5
**April 26th [1]** 20/11
**are [46]**
**aren't [1]** 21/4
**arguably [1]** 24/11
**argue [5]** 15/23 25/20 28/16 29/8 33/16
**argued [2]** 16/2 28/20
**arguing [4]** 4/21 4/22 17/15 26/12
**argument [26]** 1/11 2/5 2/6 2/25 3/4 4/6 4/6 4/11 4/13 4/15 5/7 8/25 11/1 14/9 15/16 17/15 19/2 19/2 20/2 24/18 24/19 28/6 28/16 29/14 31/1 33/20
**arguments [4]** 3/20 13/14 18/19 36/10

**Armezzani [2]** 1/22 2/18
**arrangement [2]** 9/3 10/4
**articulated [2]** 27/10 32/3
**articulates [2]** 28/7 33/15
**as [83]**
**ask [10]** 2/9 2/14 3/3 7/14 20/3 20/23 20/24 30/24 33/22 36/7
**asked [8]** 8/13 17/10 26/18 26/20 31/21 33/9 33/13
**asking [3]** 13/8 27/14 27/15
**asserted [1]** 29/14
**assertion [1]** 31/3
**assess [3]** 6/23 17/12 21/2
**asset [9]** 13/24 16/21 16/25 17/21 17/24 18/1 18/7 31/17 34/19
**assets [12]** 6/21 11/23 11/25 13/18 13/22 14/1 14/3 14/4 14/12 14/19 17/17 28/23
**associated [4]** 7/6 11/3 17/4 19/20
**assume [2]** 4/16 31/22
**assumption [1]** 4/18
**attached [2]** 28/24 32/13
**attaches [1]** 27/11
**attempt [2]** 30/13 30/14
**attorney [8]** 2/20 3/8 4/19 5/1 5/2 5/7 7/14 26/13
**attributes [1]** 32/10
**audit [1]** 17/10
**availability [2]** 8/3 34/24
**available [2]** 19/23 35/1
**Avenue [1]** 1/17
**avenues [1]** 21/25
**avoiding [1]** 18/19
**awarded [1]** 32/6
**aware [1]** 3/6
**away [2]** 30/8 34/1

**B**

**back [7]** 7/17 9/13 15/2 15/12 16/4 18/6 30/3
**basis [2]** 13/12 33/12
**be [63]**
**because [7]** 6/19 8/9 10/4 10/22 15/25 18/23 19/13 20/21 22/15 22/19 23/10 24/9 24/20 26/8 29/3 29/4 35/3
**become [4]** 21/22 22/14 22/15 23/7

## B

**been [10]** 3/24 4/8 11/7 15/19 18/20 19/2 27/9 33/20 35/17 37/11
**before [17]** 1/9 2/8 2/23 3/11 3/20 4/11 9/20 16/4 25/15 26/22 30/10 31/8 31/9 31/12 31/21 32/7 36/4
**begin [2]** 5/24 20/11
**behalf [6]** 2/12 2/17 4/12 4/18 4/22 26/12
**being [14]** 3/6 5/6 9/7 10/17 10/18 10/22 15/10 15/20 17/9 22/22 23/6 26/18 33/9 34/7
**belabor [1]** 35/5
**believe [9]** 6/8 11/10 12/21 13/1 13/8 19/6 20/16 20/18 21/6
**belongs [1]** 12/23
**benefit [2]** 4/16 14/22
**better [1]** 17/10
**between [3]** 7/25 20/14 34/13
**bills [1]** 17/4
**binding [2]** 8/22 10/1
**bit [3]** 6/18 6/19 22/5
**Blank [1]** 1/19 2/13
**Boockvar [2]** 27/10 28/8
**both [4]** 4/17 14/22 18/15 36/10
**bottom [1]** 18/8
**breach [1]** 18/20
**brief [3]** 6/8 6/9 20/6
**briefs [1]** 3/17
**BRIER [1]** 1/23
**broad [2]** 14/1 14/2
**building [1]** 14/17
**built [2]** 16/9 35/21
**burden [7]** 11/13 27/11 27/12 30/11 31/25 32/3 35/6
**business [1]** 9/20

## C

**C-17 [1]** 32/15
**calculated [1]** 18/3
**call [2]** 1/25 20/24
**came [1]** 12/12
**can [26]** 6/2 6/5 7/8 8/7 8/14 8/24 10/25 17/15 17/21 17/21 17/24 18/6 18/8 18/22 19/13 21/5 22/8 22/12 23/17 27/19 29/14 29/15 31/2 33/10 33/19 35/19
**can't [4]** 8/10 13/23 20/22 23/10
**candidly [1]** 31/21
**capacity [1]** 35/1
**capital [4]** 16/24 17/8 17/20 19/23

**carefully [1]** 27/10
**cares [1]** 36/4
**carried [1]** 33/3
**carving [1]** 22/23
**case [12]** 2/21 3/22 7/18 15/24 17/15 19/4 19/6 19/10 27/1 27/2 27/24 28/20
**cases [1]** 19/16
**cash [1]** 19/22
**categories [2]** 14/1 14/3
**cause [2]** 21/21 37/9
**caused [2]** 5/12 25/19
**ceased [1]** 15/19
**certain [9]** 9/22 9/23 11/23 12/2 14/25 20/8 20/23 24/25 24/25
**certainly [5]** 3/11 14/12 14/17 35/24 36/5
**certificate [2]** 37/1 37/23
**certify [2]** 37/6 37/10
**certifying [1]** 37/24
**chain [1]** 15/8
**challenge [1]** 20/19
**challenging [6]** 18/16 19/20 21/23 23/21 24/7 27/3
**change [4]** 9/16 15/20 19/21 27/15
**changed [2]** 16/3 33/4
**changes [3]** 19/22 30/1 35/3
**charge [2]** 17/1 18/6
**charged [1]** 18/9
**Charlottesville [1]** 1/20
**CHESAPEAKE [68]**
**Chesapeake's [10]** 12/3 12/25 12/25 14/21 16/24 17/14 18/22 25/20 30/17 33/3
**choose [2]** 17/16 17/24
**chosen [1]** 28/15
**Circuit [3]** 19/3 28/8 33/15
**circumstances [1]** 27/25
**cite [1]** 19/4
**cited [1]** 19/6
**clarify [1]** 4/7
**clear [8]** 13/17 15/3 17/8 17/13 27/13 28/9 30/12 32/4
**clearly [5]** 13/25 14/1 14/2 14/4 26/7
**close [5]** 12/7 12/9 29/3 29/4 29/5
**closed [1]** 29/1
**closer [2]** 35/12 35/25
**co [9]** 7/8 10/7 11/6 11/11 13/9 18/11 28/17 29/7 30/12
**co-own [2]** 10/7 11/6

**co-owned [2]** 7/8 30/12
**co-owner [1]** 18/11
**co-ownership [4]** 11/11 13/9 28/17 29/7
**Code [1]** 37/6
**colleague [1]** 2/19
**colleagues [1]** 2/12
**collectively [1]** 7/2
**combination [1]** 25/1
**combine [2]** 12/10 13/10
**combined [14]** 10/6 12/5 12/10 12/12 12/14 12/18 12/23 13/13 14/10 15/14 15/10 15/25 16/1 16/8
**combining [1]** 14/16
**come [5]** 8/15 9/21 18/6 27/12 31/19
**comes [1]** 26/6
**commence [2]** 24/4 24/11 35/18
**commencement [1]** 24/2
**comment [1]** 25/17
**comments [1]** 14/24
**commissioned [1]** 32/18
**commit [1]** 20/22
**commitment [20]** 3/14 5/10 5/13 6/1 6/10 7/15 9/7 11/3 21/6 21/12 21/19 21/20 22/6 22/24 23/1 23/3 23/6 24/9 26/2 36/8
**committed [1]** 34/4
**committing [1]** 8/21
**common [7]** 6/19 13/15 14/4 28/3 30/20 31/2 31/17
**Commonwealth [3]** 28/4 34/2 34/8
**company's [1]** 19/22
**compel [1]** 36/7
**complaint [1]** 28/19
**completely [4]** 13/5 15/21 16/11 23/18
**compliance [1]** 34/15
**component [4]** 2/6 3/15 8/18 21/11
**conceivable [1]** 24/10
**condition [1]** 34/10
**conditions [3]** 7/24 19/21 34/15
**conduct [1]** 35/13
**conducted [1]** 3/1
**conducts [1]** 6/4
**confirmed [2]** 15/4 15/9
**confirms [1]** 30/9
**connected [1]** 33/2
**consent [1]** 29/4
**consented [1]** 19/24
**consider [2]** 3/3 36/4

