# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **EPSILON ENERGY USA, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 1:21-cv-00658-JPW** |
| | : | |
| **CHESAPEAKE APPALACHIA, L.L.C.,** | : | |
| | : | |
| **Defendant.** | : | **ELECTRONICALLY FILED** |

## CHESAPEAKE APPALACHIA, L.L.C.'S MEMORANDUM OF LAW IN OPPOSITION TO EPSILON ENERGY USA, INC.'S <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503

Attorneys for Defendant, Chesapeake
Appalachia, L.L.C.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

COUNTER PROCEDURAL & FACTUAL BACKGROUND ............................... 3

    A.   The Joint Operating Agreements and Settlement Agreement ............... 3

    B.   Epsilon's Subsequent Well Proposals and Responses ......................... 6

    C.   Chesapeake's Koromlan 107HC Well Proposal and Responses............ 7

    D.   The Administrative Appeal of Epsilon Operating, LLC's
        Unconventional New Well Permits....................................................... 8

ARGUMENT .......................................................................................... 9

I.    Epsilon Is Not Likely To Succeed on the Merits of Its Claims ................. 11

    A.   Epsilon's purported claims are not predicated on a substantive
        cause of action and fail as a matter of law........................................... 11

    B.   Epsilon's "claims" run contrary to the plain language of the JOAs
        and Settlement Agreement .................................................................. 14

    C.   Epsilon's self-serving allegations of a 30-day extension of the
        commencement date for drilling do not comply with the JOAs......... 16

    D.   Epsilon failed to show a likelihood of success on the argument
        that the Wyalusing Creek water source is a jointly owned asset........ 17

    E.   Epsilon Energy USA, Inc. is not even the permitted entity............... 19

II.  Epsilon Will Not Suffer Irreparable Harm...................................................... 20

    A.   Epsilon already conceded that monetary damages may be
        pursued against Chesapeake for breaches of the JOAs and
        Settlement Agreement ........................................................................ 21

    B.   Epsilon's claims of irreparable harm to its property interests are not
        implicated........................................................................................... 23

III.   Granting Injunctive Relief Will Harm Chesapeake and Interested Third Parties and Is Not in the Public Interest ........................................................ 26

IV.   If an Injunction Is Granted, Epsilon Should Be Required to Post a Significant Bond ........................................................................................... 29

CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Acierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994)..........................................20

*Am. Tel. & Tel Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994)................................................................................................................9

*Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176 (3d Cir. 2008)................................................................................................10

*Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001)................................................................................................................16

*CBM Ministries of South Central Pa. v. Richards*, No. 15-2147, 2017 WL 4150904 (M.D. Pa. Sept. 19, 2017)........................................................12

*Chruby Kowaleski*, 534 F. App'x 156 (3d Cir. 2013) .............................................13

*Continental Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351 (3d Cir. 1980)................................................................................................................23

*Department of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706 (Pa. Cmwlth. 2005) .........................................................................14

*Doe v. Colautti*, 592 F.2d 704 (3d Cir. 1979) .........................................................27

*Drenth v. Boockvar*, No. 20-829, 2020 WL 2745729 (M.D. Pa. May 27, 2020) ...10

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 21-658, 2021 WL 1650268 (M.D. Pa. Apr. 27, 2021) ...........................................9, 10, 12

*Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384 (10th Cir.1978)..............12

*Frank's GMC Truck Ctr., Inc. v. G.M.C.*, 847 F.2d 100 (3d Cir. 1988)................22

*Giordano v. Claudio*, 714 F. Supp. 2d 508 (E.D. Pa. 2010) .................................... 13

*Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116 (3d Cir. 2020) ............................................................................................................ 10

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) ............. 26

*In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137 (3d Cir. 1982) ....... 22, 23

*In re Shop-Vac Mktg. and Sales Pracs. Litig.*, 964 F. Supp. 2d 355 (M.D. Pa. 2013) ................................................................................................................ 14

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989) ........................................................................................................ 20, 22, 29

*Lackner v. Glosser*, 892 A.2d 21 (Pa. Super. 2006) ................................................ 13

*MarbleLife, Inc. Stone Res., Inc.*, 749 F. Supp. 2d 552 (E.D. Pa. 2010) ............... 28

*Medmarc Casualty Ins. Co. v. Arrow Int'l, Inc.*, No. 01-2394, 2002 WL 1870452 (E.D. Pa. July 29, 2002) ...................................................................... 15

*Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236 (3d Cir. 2011) ....... 2, 24, 25

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418 (Pa. 2001)............... 14

*Nationwide Life Ins. Co. v. Franklin Mills Assoc.'s Ltd. P'ship*, No. 13-0038, 2017 WL 1196633 (E.D. Pa. March 31, 2017) .................................................... 13

*Newlife Homecare Inc. v. Express Scripts, Inc.*, No. 07-761, 2007 WL 1314861 (M.D. Pa. May 4, 2007) ........................................................................ 28

*Orion Drilling Co., LLC v. EQT Production Co.*, 826 F. App'x 204 (3d Cir. 2020)................................................................................................................. 16

*Pella Prods., Inc. v. Pella Corp.*, No. 18-01030, 2018 WL 2734820 (M.D. Pa. June 7, 2018) ................................................................................ 29

*Pennsylvania v. President of United States*, 930 F.3d 543 (3d Cir. 2019).............. 11

*Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462 (D.N.J. 2019)................................................................................................ 13

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017).................................. 9, 10

*Robert F. Felte, Inc. v. White*, 302 A.2d 347 (Pa. 1973)......................................... 14

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009) ............................... 25

*Shavei-Tzion v. Cadles of Grassy Meadows, II, LLC*, No. 17-0973, 2017 WL 2463171 (M.D. Pa. June 7, 2017) ................................................. 23

*Syntes, Inc. v. Gregoris*, 228 F. Supp. 3d 421 (E.D. Pa. 2017)............................ 26

*Transcontinental Gas Pipe Line Co. v. Permanent Easements for 5.67 Acres*, No. 17-544, 2017 WL 3412374 (M.D. Pa. Aug. 9, 2017)............................. 27, 29

*Trumbull Corp. v. Boss Const., Inc.*, 801 A.2d 1289 (Pa. Cmwlth. Ct. 2002)................................................................................................ 16

*Walls v. Repsol Oil and Gas USA, LLC*, No. 20-00782, 2020 WL 5502151 (M.D. Pa. Sept. 11, 2020)............................................................... 14