**consideration [4]** 13/7 31/6 31/18 31/19
**consistent [2]** 13/14 13/15
**consolidated [1]** 12/10
**constructed [1]** 11/7 33/7
**construe [1]** 29/15
**contemplate [1]** 32/10
**contemplated [1]** 16/8
**context [1]** 19/16
**continued [3]** 12/13 12/17 34/17
**contribute [2]** 6/21 7/2
**contributed [3]** 10/6 10/7 14/22
**contributing [1]** 7/16
**control [2]** 18/1 37/24
**controls [1]** 6/23
**convene [2]** 2/1
**convey [4]** 5/17 29/20 29/22 31/17
**conveyance [1]** 31/11
**conveyed [8]** 11/22 12/2 12/6 29/9 29/16 29/21 31/9 31/22
**cooperate [2]** 9/23 23/25
**cooperates [1]** 25/23
**coordinates [1]** 15/9
**copy [1]** 3/23
**correct [2]** 21/16 37/7
**correctly [1]** 21/15
**cost [1]** 35/22
**costs [19]** 16/17 16/21 16/24 17/1 17/3 17/4 17/6 17/7 17/8 17/9 17/11 17/13 17/16 17/19 17/20 17/25 18/3 18/5 24/21
**could [16]** 4/20 8/19 9/24 19/10 21/25 22/1 23/8 23/20 24/1 24/10 24/11 24/11 27/3 27/8 34/25 35/19
**counsel [7]** 1/25 2/10 2/14 4/20 25/16 31/3 36/9
**couple [1]** 28/17
**courses [1]** 23/2
**court [48]**
**court's [4]** 2/4 2/22 3/23 33/18
**courtesy [1]** 3/23
**courts [1]** 19/3 19/18
**covered [1]** 18/18
**Craige [2]** 23/25 24/24 35/12 35/25
**Creek [21]** 5/15 5/18 5/24 7/22 8/2 8/6 11/6 11/17 12/4 12/8 12/9 12/18 16/11 16/14 16/20 18/12 20/15 22/11 23/11 23/17 24/3

**32/23**
**critical [1]** 6/7
**CRR [4]** 37/3 37/14 37/15 37/19
**current [4]** 5/9 29/8 30/2 30/7
**custodian [1]** 6/22
**CV [1]** 1/4 2/4

## D

**date [6]** 1/12 18/2 24/12 24/12 29/10 37/9
**dates [1]** 37/9
**day [3]** 20/23 35/15 36/1
**days [5]** 20/12 20/14 23/11 29/19 31/22
**deadlines [1]** 18/18
**dealing [1]** 34/19
**decided [2]** 12/9 13/6 13/10 14/7
**decision [2]** 27/18 36/11
**decline [1]** 22/21
**defeats [1]** 19/1
**Defendant [1]** 1/21 4/1 4/23
**Defendant's [3]** 2/14 25/16 28/12
**defer [2]** 4/19 5/2
**defies [1]** 14/8
**delayed [1]** 22/6
**delve [1]** 2/8
**demonstrate [1]** 26/25
**demonstrates [3]** 26/24 29/19 33/14
**Dempsey [6]** 1/21 2/17 4/24 26/12 26/13 30/24
**denied [2]** 21/11
**deny [4]** 21/18 21/19 22/25 36/7
**DEP [15]** 5/16 5/19 5/20 5/23 6/2 7/1 7/5 20/7 20/14 20/22 21/2 23/7 23/11 23/16 26/2
**DEP's [1]** 8/21
**depending [1]** 20/25
**designed [1]** 33/7
**determined [1]** 34/24
**develop [5]** 11/25 13/19 14/19 16/21 19/14
**developed [1]** 16/17
**developing [1]** 17/5
**development [5]** 18/9 19/5 19/8 19/19 19/20
**did [9]** 8/13 13/2 14/20 15/2 17/3 21/2 23/13 33/19 35/19
**didn't [8]** 9/15 9/18 17/11 18/7 29/3 29/4 29/5 31/19
**different [9]** 6/21 13/5 15/21 20/4 20/25 22/17

## D

different... **[3]** 22/20
28/18 32/22
digging **[1]** 15/2
digits **[1]** 11/19
direct **[1]** 37/24
disagree **[1]** 25/22
dispositive **[1]** 16/1
dispute **[2]** 8/9 8/12
disputed **[2]** 11/11 15/1
DISTRICT **[6]** 1/1 1/2
37/4 37/5 37/20 37/20
do **[22]** 2/25 8/3 10/2
11/4 13/4 14/13 14/18
20/10 21/6 22/1 22/12
22/22 23/22 24/1 24/24
24/25 25/10 25/12
26/18 34/23 37/6 37/10
docket **[11]** 7/21 11/17
11/19 30/5 30/6 32/11
32/12 32/18 32/21
34/16 34/16
docketed **[1]** 3/24
document **[3]** 7/16
20/7 32/15
documents **[3]** 3/17
3/18 29/23
does **[19]** 8/1 11/6
19/22 21/21 23/7 23/15
24/15 24/17 24/18
27/17 28/6 29/12 29/12
31/3 31/10 33/14 34/22
35/10 37/23
doesn't **[8]** 7/7 7/11
18/4 27/18 28/2 31/23
32/10 33/21
doing **[6]** 22/23 24/22
25/1 25/3 25/5 25/9
don **[1]** 23/19
don't **[16]** 9/1 9/19 9/25
10/1 17/25 18/6 21/12
23/2 24/2 25/7 25/23
31/13 31/19 32/6 33/10
35/5
done **[3]** 21/5 28/17
30/14
downside **[1]** 26/10
draft **[4]** 7/16 8/14 9/19
34/11
drafted **[1]** 7/20
draw **[2]** 16/14 22/11
Drenth **[4]** 27/9 28/7
32/3 33/15
drill **[4]** 5/15 12/19
16/14 24/24
drilled **[1]** 17/2
drilling **[6]** 6/25 7/6
10/10 20/12 35/13
35/18

## E

e-mail **[1]** 3/23
each **[2]** 16/16 22/19
earlier **[1]** 31/22

easement **[1]** 29/15
easements **[1]** 29/12
effect **[1]** 26/9
effectively **[1]** 8/5
efforts **[1]** 22/15
either **[4]** 8/21 10/3
18/19 31/15
elect **[1]** 4/19
elected **[1]** 17/18
element **[2]** 20/4 30/11
elements **[2]** 6/9 27/13
Elizabeth **[2]** 1/16 2/13
else **[6]** 6/12 15/18 22/1
22/12 25/15 26/6
emergency **[2]** 24/8
26/19
encompassing **[1]**
29/16
end **[1]** 32/8
ENERGY **[2]** 1/3 2/3
enhance **[2]** 14/13
16/24
enough **[1]** 20/13
enter **[1]** 33/12
entered **[5]** 9/7 26/22
27/7 27/9 34/13
entertained **[1]** 22/22
entire **[2]** 12/16 14/7
entirely **[2]** 3/7 17/13
entirety **[1]** 32/19
entitled **[5]** 14/12 14/18
16/25 18/10 26/5
entity **[2]** 28/22 28/23
enure **[1]** 14/21
envision **[1]** 9/2
envisioned **[2]** 7/25
9/25
EPSILON **[64]**
Epsilon's **[5]** 14/10
20/9 26/19 27/12 35/17
Equinor **[1]** 29/4
equipment **[1]** 16/13
Esq **[1]** 1/25
Esquire **[6]** 1/16 1/16
1/19 1/21 1/22 1/22
essentially **[2]** 8/14
22/23
establish **[3]** 5/19
12/22 29/7
established **[2]** 6/8
18/14
establishing **[1]** 11/13
even **[13]** 9/17 9/18
9/21 10/5 13/9 14/18
15/23 16/18 21/7 28/3
30/19 33/10 34/21
event **[2]** 21/10 34/14
every **[1]** 13/24
everybody **[1]** 16/12
everyone **[1]** 28/4
evidence **[10]** 30/10
30/12 31/8 31/9 31/11
31/13 31/20 31/21
33/10 36/4