*Washington v. Donley*, 802 F. Supp. 2d 539 (D. Del. 2011).................................. 12

## STATUTES

28 U.S.C. § 2201(a) ................................................................................ 12

25 Pa. Code § 78a.73(c)......................................................................... 28

Fed. R. Civ. P. 65(c) ........................................................................... 11, 28

# INTRODUCTION

Joint Operating Agreements ("JOAs") at the heart of this lawsuit provide that Chesapeake Appalachia, L.L.C. ("Chesapeake") "shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement."  Notwithstanding Chesapeake's agreed role as Operator, Epsilon Energy USA, Inc. ("Epsilon")—without the support or joinder of any other JOA Party—seeks, *inter alia*, an injunction removing Chesapeake as Operator and designating Epsilon as Operator to drill four wells on Chesapeake's active Craige Well Pad.  Epsilon does not allege – because it cannot – that it followed the notice and vote procedure under Article V of the JOAs to remove Chesapeake as Operator.  Instead, Epsilon relies on inapplicable Operator-shifting language in Article VI.2(a).  Because Epsilon does not cite the operative language in its entirety, this Court must examine the actual JOA language to confirm it applies only to proposed operations "to Rework, Sidetrack, Deepen, Recomplete or Plug Back" existing wells.  That is not what Epsilon proposes in this case.  Rather, Epsilon proposes to drill and complete subsequent wells, and its argument for injunctive relief predicated upon Article VI.2(a) therefore collapses under the plain language of the JOAs.

The claim of immediate irreparable harm—belied by Epsilon's own conduct and grounded in misrepresentations regarding the immediacy of other drilling activities—fares no better.  First, Epsilon filed a reservation of rights in the Bankruptcy Court on March 8, 2021 explicitly recognizing that the instant contractual dispute may be remedied through money damages and followed that filing with a predecessor action (i.e., Epsilon II (*see* ECF 44 at 10)) which explicitly sought such damages.  Epsilon would be seeking those alleged damages here if the claim was not released, discharged and now barred by the bankruptcy injunction.  To the extent money damages are unavailable in connection with Epsilon's well proposals, it is because those claims have been released.  (*See* Bankruptcy Order dated April 8, 2021 attached as Exhibit "A.")  That very release cannot now reincarnate and serve as the basis for a finding of irreparable harm.

Epsilon also misrepresents the immediacy of other planned drilling activities and Third Circuit precedent on the application of the irreparable harm factor in the context of mineral rights.  Contrary to Epsilon's assertion, *Minard Run Oil Co. v. U.S. Forest Serv.* did not establish a *per se* rule that cases involving mineral rights establish irreparable harm, but rather held, *inter alia*, that irreparable harm was established where the imminent development of the resources would "depriv[e] [plaintiffs] of the unique oil and gas extraction opportunities afforded them by their mineral rights."  670 F.3d 236, 256 (3d Cir. 2011).  First, Chesapeake's Koromlan

proposal inures to the benefit of all JOA Parties, including Epsilon. Further, given the proposed 2022 spud date of Chesapeake's proposed Koromlan 107HC well, any assertion of immediate and irreparable harm in this matter is wholly without merit. Indeed, Epsilon may re-propose the wells in the absence of immediate action by the Court.

Epsilon's Motion for Preliminary Injunction should be denied.

## COUNTER PROCEDURAL & FACTUAL BACKGROUND

### A.    The Joint Operating Agreements and Settlement Agreement.

Chesapeake, Epsilon and seven absent parties (a "JOA Party" or "JOA Parties")[1] are signatories to JOAs for the exploration and development of oil and gas underlying land in Susquehanna County, Pennsylvania. (Compl. ¶¶ 13-16.) On February 1, 2010, Chesapeake and Epsilon entered into a Farmout Agreement which contained, *inter alia*, a model form operating agreement covering the Poulsen North and Poulsen South Units ("Poulsen JOA"). (*Id.* ¶ 16.) Thereafter, on October 18, 2010, an Operating Agreement covering the Baltzley North Unit

---

[1]  The other relevant JOA Parties to Epsilon's Proposed Wells and Chesapeake's proposed Koromlan 107HC well are:  Equinor USA Onshore Property, Inc. ("Equinor") f/k/a Statoil USA Onshore Properties, Inc; Jamestown Resources, L.L.C. ("Jamestown"); Chief Exploration & Development, LLC ("Chief"); Enerplus Resources (USA) Corporation ("Enerplus"); Radler 2000 Limited Partnership ("Radler"); Tug Hill Marcellus, LLC ("Tug Hill") and Unconventionals Natural Gas, LLC (collectively, the "Absent JOA Parties"). (*See* Compl. ¶¶ 76-77.)

("Baltzley North JOA") and an Operating Agreement covering the Baltzley South Unit ("Baltzley South JOA") were executed. (*Id.* ¶¶ 13-14). Subsequently, on December 16, 2010, an Operating Agreement covering the Craige Unit was executed between Chesapeake, Epsilon and other un-named parties. (*Id.* ¶ 15.)

Chesapeake is the contractually designated "Operator" by the JOA Parties under the JOAs – not the default Operator. (*See* Compl. at Exs. 1-4 at p. 2; *see also* Art. V.A.) Pursuant to the JOAs, any JOA Party may propose to drill (1) any well (*e.g.* a subsequent well); or (2) to "Rework, Sidetrack, Deepen, Recomplete or Plug Back" an existing well, on the Contract Area, by providing written notice of the proposed operation to the JOA Parties. (*Id.* at Art. VI.1.-VI.2.) Upon receipt of a proposal, the receiving party has 30 days to notify the proposing party whether it elects to participate in the cost of the proposed operation. (*Id.* at Art. VI.1.)

Chesapeake can be displaced as "Operator" only pursuant to Article V.B.1 (*e.g.* operator removal) or Article VI.2(a) (*e.g.* operator shifting) of the JOAs. Article V removal requires an affirmative vote by Non-Operators holding a majority interest upon good cause and following written notice and opportunity to cure. (*Id.* at Art. V.B.1.) Epsilon has not even initiated or alleged that it satisfied the Article V removal procedures. (*See generally* Compl.) Instead, Epsilon invokes only Article VI. Operator-shifting under Article VI, however, is expressly limited to proposed operations constituting "rework, sidetrack, deepen, recomplete

4

or plug back." (*See Id.* t Art. VI.2.(a).)[2]  The JOAs do not account for any scenario where a non-operator like Epsilon can propose a subsequent well, receive less than 100% participation from the other JOA Parties, and – if Chesapeake elects not to participate or operate –remove Chesapeake and have itself apponted "Operator." (*See, e.g.,* Art. VI.1, VI.2.(a).)