evidentially **[1]** 32/1
evidentiary **[1]** 36/3
evils **[1]** 25/20
exact **[1]** 15/13
exactly **[3]** 7/10 17/7
20/20
example **[2]** 6/25 19/21
exclude **[1]** 17/21
exclusive **[2]** 7/7 11/16
exclusively **[2]** 10/15
10/18
execute **[1]** 34/12
exhibit **[5]** 3/21 30/4
32/14 32/24 32/25
exist **[1]** 15/19
existing **[4]** 24/23
24/23 25/1 25/6
exists **[1]** 7/13
expect **[2]** 2/22 16/23
expected **[2]** 14/18
16/20
expedite **[2]** 20/23 21/5
expedited **[3]** 21/18
22/21 23/15
expensive **[1]** 27/5
expire **[1]** 18/23
expired **[1]** 18/20
Explain **[1]** 9/1
express **[1]** 9/23
expressing **[1]** 29/20
expressly **[2]** 9/2 32/13
extensive **[2]** 24/3
27/25
extent **[3]** 9/22 16/24
24/16
extinguish **[1]** 13/11
extinguished **[2]** 14/11
15/18
extraordinary **[2]** 32/5
36/6

## F

face **[1]** 27/21
facilities **[1]** 16/13
facility **[1]** 11/7
fact **[4]** 15/11 15/15
30/20 35/10
factors **[1]** 28/11
facts **[5]** 11/10 11/12
11/14 12/21 33/8
factual **[1]** 31/12
fail **[1]** 33/14
failed **[1]** 17/19
fair **[2]** 16/22 31/24
fairly **[1]** 31/2
fall **[1]** 14/2
far **[13]** 6/15 8/22 10/4
14/24 16/7 16/13 16/19
18/9 18/14 18/17 19/21
25/19 26/6
farmout **[13]** 11/22
12/2 13/3 13/4 13/17
13/20 14/6 14/14 16/5
29/9 29/10 31/10 31/23

Fausnaught **[5]** 37/3
37/14 37/15 37/19
37/21
favor **[1]** 30/25
favors **[1]** 28/14
February **[5]** 7/18
11/22 28/25 29/10
29/21
February 1 **[1]** 29/21
February 9th **[1]** 7/18
field **[1]** 25/10
fighting **[1]** 14/5
figure **[1]** 18/8
figured **[2]** 8/19 11/18
file **[1]** 4/7
filed **[5]** 3/18 3/20 7/16
28/19 34/1
final **[4]** 14/24 33/19
34/21 35/8
finalized **[1]** 29/2
Finally **[1]** 12/17
financial **[1]** 9/3
find **[2]** 4/12 13/9
finding **[1]** 19/1
first **[5]** 11/19 13/2
25/18 29/6 32/25
flexibility **[1]** 23/14
focus **[1]** 26/16
folks **[2]** 7/9 20/21
Forbes **[1]** 1/17
foregoing **[2]** 37/7
37/11 37/23
form **[6]** 3/22 6/20
12/10 14/15 22/23
28/24
former **[1]** 15/14
forth **[1]** 37/10
forward **[6]** 9/25 21/8
23/4 23/8 26/5 33/3
four **[3]** 11/19 27/13
28/12
Fourth **[1]** 37/1
frankly **[2]** 16/18 27/11
Friday **[1]** 3/23
front **[1]** 7/15
full **[2]** 30/6 36/3
fully **[2]** 16/23 35/9
funds **[2]** 6/21 7/3
further **[1]** 37/10
furtherance **[1]** 14/14
future **[4]** 6/3 9/2 19/15
34/13

## G

gain **[1]** 18/1
gained **[1]** 35/16
gaining **[1]** 34/8
gains **[1]** 35/2
gallons **[3]** 30/16 35/15
36/1
gas **[4]** 6/18 18/24
19/16 19/19
gatekeeper **[1]** 28/11
gave **[2]** 27/25 30/17

generosity **[1]** 31/4
get **[12]** 7/2 8/20 8/20
19/10 19/13 20/25 21/2
21/8 22/7 24/21 25/3
33/10
gets **[1]** 5/15 35/25
give **[3]** 13/6 14/7
31/5
given **[3]** 30/1 30/21
gives **[1]** 19/9
glad **[1]** 4/6
go **[7]** 4/11 5/6 5/4 8/7
23/4 23/8 33/22
goes **[2]** 8/1 29/25
going **[15]** 2/25 8/10
8/11 10/9 10/19 16/12
19/25 20/20 22/11
24/21 27/2 33/25 34/1
34/2 34/3
good **[4]** 2/2 2/16 20/21
25/10
got **[4]** 17/6 26/24
27/21 35/11
gotten **[1]** 34/24
grant **[4]** 4/6 26/19
27/18 34/20
granted **[2]** 3/8 19/17
grants **[1]** 6/4
great **[1]** 14/19
Greg **[2]** 2/11 4/14
Gregory **[1]** 1/16
ground **[1]** 9/24 18/24
grounds **[1]** 34/25
guess **[4]** 9/13 9/14
9/17 11/2
guys **[1]** 8/14

## H

had **[13]** 9/19 9/20 12/6
12/7 12/8 12/8 13/4
15/19 16/3 16/19 29/20
35/15 37/8
half **[3]** 8/11 35/11
35/25
handed **[1]** 10/3
hands **[1]** 8/21
happen **[1]** 22/12
happens **[1]** 29/23
happy **[1]** 5/7 33/18
hard **[1]** 20/19
harm **[7]** 6/11 6/12
18/17 18/21 19/1 19/5
19/9 20/5 24/17 24/18
25/19 26/3 26/3 26/25
28/10 28/12 28/13
harmed **[2]** 26/6 26/7
Harrisburg **[1]** 1/10
has **[32]** 2/20 3/2 3/24
3/24 4/8 5/12 13/12
19/2 20/7 20/10 24/25
25/11 29/11 30/14
31/15 32/23 33/20 34/3
34/19 35/6 35/17 36/5

## H

has... [1] 37/11
hasn't [1] 16/3
have [55]
haven't [1] 18/24
having [6] 8/4 8/22
 10/21 25/21 26/10 27/9
he [4] 2/21 2/22 2/23
 2/25
head [1] 9/21
hear [2] 3/20 5/7
hearing [14] 2/3 2/5 6/4
 6/14 23/4 23/19 23/23
 25/25 26/4 26/9 26/18
 26/22 31/12 33/10
heavy [1] 10/3
heavy-handed [1] 10/3
heightened [1] 27/14
help [1] 8/14
helped [1] 9/19
here [6] 8/15 8/25 14/5
 27/16 33/8 35/6
hereby [2] 32/17 37/6
hereinbefore [1] 37/10
hey [6] 8/10 8/14 10/1
 17/4 22/5 23/9
Honor [40]
HONORABLE [1] 1/9
hope [1] 15/3
hour [1] 22/1
how [7] 9/2 17/23 18/2
 18/3 20/20 25/18 28/1