Finally, pursuant to an October 8, 2018 Settlement Agreement, Chesapeake agreed that Epsilon may propose wells under the JOAs "in accordance with the terms of the JOAs." (*See* Compl. at Ex. 5 at ¶ 8; Epsilon Br. in Supp. Mot. for Prelim. Inj. ("Epsilon Br.") (ECF 6) (Settlement Agreement).)  Additionally, if Chesapeake elects to not participate in a well proposal and declines to serve as operator of a proposed well, Chesapeake agreed to cooperate (i) with permitting and access to jointly owned assets, and (ii) with the party "designated, to the extent permitted under the JOA, as operator . . . ." (*Id.* at ¶ 8d.)

---

[2]  Under Article VI.2(a), the JOA's recognize a limited scenario where – "if Operator is a Non-Consenting Party" – the "Consenting Parties" may "designate one of the Consenting Parties as Operator to perform the work." (*Id.*)  However, the operator-shifting provision in Article VI.2(a) is expressly limited to operations "to Rework, Sidetrack, Deepen, Recomplete or Plug Back." (*Id.*)  Contrary to Epsilon's allegations, the JOAs simply do not provide that "[i]f Chesapeake elects not to participate in a **well proposal** and declines to serve as the operator, however, one of the consenting JOA parties may serve as the operator in conjunction with that well proposal. (Compl. ¶ 25 (citing Exs. 1-4, Art. VI.2(a) (emphasis added).)

**B.**     **Epsilon's Subsequent Well Proposals and Responses.**

On December 22, 2020, Epsilon proposed the following four subsequent wells: Craige N 1LH, Craige N 1UHC, Craige N 4UHC (the "Craige North Wells") and Craige S 3LHC (the "Craige South Well") (collectively the "Proposed Wells"). (*See* Compl. ¶ 74; Epsilon Br. (ECF 6) at Ex. 10 (Epsilon 12/22/21 proposals).) Epsilon proposed the Craige South Well to the following JOA Parties: Chesapeake, Equinor, Chief, Jamestown, Enerplus, Radler, Tug Hill, and Unconventionals. (*Id.* ¶ 76.) Epsilon proposed the Craige North Wells to Chesapeake, Equinor and Jamestown. (*Id.* ¶ 77.)[3] Only Chief, Radler and Tug Hill elected to participate in the Craige South Well and no JOA Party elected to participate in the Craige North Wells. (*Id.* ¶¶ 78-79.) Accordingly, Epsilon did not obtain unanimous participation in its Proposed Wells, and its claim of "100% participation" is false. On February 9, 2021, Epsilon notified Chesapeake that it obtained "100% subscription" of the non-consent interests in the Proposed Wells and that Epsilon will act as "operator" of the Proposed Wells. (*See* Compl. at Exs. 13-14; *see also* Epsilon Br. at 8.)

---

[3] As to the Craige N 1LH, Epsilon provided inconsistent proposals to Chesapeake and Jamestown, informing Chesapeake it would have 53.399% of the working interest and cost and Jamestown would have none but informing Jamestown that it would have 2.5% of the working interest and cost and Chesapeake would have only 50.899%. (See Epsilon Br. at Ex. 10.)

### C.  Chesapeake's Koromlan 107HC Well Proposal and Responses.

On January 19, 2021, Chesapeake notified Epsilon of its proposal to drill the Koromlan 107HC well (the "Koromlan Proposal"). (Compl. ¶ 81 & Ex. 11)  On January 21, 2021, Chesapeake notified the remaining JOA Parties of its Koromlan Proposal.[4]  Only Chief and Epsilon elected not to participate in Chesapeake's Koromlan well.  On March 3, 2021, Chesapeake notified Radler, Tug Hill, Enerplus, Jamestown and Equinor of the available working interest of the JOA Parties who did not consent to the Koromlan Proposal (*i.e.,* Chief and Epsilon) and requested each JOA Party to elect an option related to each party's proportionate share of the non-consent working interest.[5]  On March 8, 2021, Radler, Tug Hill, Enerplus, Jamestown and Equinor each notified Chesapeake of its respective election to carry their own proportionate part of the non-consenting parties' interest.[6]

---

[4] *See* ECF 23-3 (copies of Chesapeake's Koromlan Proposal to Chief, Enerplus, Equinor, Jamestown, Radler and Tug Hill.)

[5] *See* ECF 23-4 (copies of Chesapeake's letters dated March 3, 2021.)

[6] *See* ECF 23-5 (copies of the March 8, 2021 letters from Radler, Tug Hill, Enerplus, Jamestown and Equinor.)

**D.    The Administrative Appeal of Epsilon Operating, LLC's Unconventional New Well Permits.**

Epsilon's well proposals dated December 22, 2021 included, *inter alia*, well location plat detail for each of the Proposed Wells submitted to the Pennsylvania Department of Environmental Protection ("PADEP") dated September 16, 2020. (*See* Epsilon Br. at Ex. 10.)  The well location plat detail identify non-party "Epsilon Operating, LLC" ("Epsilon Operating") as the "Applicant/Well Operator."  (*Id.*)

Thereafter, PADEP issued Epsilon Operating—not Epsilon—an Unconventional New Well Permit for each of the Proposed Wells on December 8, 2020, December 11, 2020 and January 25, 2021 (the "Epsilon Operating Well Permits").[7]  On March 17 and April 6, 2021, Chesapeake filed Notices and Amended Notices of Appeal[8] of the Epsilon Operating Well Permits with the Pennsylvania Environmental Hearing Board (the "EHB").  The Amended Notices of Appeal confirm that Epsilon Operating did not submit an erosion and sediment control plan to PADEP, and that Chesapeake does not itself have an erosion and sediment control permit at the Craige well pad.  (*Id.* ¶ 3d.)  On April 16, 2021, Chesapeake filed Petitions for *Supersedeas*, confirming that the concurrent

---

[7]  *See* ECF 24-2, pp. 8-9, 16-17, 24-25, 32-33.