## I

I'll [2] 4/6 7/2
I'm [12] 3/6 5/7 8/4 16/1
 22/13 22/17 22/21 24/7
 24/9 27/2 32/18 33/18
identified [5] 12/15
 13/24 32/24 33/5 35/24
identifies [1] 34/12
identify [2] 27/9 28/5
illogical [1] 14/11
illustrative [1] 13/25
image [1] 32/25
imagine [1] 9/6
important [2] 6/16 24/9
impossibility [1] 23/7
impossible [1] 25/11
impoundment [1] 11/8
improperly [1] 14/16
inability [1] 26/25
INC [2] 1/3 2/3
include [2] 8/19 29/11
included [7] 8/9 13/20
 13/22 13/25 14/2 14/3
 30/16
including [4] 12/3
 13/23 19/3 19/16
incurred [2] 16/24
 17/20
indeed [1] 9/4
independent [2] 35/23
 35/23

indicated [2] 3/2 3/14
industry [5] 6/18 6/20
 25/13 28/1 28/2
information [1] 17/12
infrastructure [13]
 11/7 14/17 16/7 16/9
 16/12 16/17 18/10
 18/10 18/15 33/5 33/6
 34/6 35/21
inherent [1] 16/9
initial [2] 20/6 28/19
injunct [1] 27/7
injunction [19] 3/16
 6/4 6/9 6/14 19/10
 19/13 21/22 23/5 23/23
 25/25 26/4 26/9 26/20
 26/21 27/8 27/14 28/14
 32/5 33/12
injunctions [1] 19/17
injunctive [2] 2/7 5/11
 21/11 27/24
injury [1] 35/9
input [1] 20/24
instance [1] 6/24
instead [1] 33/11
instruments [1] 13/19
intend [1] 29/22
intent [1] 29/20
intentionally [1] 17/18
interest [15] 8/11 10/8
 10/14 10/20 11/4 11/23
 12/23 13/3 13/11 13/12
 14/10 15/25 17/5 17/24
 28/14
interests [1] 19/7
interference [1] 19/8
interfering [3] 19/4
 24/22 25/5
interim [1] 24/8
involving [1] 5/9
Ironically [1] 29/3
irrepairable [1] 35/8
irreparable [11] 6/11
 18/17 18/21 19/1 19/5
 19/9 20/4 24/17 24/18
 26/25 28/10
is [174]
isn't [1] 24/9
issue [22] 2/8 3/6 3/11
 3/14 3/19 4/8 5/9 5/12
 5/13 5/23 6/7 18/16
 21/19 22/24 25/19
 25/23 25/24 25/24 26/1
 26/5 35/22 36/3
issued [3] 7/4 11/20
 32/21
issues [3] 9/20 11/3
 11/9
it [100]
it's [37] 4/19 5/12 5/20
 6/16 7/1 10/22 11/15
 13/12 13/21 14/19 16/8
 17/3 17/20 17/23 20/19
 20/19 20/20 21/23

23/21 24/6 24/10 25/11
 25/12 25/13 27/8 27/14
 28/3 28/3 30/19 31/25
 32/3 32/14 32/15 32/15
 32/16 33/1 33/3
iteration [1] 9/15
its [12] 5/15 5/16 6/2
 12/6 13/6 16/17 27/15
 29/4 29/8 31/5 31/17
 32/12
itself [3] 11/5 11/11
 18/15

## J

Jack [2] 2/17 4/24
JENNIFER [1] 1/9
JOA [8] 7/2 10/10
 10/16 10/19 10/23
 16/16 16/18 19/24
JOAs [7] 10/10 11/25
 12/19 14/14 16/16
 16/18 17/2
John [1] 1/21
join [1] 3/9
joining [2] 1/25 2/3
joint [2] 6/20 9/8
jointly [8] 8/6 12/19
 14/12 14/19 16/21
 16/25 17/17 18/1
jointly-owned [4]
 14/12 16/21 16/25 18/1
Jonathan [2] 1/19 2/13
Joseph [2] 1/25 2/19
JPW [1] 1/4
Judge [3] 2/2 2/19
 23/9 26/14 28/15 30/19
 30/20 31/20 32/22 32/14
 33/20 35/8 36/2
jump [1] 30/8
June [1] 32/20
June 2011 [1] 32/20
just [38]

## K

keep [1] 17/21
KELLY [1] 1/23
kept [1] 30/22
keying [1] 25/6
kind [7] 5/12 6/22 15/1
 15/8 16/19 18/1 18/17
knew [2] 8/9 8/10
know [20] 4/21 5/3
 6/13 8/13 8/15 9/18
 9/18 10/1 10/23 13/16
 14/11 16/10 16/23 17/1
 18/16 19/21 20/19 22/6
 23/17 25/15
knows [1] 27/6
Kravitz [1] 1/22 2/18
Krock [10] 1/16 2/11
 4/14 4/19 5/7 7/14 20/2
 26/11 26/16 27/25

## L

laid [1] 22/18

language [8] 8/8 8/15
 8/18 8/19 9/1 9/6 9/11
 13/16
last [1] 25/17
later [6] 12/1 12/13
 13/5 22/7 29/19 32/20
law [4] 14/21 19/15
 32/6 32/10
lawyer [1] 9/18
lawyers [1] 9/18
leads [1] 21/17
least [3] 21/2 27/20
 36/2
leave [1] 25/17
let [7] 2/9 2/14 7/14
 25/15 26/11 30/2 30/24
let's [3] 5/6 8/25 30/8
letter [46]
like [12] 2/9 2/23 6/18
 9/6 17/10 18/22 19/10
 19/25 22/7 25/15 26/15
 26/16
likelihood [6] 6/10
 11/13 18/14 22/2 28/9
 31/25
likely [1] 22/16
limited [1] 14/23
limits [1] 34/25
line [1] 18/8
lined [1] 25/11
list [1] 13/22
listen [4] 2/24 3/4 10/3
 22/6
little [3] 6/18 6/19 22/5
LLC [2] 1/6 2/4
LLP [3] 1/17 1/19 1/23
location [12] 15/1 15/6
 15/11 15/21 16/3 30/7
 30/7 30/17 30/17 32/22
 34/5 35/11
logic [1] 14/8
logical [1] 30/25
logistics [1] 19/19
long [3] 19/11 20/20
 23/23
look [7] 6/25 7/4 11/12
 28/19 29/14 30/15
 32/11
looking [2] 15/8 17/14
Lori [5] 37/3 37/14
 37/15 37/19 37/21
lost [1] 18/24
lot [2] 7/1 22/4
lots [1] 7/8

## M

made [4] 28/14 31/15
 34/7 36/5
mail [1] 3/23
make [2] 22/8 22/12
 22/18 24/15 27/12 32/4
 33/19
makes [1] 13/17
making [1] 26/19

Management [5] 5/16
 5/17 5/25 20/9 34/9
mandatory [2] 26/19
 27/7 27/13 27/24 28/14
 32/5 33/12
maneuver [1] 24/10
many [1] 6/21
matter [2] 2/25 4/22
 14/21 18/4 20/13 21/21
 36/10
matters [2] 2/23 5/5
may [16] 6/3 6/14
 10/21 11/18 20/12
 20/14 22/15 23/5 23/8
 23/9 23/22 24/1 24/12
 27/4 33/10 36/3
May 11 [1] 36/3
May 22 [2] 20/12 23/8
maybe [1] 9/14
McGUIRE [2] 1/17 1/19
me [13] 2/9 2/12 2/14
 2/17 7/14 7/15 9/1 23/9
 25/15 26/11 30/2 30/24
 37/11
mean [7] 7/7 7/12 8/8
 10/5 20/18 21/25 28/2
meaning [1] 21/12
means [2] 30/21 37/23
meant [1] 23/15
meet [2] 28/7 33/14
mention [2] 29/12
 29/12
mentioned [2] 37/8
 37/9
merely [2] 3/15 5/19
merits [6] 6/11 6/15
 11/14 18/14 28/10 32/1
met [1] 35/6
middle [4] 1/2 9/24
 37/4 37/20
might [6] 10/16 22/6
 22/7 22/13 24/13 25/19
miles [3] 35/11 35/25
Minard [2] 19/4 19/5
minor [1] 22/3
mirror [1] 8/9
misunderstand [1]
 23/13
moment [6] 3/14 8/25
 26/17 30/25 35/9 36/5
Monday [1] 1/12
month [2] 12/1 12/11
 13/5 14/6
months [3] 35/18 35/19
 22/15 23/10 23/18 27/1
 27/2 27/18
moot [8] 21/22 22/14
 22/15 23/10 23/18 27/1
 27/2 27/18
more [7] 9/10 9/15 22/5
 23/14 27/3 27/4 33/24
most [2] 9/15 18/16
motion [11] 2/7 3/16
 3/20 3/22 3/24 4/2 4/6
 6/5 15/17 21/21 23/4
motivated [1] 31/13