[8]  *See* ECF 24-2.

operations proposed by Epsilon Operating are unprecedented and asking that the

EHB "rescind or otherwise suspend the Department's approval of Epsilon's well

permit applications during the pendency of these appeals, and until a court of

competent jurisdiction rules that Epsilon does not have the legal right to drill wells

on the Craige well pad."[9]  The EHB subsequently scheduled a *supersedeas* hearing

for May 19, 2021.[10]

## ARGUMENT

A preliminary injunction is an extraordinary remedy which should be

granted only in limited circumstances.  *Am. Tel. & Tel Co. v. Winback & Conserve*

*Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  In determining whether to grant

a motion for a preliminary injunction, district courts consider four factors: (1)

whether the movant establishes a reasonable probability of eventual success in the

litigation; (2) whether the movant will be irreparably harmed if relief is not

granted; (3) the possibility of harm to other interested persons from the grant or

denial of the injunction; and (4) the public interest.  *Reilly v. City of Harrisburg*,

858 F.3d 173, 176 (3d Cir. 2017) (citation omitted); *see also Epsilon Energy USA,*

*Inc. v. Chesapeake Appalachia, L.L.C.,* No. 21-658, 2021 WL 1650268, at *5

(M.D. Pa. Apr. 27, 2021).

---

[9]  *See* ECF 24-3.

[10]  A copy of the EHB's April 26, 2021 Order is attached as Exhibit "B."

The two "most critical" factors are probability of success on the merits and irreparable harm. *Reilly,* 858 F.3d at 179. This Court identified these as the gatekeeper factors. *Drenth v. Boockvar,* No. 20-829, 2020 WL 2745729, at *4 (M.D. Pa. May 27, 2020) (citing *Greater Phila. Chamber of Commerce v. City of Phila.,* 949 F.3d 116, 133 (3d Cir. 2020)). To establish a reasonable probability of success on the merits, the movant must demonstrate that "it can win on the merits." *Reilly* 858 F.3d at 179. With respect to irreparable harm, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* If the likelihood of success and irreparable harm factors are satisfied, the district court proceeds to consider the third and fourth factors and to "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

Where, as here, the relief sought "is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008); *Drenth,* 2020 WL 2745729, at *4. A "preliminary injunction should only be awarded in the 'limited circumstances' where 'the movant, by a clear showing, carries the burden of persuasion.'" *Epsilon Energy USA, Inc.,* 2021 WL 1650268 at *6. (Citation omitted.) "[T]he decision of whether to issue a preliminary injunction is left to the

sound discretion of the district court." *Epsilon Energy USA, Inc.,* 2021 WL
165028 at *6 (citing *Pennsylvania v. President of United States*, 930 F.3d 543, 565
(3d Cir. 2019)).

Epsilon has not and cannot satisfy the gatekeeper factors nor any of the
requirements for the mandatory injunction it seeks.  If Epsilon were to demonstrate
all four factors – which it cannot – this Court should then require Epsilon to post a
substantial bond sufficient to compensate Chesapeake for any losses.  *See, e.g.,*
Fed. R. Civ. P. 65(c).

## I.   Epsilon Is Not Likely To Succeed on the Merits of Its Claims.

Epsilon cannot establish a likelihood of success on the merits of its claims
under the JOAs or the Settlement Agreement, and its requests for injunctive relief
should be denied.

### A.   Epsilon's purported claims are not predicated on a substantive cause of action and fail as a matter of law.

Having released its substantive claim for purported breaches of contract,
Epsilon's Complaint is reduced to procedural and remedial causes of action as
follows: (2) procedural declaratory judgment claims, (2) remedial specific
performance claims, and (1) procedural claim for injunctive relief.  All five fail as
a matter of law.

First, Epsilon's Complaint fails to supply an independent, substantive cause
of action upon which its procedural declaratory judgment claims rest.  While the

11

Declaratory Judgment Act gives a district court the discretion to "declare the legal rights and other legal relations of any interested party seeking such declaration.," 28 U.S.C. § 2201(a), it provides a procedural remedy only and does not create substantive rights. *See Washington v. Donley*, 802 F. Supp. 2d 539, 554 (D. Del. 2011) ("The Act does not create substantive rights for parties; it merely provides another procedure whereby parties may obtain judicial relief.") (quoting *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir.1978)).

Here, Epsilon initially alleged counts for breach of contract in *Epsilon II* and was subsequently ordered by the Bankruptcy Court to dismiss *Epsilon II*. *Epsilon Energy USA, Inc.,* 2021 WL 165028 at *4. Thereafter, Epsilon abandoned its breach of contract claims in the matter *sub judice* and now explicitly disavows any alleged breach of contract occurring prior to Chesapeake emerging from bankruptcy on February 9, 2021. (*See* Compl. at p. 26, n.1 ("For avoidance of doubt, all of Epsilon's claims in all Counts are based on conduct that Chesapeake took (or refused to take) after emerging from bankruptcy on February 9, 2021.")) Although Epsilon released and does not assert a breach of contract claim, Epsilon awkwardly makes references to "breaches" throughout the Complaint. (*See* Compl. ¶¶ 115, 123, 127, 137, 143.) This failure to allege a substantive breach of contract claim mandates dismissal of Epsilon's procedural declaratory judgment claims. *See CBM Ministries of South Central Pa. v. Richards*, No. 15-2147, 2017

WL 4150904, at *4 (M.D. Pa. Sept. 19, 2017) (dismissing declaratory judgment claim because "[t]he court cannot dispense a procedural remedy when that remedy is not linked to an independent claim"); *Raciti v. Rushmore Loan Mgmt. Servs., LLC,* 412 F. Supp. 3d 462, 472 (D.N.J. 2019) ("[H]aving dismissed Plaintiffs' substantive claims, the Court need not separately address Plaintiffs' request for declaratory relief.").