## M

**move [3]** 9/24 21/8 26/5
**moving [1]** 35/6
**Mr. [8]** 2/20 3/4 20/2 26/11 26/12 26/16 27/25 30/24
**Mr. Dempsey [2]** 26/12 30/24
**Mr. Krock [4]** 20/2 26/11 26/16 27/25
**Mr. Tarantelli [2]** 2/20 3/4
**much [3]** 18/11 25/18 35/3
**multiple [1]** 35/23
**my [10]** 2/12 2/19 3/3 7/20 20/10 20/11 21/9 21/17 23/21 37/11
**MYERS [1]** 1/23

## N

**N.E [1]** 1/20
**name [6]** 7/4 7/6 7/12 12/3 12/6 32/13
**named [1]** 8/17
**namely [1]** 3/21
**narrow [4]** 5/10 6/7 25/18
**nature [1]** 9/10
**naught [2]** 25/7
**near [2]** 30/17 36/5
**necessarily [6]** 7/12 10/14 10/23 13/24 21/24 28/2
**necessary [9]** 7/3 10/17 13/19 26/21 26/21 26/23 27/1 33/16 36/6
**necessity [1]** 10/21
**need [4]** 6/1 24/4 24/12 24/13
**neither [1]** 13/14
**neutral [5]** 8/19 9/1 9/2 9/6 9/10
**never [7]** 19/10 19/13 22/11 29/1 29/2 32/5 33/3
**nevertheless [1]** 29/5
**new [2]** 24/24 25/6
**next [1]** 21/17
**Nicholas [2]** 1/22 2/18
**no [15]** 3/2 3/6 4/3 4/3 8/25 13/6 13/7 25/23 26/9 27/2 27/19 29/2 31/18 32/20 34/19
**nomenclature [1]** 3/13
**none [1]** 28/14
**not [84]**
**note [3]** 3/2 4/20 5/3
**noted [1]** 20/7
**nothing [1]** 13/4
**notion [4]** 14/6 14/10 32/4 32/9

## O

**now [20]** 3/24 6/8 6/13 12/25 15/13 15/20 15/23 16/16 17/2 17/14 17/23 20/1 20/1 20/14 23/2 23/4 23/10 29/18 30/7 30/19
**nowhere [1]** 36/5
**number [5]** 7/21 11/17 11/19 32/19 34/16
**numbered [1]** 37/9
**numbers [1]** 32/18

## O

**objection [3]** 3/3 3/7 4/4
**objective [2]** 35/17 35/17
**obligate [2]** 8/2 34/22
**obligated [1]** 32/4
**obligation [3]** 18/4 18/5 34/20
**obligations [1]** 24/4
**obtain [1]** 23/10
**obtained [1]** 32/12
**obviously [1]** 31/24
**occurs [1]** 6/24
**offer [1]** 31/13
**offered [2]** 29/18 33/10
**Official [3]** 37/3 37/16 37/19
**oil [4]** 6/18 19/16 19/19 25/10
**Okay [3]** 11/2 16/6 25/14
**old [1]** 12/14
**once [1]** 13/10
**one [25]** 2/6 5/10 6/21 7/4 7/5 8/11 9/17 11/4 12/1 12/1 12/15 13/1 15/1 17/23 17/23 22/20 23/2 25/10 25/10 25/18 27/8 29/2 33/19 35/8 35/24
**one's [1]** 25/10
**one-half [1]** 8/11
**ones [2]** 21/3 21/4
**ongoing [2]** 8/12 13/12
**only [8]** 6/21 6/24 7/4 7/13 13/12 18/21 27/8 33/14
**open [1]** 3/1
**operate [1]** 29/5
**operating [1]** 6/20
**operations [4]** 24/2 24/4 24/11 24/23
**operator [6]** 6/22 7/7 7/7 11/24 14/11 17/22
**operator-ship [1]** 17/22
**operators [1]** 25/21
**opportunity [2]** 2/24 19/14
**opposed [1]** 6/13
**opposition [3]** 4/1

## P

15/17 20/3
**optimal [2]** 24/6 27/4
**option [1]** 23/17
**oral [4]** 1/11 2/5 2/6 2/25
**order [8]** 10/17 14/19 16/13 17/25 21/12 22/25 24/23 35/21
**orders [1]** 23/25
**origin [1]** 12/16
**original [1]** 3/24
**originally [1]** 9/14
**other [17]** 4/20 5/1 5/2 7/9 10/19 13/18 13/18 17/9 19/18 19/24 21/3 21/3 21/25 22/19 23/22 27/3 34/11
**others [2]** 12/4 12/20
**otherwise [2]** 19/9 21/19
**our [32]** 4/16 4/21 5/11 6/4 6/8 6/9 6/17 10/12 10/15 11/13 13/11 13/16 15/3 15/5 15/17 15/17 15/21 16/20 17/1 17/3 18/5 18/18 18/19 18/23 19/4 19/6 20/21 24/4 24/7 30/4 32/9 32/14
**out [18]** 4/12 5/9 6/16 11/8 11/18 13/16 14/17 16/9 16/14 18/8 19/16 22/18 22/23 29/1 31/4 32/16 34/22 35/10
**outweigh [1]** 28/13
**over [6]** 14/5 18/1 19/22 30/17 31/18 34/20
**own [13]** 8/11 10/7 10/13 10/15 10/19 11/4 11/6 15/24 17/5 17/17 18/7 32/13 35/11
**owned [12]** 7/8 8/6 12/19 14/12 16/21 16/25 18/1 28/4 28/5 30/6 30/10 30/12
**owner [6]** 7/8 7/11 7/13 8/17 11/16 18/11
**ownership [14]** 6/17 9/9 11/11 13/9 14/5 16/19 28/1 28/2 28/17 29/7 30/1 30/2 30/3 32/10
**ownerships [1]** 28/3
**owns [3]** 8/22 17/23 34/19

## P

**p.m [3]** 1/12 2/1 36/15
**PA [3]** 1/18 1/24 5/20
**pad [6]** 23/25 24/24 25/2 25/21 35/12 35/25
**page [2]** 20/6 32/15
**paid [2]** 18/2 33/7

**pamd.uscourts.gov [1]** 37/21
**papers [5]** 6/17 13/16 19/4 19/6 30/22
**paragraph [1]** 34/21
**paragraphs [2]** 7/19 8/5
**part [5]** 4/9 10/12 29/9 31/22 32/15
**participate [1]** 20/1
**parties [6]** 3/13 7/2 9/8 10/19 14/22 25/15
**parties' [1]** 3/17
**party [4]** 16/16 19/23 27/15 35/6
**pass [3]** 17/16 17/19 17/25
**passed [2]** 17/9 17/13
**pause [1]** 30/24
**pay [7]** 16/16 16/20 17/3 17/6 17/17 18/5 18/7
**PENNSYLVANIA [22]** 1/2 1/10 2/21 5/16 5/23 6/2 7/1 7/5 8/21 20/7 20/14 20/22 21/2 23/7 23/16 26/22 28/4 34/3 34/8 34/18 37/5 37/20
**Pennsylvania's [1]** 34/9
**people [3]** 6/21 9/20 20/22
**perceive [1]** 9/1
**percent [13]** 10/8 10/14 11/4 11/23 12/23 13/2 14/8 15/24 17/23 29/23 30/10 30/22 32/3
**period [1]** 24/13
**permanent [1]** 26/9
**permanently [1]** 19/12
**permission [3]** 2/2 3/8 3/24
**permit [75]**
**permits [13]** 6/17 6/25 7/10 12/12 13/10 13/18 14/2 14/9 14/16 15/4 15/25 18/18 28/3
**permitted [2]** 34/5 35/11
**permitted-withdrawal [1]** 34/5
**person [3]** 6/22 7/12 8/16
**person's [2]** 7/4 7/5
**perspective [1]** 32/9
**petition [1]** 30/4
**physically [1]** 25/11
**pick [3]** 17/16 17/24 26/15
**picture [1]** 33/6
**Pittsburgh [1]** 1/18
**place [3]** 1/10 6/5 10/22
**plaintiff [6]** 1/16 2/12