Epsilon's specific performance and injunctive relief claims fare no better. Specific performance is an equitable remedy for breach of contract and not a substantive cause of action. *See, e.g., Nationwide Life Ins. Co. v. Franklin Mills Assoc.'s Ltd. P'ship,* No. 13-0038, 2017 WL 1196633, *11 (E.D. Pa. March 31, 2017) ("specific performance is an equitable remedy for breach of contract, not an independent cause action. We therefore construe Nationwide's specific performance claim as a request for equitable relief on the breach of contract claim in Count One of the Complaint");[11] *see also Giordano v. Claudio,* 714 F. Supp. 2d 508, 532 (E.D. Pa. 2010) (specific performance is an equitable remedy for breach of contract) (citing *Lackner v. Glosser,* 892 A.2d 21, 31 (Pa. Super. 2006)). Injunctive relief is also a form of relief and not a cause of action. *See Chruby Kowaleski,* 534 F. App'x 156, 160 n.2 (3d Cir. 2013) ("[A]n injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is

---

[11] Epsilon does not assert a breach of contract claim. (*See generally* Compl.)

unnecessary."); *In re Shop-Vac Mktg. and Sales Pracs. Litig.*, 964 F. Supp. 2d 355, 365 (M.D. Pa. 2013) ("Defendants are correct that injunctive relief is a remedy, not an independent cause of action."). Put simply, Epsilon's claims, either procedural or improperly styled requests for relief, lack a necessary substantive cause of action.

### B.    Epsilon's "claims" contravene the plain language of the JOAs and Settlement Agreement.

Epsilon's "claims" are belied by the plain language of the unambiguous agreements at issue and may be rejected by the Court now as a matter of law. *See Walls v. Repsol Oil and Gas USA, LLC*, No. 20-00782, 2020 WL 5502151 (M.D. Pa. Sept. 11, 2020) (dismissing declaratory judgment claim based on plain language of lease agreement). Contract interpretation is a question of law which tasks the court to discern the parties' intent through the prism of the written agreement. *Department of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005) (citing *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973)). Where, as here, the plain language of the agreement as written is unambiguous, that plain language must be enforced by the court. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

Chesapeake "shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area" unless another party is properly designated pursuant to Article V.A, or in the case of

proposed operations constituting "Rework, Sidetrack, Deepen, Recomplete or Plug Back," there has been an shift in operator pursuant to Article VI.2(a).  In support of its request that the Court order that "Epsilon has the right to drill and operate the proposed wells," (*see* Compl. at Cts. I, II, III and IV, WHEREFORE), Epsilon relies or purports to rely on Article VI.2(a).  Contrary to Epsilon's allegations, the JOAs plainly do not provide that "[i]f Chesapeake elects not to participate in a **well proposal** and declines to serve as the operator, however, one of the consenting JOA parties may serve as the operator in conjunction with that well proposal." (Compl. ¶ 25 (citing Exs. 1-4, Art. VI.2(a) (emphasis added).)

Nor does the Settlement Agreement alter the JOAs at Article VI or permit Epsilon to become Operator unless designated pursuant to the JOAs.  (*See* Compl. at Ex. 5, ¶ 8.)  Because Epsilon has proposed operations in the form of four subsequent wells, the operator shifting provision in Article VI.2(a) plainly does not apply.  (*See* Compl. at Exs. 1-4 1 at Art.VI.2(a)).  That Epsilon ignores the plain language of Article VI.2(a) does not eliminate its express limitation.

Accordingly, per the plain language of the JOAs and Settlement Agreement, Epsilon has not—and cannot—establish it has been designated Operator pursuant to the JOAs to drill and operate its Proposed Wells.[12]

---

[12] Here, because Epsilon concedes that the JOAs and Settlement Agreement are unambiguous, (*see* ECF 47 at p. 4.), it cannot now argue that extrinsic evidence is required.  *See Medmarc Casualty Ins. Co. v. Arrow Int'l, Inc.*, No. 01-2394, 2002

**C. Epsilon's self-serving allegations of a 30-day extension of the commencement date for drilling do not comply with the JOAs.**

When a party seeks to enforce a contract, "that party must prove that he has performed all of his own obligations under the contract." *Orion Drilling Co., LLC v. EQT Production Co.*, 826 F. App'x 204, 214 (3d Cir. 2020) (quoting *Trumbull Corp. v. Boss Const., Inc.*, 801 A.2d 1289, 1292 (Pa. Cmwlth. Ct. 2002) (citations omitted)).

Epsilon's Well Proposals are dated December 22, 2020 and indicate that "[t]he anticipated spud date for the Well[s] is on or about April 22, 2021." (*See, e.g.,* Epsilon Br. at Ex. 10.) Epsilon's latest Complaint does not allege that it must drill by April 22, 2021. (*See generally* Compl.) Rather, in its letter brief related to the SRBC Commitment Letter, Epsilon claimed (for the first time) that a "title issue has been identified" and that it "will utilize the additional 30 days" and

---

WL 1870452, *5 (E.D. Pa. July 29, 2002) (extrinsic evidence not discoverable where insured "does not allege . . . [the contract at issue] is ambiguous . . . .") (Emphasis added.) Further, even though Epsilon contends that its interpretation of the JOAs and Settlement Agreement may "diverge sharply" from Chesapeake's interpretation, (*see, e.g.*, ECF 47 at pp. 4-6 (Epsilon arguing that "if the Court were to conclude that both Epsilon's and CHK's interpretations of the JOAs or Settlement Agreement are reasonable, an ambiguity exists" and extrinsic evidence should be allowed)), that is insufficient to establish an ambiguity and the introduction of extrinsic evidence. *See Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 95 (3d Cir. 2001) ("[M]ere disagreement between the parties over the meaning of a term is insufficient to establish that term as ambiguous.").

commence drilling activities by May 22, 2021.  (*See* ECF 15 at p. 3.)  Epsilon's self-proclaimed 30-day extension until May 22, 2021 finds no support in the JOAs.

Article VI.1 requires that operations be commenced no later than 90 days after expiration of the notice period.  (*See* Compl. at Exs. 1-4 at Art. VI.1.)  Epsilon's original view of its deadline was April 22, 2021, as confirmed in its Well Proposals.  However, possibly because Epsilon violated the Bankruptcy Court Confirmation Order and Plan, Epsilon concocted a theory to gain an additional 30 days and purportedly extend its deadline to May 22, 2021.  However, the "commencement date may be extended ***upon written notice of same*** by Operator *to the other parties*, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary. . . ."  (*See id.*)

Here, while Epsilon invokes this extension to address "[a] [purported] title related issue," there are no exhibits or evidence which demonstrate that the "Operator" has provided written notice to all JOA parties as required by this provision.  Therefore, Epsilon has not alleged compliance with its purported obligations under the JOA in relation to the 30-day extension, and its claims in this action are not likely to succeed.