3/20 19/12 19/13 31/1 3/16 28/13 31/25
**Plaintiff's [5]** 2/6 2/9 3/16 28/13 31/25
**Plan [5]** 5/16 5/17 5/25 20/9 34/9
**planned [1]** 23/8
**play [1]** 26/6
**pleading [2]** 28/20 35/18
**please [2]** 4/20 5/2
**plenty [1]** 19/15
**point [17]** 15/2 15/6 15/7 15/10 15/11 15/13 16/4 18/21 23/10 31/24 32/25 33/1 33/2 33/4 33/6 33/19 35/8
**pointed [3]** 5/9 13/16 34/21
**pointing [1]** 6/16
**points [1]** 32/16
**portion [2]** 10/6 10/7
**posed [2]** 26/16
**position [4]** 12/25 18/22 19/22 27/15
**possibility [2]** 22/22
**possible [1]** 36/11
**potential [1]** 5/24
**potentially [2]** 9/4 21/24
**practical [4]** 20/13 21/21 22/15 25/12
**practice [1]** 25/10
**prejudice [2]** 9/7 33/21
**preliminary [10]** 2/7 2/8 3/16 3/19 5/5 5/11 21/22 22/25 23/5 27/7
**preliminary injunct [1]** 27/7
**preparation [1]** 25/6
**prepared [1]** 37/11
**presentation [1]** 27/25
**presented [1]** 22/20
**presenting [2]** 4/13 4/15
**Presumably [1]** 35/21
**pretty [2]** 22/3 25/18
**previewing [1]** 3/5
**prior [1]** 33/1
**pro [5]** 16/17 16/20 17/1 17/6 18/5
**probably [2]** 9/17 23/20
**problem [3]** 5/22 17/7 23/18
**problematic [1]** 25/13
**proceed [5]** 4/11 5/6 8/24 10/25 19/23
**proceeding [2]** 4/10 31/20
**proceedings [2]** 1/11 37/8
**process [4]** 6/3 16/10 21/6 33/8
**project [6]** 7/11 8/17

**P**

**project... [4]** 9/24 12/16 21/5 22/8
**property [4]** 19/7 19/8 19/12 19/14
**proposal [1]** 27/19
**proposals [2]** 18/19 18/23
**propose [3]** 18/23 18/25 35/13
**proposed [7]** 5/15 7/15 9/14 9/16 20/8 20/12 21/14
**proposing [1]** 20/11
**proposition [1]** 19/7
**prove [1]** 31/25
**provided [2]** 7/23 30/4
**provisions [1]** 37/5
**proximity [1]** 12/7
**public [1]** 28/13
**pump [1]** 11/8
**pumps [1]** 16/13
**purchase [3]** 9/4 28/21 28/24
**purchased [2]** 28/23 29/2
**purpose [2]** 10/15 34/8
**purposes [2]** 3/12 4/9
**pursuant [2]** 13/3 37/5
**pursue [1]** 21/25
**put [2]** 9/16 27/17

**Q**

**quantity [1]** 30/15
**question [13]** 7/14 20/4 20/10 21/10 21/18 21/23 23/12 26/20 26/24 27/17 27/20 27/22 33/13
**questions [3]** 26/15 33/18 33/23
**quickly [1]** 36/11
**quite [2]** 16/18 27/11
**quo [1]** 35/3

**R**

**rata [5]** 16/17 16/20 17/1 17/6 18/5
**Rather [2]** 8/2 34/23
**re [2]** 18/23 18/25
**re-propose [2]** 18/23 18/25
**reach [2]** 9/24 10/3
**read [1]** 25/19
**reading [1]** 32/19
**real [2]** 19/7 19/8
**reality [2]** 16/3 25/9
**reallocate [1]** 10/11
**really [6]** 5/12 17/22 18/3 20/22 22/7 33/21
**realty [1]** 6/1
**reason [2]** 5/22 29/3
**reasons [2]** 18/13 19/18

**receive [2]** 17/11 31/19
**received [3]** 3/22 31/14 33/11
**recent [1]** 9/15
**recognized [2]** 19/18 30/5
**record [10]** 2/5 2/10 2/15 4/7 4/9 7/18 30/2 30/3 30/9 36/3
**redacted [1]** 28/24
**refer [2]** 3/12 7/22
**reference [2]** 12/14 31/23
**reflect [4]** 10/17 29/24 30/22 31/11
**refuse [1]** 34/25 36/7
**regarding [1]** 21/20
**rejected [1]** 19/3
**relate [1]** 6/10
**related [4]** 11/3 11/9 15/12 21/10
**relationship [1]** 20/21
**relative [1]** 7/21
**relief [9]** 2/7 3/15 5/11 21/11 21/20 22/25 23/16 24/8 27/24
**reluctant [1]** 22/14
**rely [1]** 4/17
**remain [1]** 34/15
**remaining [2]** 20/13 23/11
**remedy [2]** 32/5 36/6
**render [1]** 36/11
**renewal [1]** 12/13
**renewed [1]** 12/12
**reply [2]** 6/9 15/3
**REPORTED [1]** 37/18
**reporter [6]** 4/17 4/21 37/4 37/16 37/19 37/24
**REPORTER'S [1]** 36/16
**represent [1]** 20/20
**representation [1]** 34/7
**reproduction [1]** 37/23
**request [8]** 3/4 5/1 5/11 21/11 21/18 22/25 24/8 27/18
**requested [3]** 3/15 21/20 22/22
**require [1]** 24/2
**required [2]** 6/9 16/16
**rescinded [1]** 32/20
**rescinds [1]** 32/18
**resolution [2]** 9/8 21/19
**respect [1]** 4/1
**respectfully [5]** 28/6 31/14 32/8 35/6 36/2
**respond [1]** 31/2
**response [5]** 11/1 12/25 20/3 25/20 31/6
**responses [1]** 20/25
**responsibility [1]** 34/17

**responsible [1]** 34/15
**retain [1]** 13/2
**retention [1]** 29/23
**return [2]** 31/6 31/14
**review [2]** 4/8 6/2 20/14
**reviewed [2]** 3/16 20/8
**reviewing [2]** 5/24 23/17
**Rich [1]** 2/18
**Richard [1]** 1/22
**right [21]** 4/5 5/5 5/18 8/24 10/2 10/25 11/5 15/13 21/9 21/17 25/14 26/11 28/9 30/8 30/16 32/6 33/6 35/14 35/15 36/5 36/9
**rights [1]** 34/20
**rise [1]** 19/9
**RMR [4]** 37/3 37/14 37/15 37/19
**room [1]** 22/5
**rules [2]** 26/4 26/8
**Run [2]** 19/4 19/5
**rush [1]** 33/9

**S**

**s/Lori [1]** 37/14
**said [6]** 2/5 17/4 17/10 19/6 23/13 28/22
**sale [2]** 28/21 28/24
**same [6]** 5/1 7/10 16/4 25/21 36/1 37/23
**satisfy [3]** 11/13 24/1 24/4
**saw [1]** 17/4
**say [18]** 8/1 8/10 8/11 9/13 10/3 13/23 15/18 18/6 19/11 21/24 22/14 23/9 27/2 27/19 29/21 30/16 30/19 30/20
**saying [2]** 9/25 16/1
**says [5]** 26/4 32/13 32/23 33/24 34/14
**scenario [1]** 22/19
**scenarios [1]** 22/18
**scheduled [1]** 23/5
**schedules [2]** 29/11 29/11
**Scranton [1]** 1/24
**seal [3]** 3/21 4/2 4/6
**sealing [1]** 4/4
**second [4]** 7/19 11/6 13/8 30/13
**Section [1]** 37/6
**see [1]** 22/1
**seeking [2]** 9/8 23/16
**seem [2]** 17/15 31/3
**seems [2]** 9/2 18/22
**segregate [1]** 5/13
**segregating [1]** 5/23
**sell [2]** 8/2 34/22
**sense [6]** 13/15 14/4 24/15 30/20 31/2 31/17