### D.   Epsilon failed to show a likelihood of success on the argument that the Wyalusing Creek water source is a jointly owned asset.

A central piece to Epsilon's request for preliminary injunctive relief is a mandatory injunction compelling Chesapeake to "immediately sign the SRBC

commitment letter that it received from Epsilon on February 9, 2021." (*See* Compl. at pp. 30, 33). Epsilon asked this Court to expedite its decision on this request for injunctive relief upon the premise that Epsilon had to have the SRBC commitment letter signed and submitted to PADEP by April 21, 2021.[13] (*See* ECF 15.) During oral argument on April 26, 2021, this Court asked Epsilon if its request for preliminary injunction would be rendered moot if the Court did not compel Chesapeake to sign the SRBC commitment letter. (*See* Tr. (ECF 46) at p. 21, ll.17-22.) Epsilon did not provide this Court with a direct answer. (*Id.* at p. p. 21, l.23 – p. 22, l.16.) Instead, for the first time, Epsilon indicated that perhaps Epsilon may have other options for water, making the SRBC commitment letter preferred but not necessary.

Following argument, this Court, on April 27, 2021, determined that "Epsilon has not met its burden to show that it is likely to succeed on the argument that the Wyalusing Creek water source is a jointly owned asset." (*See* ECF 44 at p. 20.) At this stage, the Court rejected Epsilon's claim that the language of the Farmout Agreement, or its Notice of Request for Transfer, had the effect of Epsilon retaining a 50% ownership in an SRBC permit. (*Id.* at pp. 20-23.) Importantly, the

---

[13] Epsilon's deadline for submission of the SRBC water commitment letter to the PADEP is a moving target across its two lawsuits. During a status conference before this Court on March 26, 2021, in the first lawsuit brought by Epsilon, counsel for Epsilon set a deadline of April 7, 2021. Nearly a month has since passed from that deadline.

Court interpreted the clear language of the March 31, 2010 letter from Epsilon to Chesapeake and subsequent notice of request to transfer filed with the SRBC by Chesapeake which demonstrate that Epsilon transferred its entire interest in the Wyalusing Creek water source to Chesapeake. (*Id.* at p. 20.) Nor could Epsilon counter the fact that SRBC Permit No. 20110607 expressly confirmed Permit No. 20081227 was "supersede[d] and rescind[ed]," and that Chesapeake's permitted withdrawal location differed from the 20081227 location. (*See* Chesapeake Letter Br. (ECF 27) at Exs. A, C at C-17 and C-19.) The Court further noted that the proposed SRBC commitment letter indicates that the "Wyalusing Creek water source is exclusively owned by Chesapeake and is not a jointly owned asset." (*Id.* at p. 21.) Importantly, the Court found that this document is an "undisputedly authentic document that clearly indicates that the Wyalusing Creek water source was exclusively owned by Chesapeake." (*Id.* at p. 22.)

As this Court found on April 27, 2021, Epsilon has not demonstrated a likelihood of success on the merits of its SRBC Commitment Letter request.

### E. Epsilon Energy USA, Inc. is not the permitted entity of the well permits issued by PADEP.

Fundamentally, Epsilon is not the party with purported authority to drill and operate its Proposed Wells according to the Epsilon Operating Well Permits which identify non-party Epsilon Operating, LLC as the "Applicant/Well Operator." (*See* Epsilon Br. at Ex. 10.) Epsilon has not disclosed to this Court that Epsilon Energy

USA, Inc., the named Plaintiff and party to the JOAs, does not actually hold the operative permits.

This is another reason that Epsilon is not likely to succeed on the merits of its request for an order that Epsilon [Energy USA, Inc.] has the right to "drill and operate the Proposed Wells." (Compl. at Counts. I, II, III, and IV, WHEREFORE.)[14]

## II.   **Epsilon Will Not Suffer Irreparable Harm.**

Epsilon's request for a preliminary injunction also fails because Epsilon cannot demonstrate that it will suffer irreparable harm without injunctive relief. A finding of "irreparable harm" constitutes "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Moreover, "the injury created by a failure to issue the requested injunction must be of a peculiar nature, so that compensation in money cannot atone for it." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation

---

[14] Additionally, Epsilon Operating, LLC failed to submit a required "area review survey" with PADEP "at least 30 days prior to the start of drilling." (*See* Decl. of Eric Haskins, attached hereto as Exhibit "C," ¶¶ 15, 19-21.) Epsilon Operating, LLC similarly failed to notify Chesapeake, as an operator of "active, inactive, abandoned, and plugged and abandoned wells identified as part of an area of review survey," at least 30 days prior to the start of drilling as required by 25 Pa. Code § 78a.73(c). *Id.* at ¶¶ 19, 21. Due to these failures, Epsilon Operating, LLC cannot commence drilling activities by May 22, 2021.

omitted).  As implicitly conceded in previous pleadings by Epsilon regarding this very same dispute, monetary damages would be an adequate remedy.  Epsilon cannot now un-ring the money damages bell.  Further, while Epsilon contends that its real property interests will be irreparably harmed if preliminary injunctive relief is not granted, that argument is without merit given the lack of imminent drilling activity by parties other than Epsilon.

A.   **Epsilon already conceded that monetary damages may be pursued against Chesapeake for breaches of the JOAs and Settlement Agreement.**

Two days before commencing *Epsilon II*, docketed to 1:21-cv-433 before this Court, Epsilon filed a "Reservation of Rights . . . To Assert Administrative Expense Claim" on March 8, 2021 before the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") in *In re: Chesapeake Energy Corp., et. al.,* No: 20-33233.[15]  In that pleading, Epsilon informed the Bankruptcy Court of the contractual dispute under the JOAs and Settlement Agreement and, importantly, that it might be "forced to seek monetary relief for damages" against Chesapeake for breaches of the JOAs and Settlement Agreement. *Id.* ¶¶ 4-6.  Thereafter, on March 10, 2021, Epsilon filed a Complaint in *Epsilon II* requesting monetary damages in its breach of contract claims.  (*See, e.g.,* Compl. (ECF 1) at Docket No. 1:21-cv-433, Count II, WHEREFORE (requesting an

---

[15] A copy of Epsilon's Reservation of Rights is attached as Exhibit "D."