**sent [1]** 3/23
**separate [6]** 11/2 11/9 12/6 13/5 15/21 25/21
**series [2]** 11/25 26/15
**serve [1]** 37/10
**served [1]** 13/11
**serves [1]** 6/22
**set [1]** 37/10
**several [1]** 12/4
**shape [1]** 14/15
**share [6]** 9/3 16/17 16/21 17/1 17/6 18/5
**sharing [2]** 7/24 34/12
**she [1]** 4/17
**ship [1]** 17/22
**short [2]** 3/25 24/13
**should [2]** 9/13 31/16
**showing [9]** 27/13 28/9 28/15 30/12 31/15 31/18 32/4 35/7 36/6
**shut [1]** 25/1
**side [1]** 8/21
**sign [7]** 8/10 8/12 21/12 23/1 33/21 33/22 36/8
**signed [8]** 6/13 8/20 11/21 14/7 16/5 21/7 23/2 26/10
**significance [1]** 15/15
**significant [1]** 15/20
**significantly [1]** 25/20
**signing [1]** 26/7
**signs [2]** 6/1 26/1
**similar [2]** 8/18 14/9
**simply [6]** 6/19 8/3 14/8 14/11 18/22 18/25 32/3
**since [2]** 32/22 35/15
**single [1]** 13/24
**site [1]** 20/12
**situation [1]** 19/25
**slightly [3]** 20/4 20/25 22/20
**smaller [1]** 21/3
**so [77]**
**sole [1]** 11/15
**some [14]** 4/20 5/21 9/19 9/20 10/16 10/21 11/10 13/18 13/22 15/2 19/24 21/3 24/16 24/20
**somebody [1]** 26/6
**somehow [8]** 10/4 13/9 13/11 14/10 15/17 15/19 16/2 24/25
**someone [1]** 8/16
**something [7]** 6/16 9/6 14/17 22/1 22/12 24/6 33/25
**sometimes [1]** 20/24
**somewhere [1]** 15/18
**sorry [1]** 23/9
**sort [2]** 22/25 30/14
**sorts [1]** 25/5
**sought [1]** 15/16

**source [19]** 5/19 5/24 6/6 7/23 8/6 8/23 9/4 9/5 9/9 10/13 12/16 15/13 15/22 20/15 23/11 24/3 25/4 31/5 35/23
**sources [2]** 20/8 21/3 21/13 35/24
**speaking [2]** 4/18 5/3
**specifically [3]** 4/20 5/2 19/19
**spirit [1]** 31/4
**sponsor [2]** 7/11 8/17
**Spruce [1]** 1/23
**squarely [1]** 27/17
**SRBC [30]** 3/13 5/10 5/13 6/10 6/18 6/23 7/10 7/15 8/13 8/17 11/3 11/16 12/2 12/13 15/5 21/6 22/6 22/23 23/1 23/6 24/8 25/4 26/1 29/25 30/5 30/9 32/10 32/17 32/21 34/16
**SRBC-2011 [1]** 32/17
**standard [6]** 27/6 27/10 27/14 28/7 28/8 33/15
**standpoint [4]** 14/4 22/2 22/15 25/12
**stands [1]** 19/6
**start [6]** 6/2 6/16 23/17 24/22 25/1 25/3
**started [1]** 33/23
**state [2]** 2/10 2/15 34/18 35/4
**statement [1]** 22/10
**states [7]** 1/1 7/21 8/3 34/23 37/4 37/6 37/20
**status [1]** 35/3
**stay [1]** 8/25
**step [1]** 9/17
**still [12]** 7/8 10/16 10/21 12/15 12/23 15/24 18/24 21/6 21/8 22/8 24/10 24/11
**storage [1]** 16/13
**store [1]** 11/8
**Street [2]** 1/20 1/23
**strike [1]** 2/5
**structure [1]** 28/15
**subject [3]** 7/23 8/3 34/24
**submission [1]** 32/14
**submit [4]** 7/3 26/2 27/23 34/2
**submitted [5]** 4/9 7/17 23/6 32/24 34/18
**subordinate [1]** 28/22
**subset [1]** 5/11
**subsidiary [1]** 28/22
**substantive [1]** 13/1
**success [9]** 6/11 6/15 11/13 18/14 22/3 27/13

**S**

**success... [3]** 28/9
28/10 31/25
**successful [2]** 22/16
23/23
**such [2]** 23/8 24/10
**suffer [1]** 26/3
**sufficient [4]** 11/12
12/22 21/4 21/14
**suggest [2]** 31/16 34/3
**suggesting [5]** 14/15
16/2 17/18 24/7 24/10
**suggestion [1]** 27/4
**Suite [3]** 1/17 1/20 1/23
**supersedes [1]** 32/17
**supervision [2]** 37/12
37/24
**supply [4]** 7/21 7/23
15/22 34/4
**supporting [1]** 3/17
**sure [6]** 13/24 17/7
18/2 22/17 22/18 33/24

**T**

**tact [2]** 29/6 29/8
**take [9]** 6/5 14/12
20/20 21/13 22/21
30/15 30/16 34/1 36/10
**taken [3]** 19/12 29/6
33/25
**takes [1]** 30/11
**talk [1]** 20/25
**Tarantelli [5]** 1/25 2/19
2/20 3/4 3/8
**telephonic [2]** 1/11
37/8
**telephonically [1]** 1/15
**term [1]** 29/15
**terms [2]** 7/24 34/15
**than [3]** 22/7 32/20
33/24
**Thank [9]** 3/5 3/10 5/8
26/11 26/14 32/2 36/9
36/13 36/14
**that [317]**
**that's [24]** 3/7 3/11 6/6
7/10 9/2 13/23 13/25
16/1 16/9 16/21 17/22
18/16 19/15 21/16
23/14 23/20 28/9 29/23
30/10 33/2 33/5 33/22
33/25 35/22
**their [14]** 14/13 15/16
17/20 19/5 19/25 28/16
28/22 30/12 30/20
34/10 35/7 35/11 35/17
35/18
**them [11]** 12/3 12/10
20/23 27/17 30/21
33/13 33/21 33/21
35/22 35/23 35/25
**themselves [1]** 21/4
**then [15]** 3/8 6/5 6/5
8/1 11/24 12/5 13/23

17/20 18/6 21/20 25/3
25/7 28/12 29/22 33/13
**theoretically [1]** 19/14
**there [39]**
**these [11]** 13/14 13/21
14/2 14/19 17/4 17/8
17/9 17/11 17/17 18/23
22/12
**they [63]**
**they're [5]** 8/10 8/11
13/15 14/1 34/2
**thing [2]** 13/8 18/21
**things [18]** 9/23 13/2
14/13 14/25 15/1 19/21
20/23 22/13 24/1 24/10
24/21 24/22 25/2 25/9
25/13 27/3 28/1 34/11
**think [37]** 6/15 6/16
8/18 9/19 9/22 9/25
10/5 10/12 11/1 11/18
14/19 14/25 15/24
16/12 18/13 18/15
18/16 18/17 19/3 21/5
21/9 22/4 22/14 22/19
23/5 23/14 23/19 23/20
23/20 24/16 24/16
24/20 25/22 26/12 35/5
35/9 36/9
**thinking [2]** 3/7 9/15
**third [4]** 7/19 19/3 28/8
33/15
**this [83]**
**Thomas [2]** 1/16 2/13
**those [16]** 5/5 8/4
11/12 11/25 12/21
13/25 14/2 17/1 17/7
18/5 18/13 20/17 22/15
23/2 28/10 33/8
**though [4]** 7/15 24/17
28/3 30/19
**three [2]** 20/6 28/12
**through [5]** 10/5 15/8
23/1 29/16 29/17
**time [4]** 9/16 20/13
21/8 24/13
**timing [7]** 5/12 6/6
20/10 22/4 22/5 23/14
33/9
**title [2]** 15/8 37/6
**today [19]** 2/23 3/25
4/6 4/13 4/19 15/10
20/10 21/7 23/16 25/24
26/1 26/3 26/18 26/22
27/18 27/21 31/20 35/4
35/20
**today's [3]** 3/6 3/12
4/10
**together [5]** 7/2 9/17
12/10 13/10 15/4
**tomorrow [2]** 21/7
35/20
**took [1]** 29/8
**total [1]** 29/22
**trace [1]** 30/15