"**award [of] actual damages** representing the harm Epsilon has suffered a s a result of CHK's refusal to allow Epsilon to commence operations to drill the Proposed Wells, **together with interest**, costs and fees . . . .); *see also* Counts III-IV, WHEREFORE).) (Emphasis added.)

Epsilon's concession of the availability of monetary damages to the Bankruptcy Court and its request for money damages in the prior action before this Court, contradict and squarely defeat its claim of purported irreparable harm in the case at bar.  Indeed, the sole reason Epsilon is not seeking damages here is that those damages are barred by the Confirmation Order and Plan of the Bankruptcy Court.  Therefore, Epsilon's claim that "damages are incapable of calculation" is generic, inconsistent with the admissions in Epsilon's prior pleadings and should be rejected by this Court.  (*See* Epsilon Br. at 15.)  If the threatened harm is compensable with monetary damages, a petitioner for preliminary injunctive relief has not demonstrated irreparable harm and is not entitled to preliminary injunctive relief.  *See Frank's GMC Truck Ctr., Inc. v. G.M.C.,* 847 F.2d 100, 102-03 (3d Cir. 1988); *In re Arthur Treacher's Franchisee Litig.,* 689 F.2d 1137, 1145 (3d Cir. 1982) ("[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law.")

Further, generic claims of irreparable harm are not sufficient to award preliminary injunctive relief.  *See Instant Air Freight v. C.F. Air Freight, Inc.,* 882

22

F.2d 797, 803 (3d Cir. 1989) (plaintiff failed to prove irreparable harm based on "general statements" of irreparable harm); *In re Arthur Treacher's Franchisee Litig.,* 689 F.2d at 1146 (holding that general statements pertaining to refusal to pay royalties were insufficient to constitute irreparable injury); *Continental Grp., Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir. 1980) (petitioner must demonstrate a "clear showing of immediate irreparable injury" and go beyond a "risk of irreparable harm") (citations and quotations omitted); *see also Shavei-Tzion v. Cadles of Grassy Meadows, II, LLC,* No. 17-0973, 2017 WL 2463171 at *4 (M.D. Pa. June 7, 2017) (denying preliminary injunction where there was no irreparable harm).

This Court should reject Epsilon's generalized claim of irreparable harm which is inconsistent with Epsilon's previous concessions that monetary damages are sufficient.

### B.   Epsilon's claims of irreparable harm to its property interests are not implicated.

Epsilon contends that its property interests will be irreparably harmed because: (1) Epsilon will not be allowed to "promptly commence drilling operations on the Proposed Wells;" and (2) Chesapeake has failed to cooperate with Epsilon to "obtain[] the required water permit." (Epsilon Br. at 15-17.) Epsilon's property interests are not threatened or impaired. First, and most importantly, as demonstrated above, Epsilon is not permitted under the JOAs to

drill and operate its Proposed Wells, including the Craige North Wells in which *no* JOA Party elected to participate. (*See, e.g.,* Compl. ¶¶ 78-79 & Exs. 1-4.) Second, Epsilon does not have necessary drilling permits which would allow it to drill the proposed wells. Those permits are held by non-party Epsilon Operating which is not a party to the JOAs or the Settlement Agreement. (*See* Epsilon Br. at Ex. 10.)

Third, Epsilon's claim that its "mineral interests underlying the units will be irreparably harmed if [it] is unable to promptly drill the Proposed Wells" ignores that Epsilon has no contractual right in the first instance to drill the Proposed Wells as a non-operator under the JOAs where, at least three of the proposed wells has 0% participation, and also ignores the law governing tenants in common under which adequate money damages are available to remedy a purported wrongful exclusion by one co-tenant vs. another. *See, e.g.,* 1 Kuntz, Law of Oil and Gas § 5.6 ("in a jurisdiction in which a co-tenant is privileged to extract minerals without the consent of his co-tenants [Pennsylvania], the action may be one for damages . . . if the co-tenant denies the interests of his co-tenants and attempts to exclude them." (emphasis added)); *id.* ("If, however, the operating co-tenant denies the rights of his co-tenants, his entry is wrongful and he will be liable *for resulting damages.*" (emphasis added)).

Finally, Epsilon stretches the Third Circuit's holding in *Minard Run Oil Co. v. U.S. Forest Serv.* to assert irreparable harm. To be sure, the Court noted that,

because "oil and gas resources are subject to the 'rule of capture,'" injunctive relief "*can be* particularly appropriate." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (emphasis added).   But the Third Circuit did not establish a *per se* rule that cases involving mineral rights establish irreparable harm.   Rather, the Court held that, because "[t]he Service's moratorium on new drilling . . . will cause [Minard] to lose oil and gas rights to other landowners," irreparable harm was established.   *Id.*   Epsilon has not similarly established the imminent loss of unique extraction opportunities.   This is especially true since any JOA Party can re-propose a well upon expiration of a well proposal.[16]   (*See* Compl. at Exs. 1-4 at Art. VI.1.)

---

[16] The other case cited by Epsilon in support of their notion of irreparable harm, *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009), is no more helpful to their cause.   In that case, the Tenth Circuit held that "irreparable harm" had been established because the defendant's failure to transfer record title would "den[y] unfettered ownership of that property," and "result[] in delays, missed opportunities, and, most importantly, unquantifiable damages."   *Id.* at 1211.   The *Siegal* Court noted that "while being denied record title, *RoDa* simply cannot participate in the everyday operations of its own interests, and the damages arising from that denial are incalculable."   *Id.*   This is not a case where Epsilon has alleged denial of a right to "participate in the everyday operations of its own interests."   To the contrary, the JOAs define the parties' agreement and their rights of participation.   Unhappy with those agreements, Epsilon instead seeks a rewrite.

### III.    Granting Injunctive Relief Will Harm Chesapeake and Interested Third Parties and Is Not in the Public Interest.

By contrast, the harm to Chesapeake and Absent JOA Parties resulting from an injunction would be immense. *See Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 445 (E.D. Pa. 2017) ("A basic purpose behind the balancing of the equities analysis is to ensure that the issuance of an injunction would not harm the [nonmovant] more than a denial would harm the movant.") (citations omitted).  For example, and beyond the harm suffered from its incorrect displacement as operator, Chesapeake would also suffer a significant financial harm from the injunctive relief. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 207 (3d Cir. 1990) ("As to the possibility of harm to defendants, given the volatility and competitiveness of financial markets, we cannot take seriously the district court's findings that defendants would not be harmed by an injunction encumbering at least tens of millions of dollars of their assets.").