**tracing [1]** 32/9
**transaction [1]** 13/5
**transactions [1]** 13/22
**transcript [6]** 3/21 4/4
4/8 37/7 37/11 37/23
**transferred [1]** 12/3
**trouble [1]** 8/4
**true [1]** 37/7
**try [6]** 14/13 17/25
20/23 22/1 22/13 27/3
**trying [2]** 9/22 10/2
**tug [1]** 30/25
**turn [3]** 2/14 25/15
26/12
**turns [1]** 29/1
**two [9]** 8/5 11/2 13/2
15/4 20/1 22/17 25/21
35/11 35/25
**type [3]** 5/21 13/21
19/2
**typical [1]** 8/15

**U**

**ultimate [2]** 3/15 25/25
**ultimately [1]** 9/8
**Um [1]** 9/12
**uncommon [1]** 13/21
**under [16]** 5/25 10/10
10/16 11/25 12/19
16/16 16/16 16/18 17/2
27/24 29/2 35/1 35/14
36/11 37/11 37/24
**underlying [1]** 13/17
**undermine [2]** 24/17
24/18
**understand [7]** 7/17
11/1 17/11 17/14 20/2
25/14 36/10
**understanding [7]** 7/20
8/4 17/3 20/11 21/15
22/19 23/22
**understands [1]** 34/14
**understood [2]** 16/11
31/24
**undisputed [11]** 11/12
11/14 11/15 11/21 12/1
12/5 12/12 12/17 12/21
14/25 30/20
**undivided [9]** 8/11 10/8
10/14 11/4 11/23 12/22
13/3 15/24 17/23
**unintentionally [1]**
17/19
**unique [2]** 6/19 19/7
19/9
**UNITED [4]** 1/1 37/4
37/6 37/20
**unless [3]** 5/15 5/25
37/23
**unlikely [1]** 31/3
**unnecessary [1]** 33/17
**until [4]** 5/25 6/13 22/7
25/10
**unusual [2]** 6/19 7/1

**up [6]** 9/13 12/13 25/6
25/11 26/15 30/3
**updates [1]** 20/24
**upon [1]** 34/25
**us [25]** 3/9 5/12 5/23
8/14 8/20 17/1 17/8
17/9 17/16 17/17 17/19
17/21 17/25 18/6 18/9
20/19 21/8 23/15 23/18
23/21 23/24 23/25
24/24 26/8 34/12
**USA [2]** 1/3 2/3
**use [6]** 5/14 5/18 7/11
8/16 12/18 18/10
**used [6]** 10/9 10/17
10/18 10/22 15/5 15/10
**using [5]** 5/20 10/13
10/15 10/15 34/5
**utilize [1]** 11/8
**utilized [3]** 3/13 15/7
33/1

**V**

**VA [1]** 1/20
**value [4]** 13/6 14/5
14/13 16/25
**various [1]** 6/23
**verified [1]** 28/20
**verify [1]** 21/10
**version [1]** 30/20
**versus [3]** 2/3 27/9
28/8
**very [11]** 5/10 5/10
12/9 19/20 19/20 27/20
27/25 28/3 32/13 35/3
36/2
**view [2]** 25/23 25/24
**vigorously [1]** 14/5
**violation [1]** 5/21
**volume [1]** 16/14
**volumes [1]** 15/25
**vs [1]** 1/4

**W**

**waiting [1]** 6/13
**want [8]** 4/12 5/2 17/16
17/25 20/3 21/10 22/18
35/5
**wanted [2]** 3/19 4/7
17/12
**wanting [1]** 8/16
**warrant [2]** 27/24 36/6
**was [59]**
**wasn't [3]** 10/17 17/8
17/12
**water [68]**
**water-sharing [1]**
34/12
**way [5]** 14/15 15/12
17/22 25/12 28/15
**ways [2]** 22/8 28/18
**we [118]**
**we're [9]** 10/10 17/7
18/2 18/10 18/11 22/18

23/16 24/21 26/5
**we've [1]** 6/8
**website [2]** 7/1 7/5
**week [1]** 21/7
**welcome [1]** 3/8
**well [22]** 3/17 8/25
15/16 17/20 18/7 18/19
19/23 20/1 21/14 22/10
23/25 24/2 24/20 24/24
25/2 25/7 25/21 27/6
30/2 31/7 35/5 35/12
**wells [20]** 5/15 10/10
10/18 10/19 10/23
10/23 10/24 12/19
13/18 13/19 16/15 17/2
17/5 18/23 18/25 22/12
24/23 24/24 25/1 25/6
**went [2]** 15/2 35/10
**were [29]** 2/25 3/18
9/17 9/22 10/15 12/4
12/9 13/19 13/20 14/3
14/9 15/4 15/23 15/25
15/25 16/4 17/2 17/8
17/8 17/9 17/9 17/11
17/13 18/3 21/18 22/21
22/24 23/23 25/3
**weren't [2]** 10/2 10/14
**what [29]** 8/4 8/13 8/14
15/15 17/7 17/11 17/13
17/13 17/16 18/2 18/8
18/9 19/24 19/25 21/5
23/14 26/18 27/15
29/23 29/25 30/14
30/22 31/13 31/14
35/10 36/4
**whatsoever [1]** 25/23
**when [16]** 7/4 9/13
10/4 12/12 15/4 15/18
17/23 17/24 17/25
19/16 21/1 23/13 27/14
27/17 32/20 33/10
**where [5]** 15/21 16/4
22/5 33/8 35/12
**whether [6]** 17/18
26/20 26/21 26/21
26/22 35/1
**which [28]** 3/14 3/21
4/6 4/8 6/20 6/24 7/22
10/19 11/5 11/22 13/6
17/5 19/6 20/12 21/18
22/13 22/25 23/5 27/15
29/11 30/3 32/9 32/12
32/24 33/2 34/25 35/9
35/12
**while [7]** 3/25 8/12
10/13 11/10 14/25
20/21 25/22
**who [10]** 2/19 4/12
4/21 4/22 5/3 6/22 8/16
8/22 19/24 20/25
**whose [1]** 7/12
**why [7]** 6/6 6/7 8/4
22/13 24/18 31/8 31/7

**W**

**wiggle [1]**  22/5
**will [35]**  2/5 3/12 4/5
4/7 4/8 4/9 4/12 4/15
4/16 4/17 4/22 4/25
5/14 5/17 5/19 5/23 6/5
7/23 9/12 10/3 15/9
18/21 18/24 19/13
20/23 20/24 21/8 23/18
26/3 26/6 26/7 26/9
34/13 34/14 36/10
**willingness [3]**  8/3
9/23 34/23
**WILSON [2]**  1/9 2/2
**wise [1]**  22/4
**withdraw [3]**  11/5
11/16 12/18
**withdrawal [11]**  15/2
15/6 15/10 15/11 15/13
32/25 33/1 33/2 33/4
33/6 34/5
**withdrawing [2]**  16/4
16/10
**withdrawn [2]**  15/20
32/23
**withheld [1]**  29/4
**within [3]**  14/2 23/10
37/8
**within-mentioned [1]**
37/8
**without [5]**  8/21 9/7
26/18 31/5 31/18
**WOODS [2]**  1/17 1/19
**word [1]**  7/11
**work [4]**  22/8 24/25
24/25 28/1
**working [2]**  20/21
25/21
**works [2]**  17/22 17/23
**would [60]**
**wouldn't [3]**  9/10 24/12
30/21
**writing [1]**  29/19
**Wyalusing [21]**  5/15
5/18 5/24 7/22 8/6 11/6
11/17 12/4 12/8 12/9
12/18 16/11 16/14
16/20 18/12 20/15
22/11 23/11 23/17 24/3
32/23

**Y**

**Yeah [2]**  8/8 9/12
**year [3]**  11/20 12/13
20/1
**years [2]**  19/22 20/1
**yes [4]**  5/4 20/18 22/9
23/18
**yet [1]**  34/10
**you [71]**
**you'll [1]**  23/9
**you've [2]**  17/5 26/20
**your [57]**