If an injunction were to be issued, Chesapeake would suffer substantial financial harm.  At the hearing, Chesapeake will establish millions of dollars of financial harm which will result if the wells currently on the Craige well pad are damaged or otherwise plugged and unable to produce as a result of Epsilon's proposed operations.

Moreover, other parties to the JOAs have elected against Epsilon's Proposed Wells and in favor of Chesapeake's Koromlan Well Proposal. (*See* Compl. ¶¶ 78-

79; ECF 23-4 (3/3/21 Chesapeake Letters to JOA Parties).)  Those parties will be harmed if this Court grants the requested relief, displaces Chesapeake as operator, permits the drilling of the Proposed Well, and enjoins Chesapeake's Kromolan Proposal.  *See Doe v. Colautti*, 592 F.2d 704, 706 n.5 (3d Cir. 1979) ("A district court should also consider, when they are relevant, the possibility of harm to third parties from the injunction and the effect of the injunction on the public interest.") (citation omitted). In fact, non-party Equinor voted against Epsilon's Proposed Wells and expressly acknowledged "Chesapeake . . . is the operator" – not Epsilon – under the JOAs.  (*See* Declaration of Equinor Chief Litigation Counsel Carter L. Williams (ECF 32-1) ¶¶ 7-8.)

Finally, while it is undisputed that the need for natural gas supply is a substantial public interest, *see, e.g., Transcontinental Gas Pipe Line Co. v. Permanent Easements for 5.67 Acres,* No. 17-544, 2017 WL 3412374 * 9 (M.D. Pa. Aug. 9, 2017), that interest is better served through both Chesapeake's continued service as operator per the plain language of the JOAs and its Koromlan well.  Unlike Epsilon, Chesapeake has vast experience in operating approximately 453 well pads in Pennsylvania.  (*See* Eric Haskins Decl. at ¶ 13.)  Chesapeake does not conduct concurrent operations with another operator on a well pad, especially its own Craige well pad.  (*Id.* ¶¶ 12, 14.)  Indeed, joint operation on a single well pad would pose significant safety concerns given Epsilon's failure to submit an

Area of Review Survey to PADEP.  (*Id.* ¶ 16 ("The Department identified the purpose of this 'area of review survey' requirement.  Specifically, the Department explained that the potential for 'communication between' wells exists, and that 'communication events pose a substantial threat to waters of the Commonwealth and pose a risk to public health, safety and the environment.'"); ¶ 20 ("According to my review of the Department's online database, Epsilon Operating LLC did not submit a report or area of review survey as required under 25 Pa. Code § 78a.73(c) to Chesapeake.")).

In any event, any asserted public interest by Epsilon cannot trump vindication of rights established by the JOAs, as bargained for by the parties. Indeed, it is well established that "a public interest exists in the enforcement of contracts." *Newlife Homecare Inc. v. Express Scripts, Inc.*, No. 07-761, 2007 WL 1314861, at *9 (M.D. Pa. May 4, 2007); *MarbleLife, Inc. Stone Res., Inc.*, 749 F. Supp. 2d 552, 563 (E.D. Pa. 2010) ("[T]he public interest favors enforcing valid contracts and making parties live up to their agreements.").  Here, as noted above, Epsilon seeks relief which is reliant on an incorrect interpretation of the governing JOAs and Settlement Agreement.  It is against the public interest to grant injunctive relief to countenance such a drastic rewriting of the JOAs.

## IV. If an Injunction Is Granted, Epsilon Should Be Required to Post a Significant Bond.

A court can only issue a preliminary injunction "if the movant gives security in an amount that the court considers propre to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *See* Fed. R. Civ. P. 65(c). This Court has wide discretion to set the amount of the bond. *Transcontinental Gas Pipe Line Co.,* 2017 WL 3412374 at *9. Notably, "[a]n incorrect interlocutory order may harm defendant and a bond provides a fund to compensate incorrectly enjoined defendants." *Instant Air Freight Co.,* 882 F.2d at 804. "[B]ecause of attenuated procedure, an interlocutory order has a higher than usual chance of being wrong[,]" and, therefore, a bond is especially important in the preliminary injunction context. *Id.* Accordingly, "when settling the amount of security, district courts should err on the high side[.]" *See Pella Prods., Inc. v. Pella Corp.,* No. 18-01030, 2018 WL 2734820 at *15 (M.D. Pa. June 7, 2018). Here, Chesapeake will suffer significant financial damages if Epsilon is permitted to drill its Proposed Wells and if it Chesapeake is enjoined from moving forward with its Koromolan Well Proposal. The potential financial harm to Chesapeake is staggering if it is later determined that Epsilon did not have a contractual right under the JOAs to drill its Proposed Wells. At the hearing, if the Court requires evidence on an appropriate amount of a bond, and as noted above, Chesapeake will establish millions of dollars of financial harm which will result if the wells

29

currently on the Craige well pad are damaged or otherwise plugged and unable to produce as a result of Epsilon's proposed operations.

## **CONCLUSION**

Accordingly, Chesapeake Appalachia, L.L.C. respectfully requests that this Court deny Epsilon's motion for preliminary injunction.

Respectfully submitted:

/s/ John B. Dempsey
Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani

Attorneys for Defendant,
Chesapeake Appalachia, L.L.C.

Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
570-342-6100

Date:  May 3, 2021

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)

I, John B. Dempsey, hereby certify that the foregoing Memorandum of Law in Opposition to Motion for Preliminary Injunction is in compliance with Local Rule 7.8(b)(3). The brief contains 7133 words as computed by Microsoft Office Word.

/s/ John B. Dempsey
John B. Dempsey

Date: May 3, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, John B. Dempsey, hereby certify that a true and correct copy of the

forgoing Brief in Opposition was served upon the following counsel of record via

the Court's ECF system on this 3rd day of May 2021:

Gregory J. Krock, Esquire
Elizabeth Thomas, Esquire
McGuireWoods LLP
Tower Two-Sixty
Pittsburgh, PA  15222

Johnathan T. Blank
McGuireWoods LLP
Peter Jefferson Parkway, Suite 350
Chartlottesville, VA 22911

/s/ John B. Dempsey
John B. Dempsey