# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EPSILON ENERGY USA, INC., | : | Civil No. 1:21-CV-00658 |
| Plaintiff, | : | |
| v. | : | |
| CHESAPEAKE APPALACHIA, LLC, | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is a diversity action that calls upon the court to interpret the language of several contracts between two oil and gas companies. The case is presently before the court on a motion for leave to amend filed by Plaintiff Epsilon Energy USA, Inc. ("Epsilon"). (Doc. 96.) For the reasons that follow, the motion is granted.

### BACKGROUND AND PROCEDURAL HISTORY

Epsilon is an Ohio corporation with its principal place of business in Texas. (Doc. 4, ¶ 1; Doc. 72, ¶ 1.) Defendant Chesapeake Appalachia, LLC ("Chesapeake") is an Oklahoma corporation with its principal place of business in that state. (Doc. 4, ¶ 4; Doc. 72, ¶ 4.) Beginning in 2009, Epsilon, Chesapeake, and several other oil and gas companies entered into several Joint Operating Agreements ("JOAs") for the purpose of developing natural gas at locations in Pennsylvania.

Chesapeake is designated as the operator under the parties' JOAs, *see* JOAs, Art. V.A.,[1] but any party to the JOAs may propose the drilling of a new well or propose a project to rework, sidetrack, deepen, recomplete, or plug back a well. (*Id.* Art. VI.1.)

In 2018, a dispute arose over whether Chesapeake was complying with the JOAs with regard to wells proposed by Epsilon. *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, No. 3:18-CV-01852 (M.D. Pa. filed Sept. 20, 2018) [hereinafter *Epsilon I*]. The parties settled the case, and, as part of the settlement agreement the parties agreed that Epsilon could propose new wells under the JOAs "in accordance with the terms of the JOAs." (Plaintiff's Preliminary Injunction Exhibit 7 – Settlement Agreement, ¶ 8.) The parties further agreed that if Chesapeake did not consent to a proposal and did not agree to act as the operator, Chesapeake would "cooperate with the party designated, to the extent permitted under the JOA, as operator" and would "not unreasonably withhold cooperation, including but not limited to, permitting and access to co-owned assets, such as water withdrawal points and impoundments." (*Id.* ¶ 8.d.)

---

[1] The relevant articles and sections of the four JOAs at issue are identically labeled and the parties agree that the relevant provisions of the JOAs are legally indistinguishable. (*See* Preliminary Injunction Transcript, May 11, 2021, Doc. 86, p. 92.) Accordingly, the court will cite the JOAs collectively as "JOAs" throughout this opinion.

The present dispute arises from a proposal that Epsilon made in December 2020 to drill four new wells on the Craige Well Pad ("the Craige Wells"). (*See* Doc. 1.) The proposed wells were labeled as Craige N 1LH, Craige N 1UHC, Craige N 4UHC (collectively, "the Craige North Wells"), and Craige S 3LHC ("the Craige South Well"). The proposal did not receive the unanimous consent of the JOA parties, and Chesapeake refused to participate in the proposal and refused to act as operator for the proposal. (*See* Doc. 1 ¶¶ 76–77, 80; Doc. 72, ¶¶ 76–77, 80.)

On January 19, 2021, Chesapeake advised that it would not participate in the drilling of the proposed Craige Wells and that it would not serve as the operator on the proposed wells. (Doc. 1, ¶ 80.) Chesapeake also stated its position that Epsilon was not allowed to serve as the operator with regard to the proposed wells and refused to grant Epsilon access to the Craige Well Pad on that basis. (*Id.*) In a separate communication on January 19, 2021, Chesapeake proposed a separate well, labeled the Koromlan 107HC ("Koromlan Well"), which Chesapeake asserted would conflict with the proposed Craige Wells. (Doc. 1, ¶¶ 81–82.) Chesapeake announced plans to drill the Koromlan Well in January 2022.

Epsilon brought suit against Chesapeake on March 10, 2021, seeking a declaration that if Chesapeake does not participate in the proposed Craige Wells, Epsilon has the right to drill the wells, Chesapeake is required to allow Epsilon to

3

access and use jointly owned assets, and Chesapeake must cooperate with the operator of the proposed wells in order to facilitate the drilling of the wells. *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, No. 1:21-CV-00433 (M.D. Pa. filed Mar. 10, 2021) [hereinafter *Epsilon II*]. The complaint also brought claims for breach of the parties' JOAs and breach of the parties' settlement agreement in *Epsilon I*, sought a declaration that Chesapeake's proposed Koromlan Well did not comply with the terms of the JOAs, and sought specific performance and injunctive relief. (*Epsilon II*, Doc. 5.)

Epsilon filed a motion for preliminary injunction in *Epsilon II* on March 10, 2021. (Doc. 7.) The court conducted a status conference with the parties on March 26, 2021 to discuss a briefing schedule for the preliminary injunction motion and to schedule a hearing on the motion. During that call, the parties discussed the fact that Chesapeake's filing for Chapter 11 bankruptcy was currently being litigated in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court") and that Chesapeake had recently filed a motion for emergency relief in the Bankruptcy Court seeking to enjoin Epsilon from proceeding with a suit against Chesapeake in this district.

The Bankruptcy Court granted Chesapeake's motion for emergency relief on March 30, 2021, ordering Epsilon to dismiss the case in this district without prejudice and specifying that Epsilon could refile the case subject to conditions

4

laid out by the Bankruptcy Court. (*See Epsilon II*, Doc. 30-1; *see also In re Chesapeake Energy Corp.*, No. 20-33233 (Bankr. S.D. Tex. hearing held Mar. 30, 2021).) Epsilon complied with the Bankruptcy Court's order on April 5, 2021 and filed a notice of voluntary dismissal. (*Epsilon II*, Docs. 31–32.) This court accepted the notice of voluntary dismissal on April 6, 2021 and formally closed the case. (*Epsilon II*, Doc. 33.)

Epsilon filed the instant case on April 9, 2021, moving for a preliminary injunction on the same day. (Docs. 4–5, 7.) The court conducted a preliminary injunction hearing on May 11, 2021 and May 12, 2021, after which the court denied the motion for preliminary injunctive relief on May 14, 2021, finding that Epsilon had not established a likelihood of success on the merits because Epsilon's well proposals had expired and its request for preliminary injunctive relief was therefore moot. (Docs. 81, 89.)

Following the denial of the preliminary injunction, Epsilon formally reproposed the Craige Wells on May 26, 2021. Epsilon filed the instant motion for leave to amend on June 7, 2021, seeking to amend its complaint to include allegations based on the reproposed Craige Wells as well as other information learned during the litigation of this case. (Doc. 96.) Briefing on the motion is complete, and it is ripe for the court's review. (*See* Docs. 97–98, 101.)

5

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district court to exercise subject matter jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000.

## DISCUSSION

A plaintiff seeking to amend a complaint more than twenty-one days after service of a responsive pleading must obtain the consent of the opposing party or leave of the court to do so. Fed. R. Civ. P. 15(a)(1)(B). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court may deny leave to amend, however, where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

Here, Epsilon argues that amendment should be permitted because it is not asserting any new claims and is instead simply updating its claims "to address the newly re-proposed wells and certain information developed through the litigation thus far." (Doc. 97, p. 3.) Epsilon further argues that it has not been dilatory in seeking the amendment because it filed the motion for leave to amend shortly after the court denied its motion for preliminary injunction. (*Id.*) Finally, Epsilon

6

argues that amendment of the complaint would not cause any prejudice to Chesapeake and that denial of the motion would prejudice Epsilon. (*Id.* at 4–5.)

Chesapeake makes three arguments in opposition. First, Chesapeake argues that Epsilon's motion for leave to amend is unduly delayed. (Doc. 98, pp. 4–5.) Chesapeake notes that the court and both parties have expended significant resources litigating the case in the approximately four months since *Epsilon II* was first filed, and argues that "[g]iven the late hour of this dispute as measured in the manhours expended" the court should deny leave to amend. (*Id.* at 5.) Second, Chesapeake argues that the proposed amendment would cause Chesapeake prejudice because Chesapeake's "obligation to file a responsive pleading would be reset," and because filing a responsive pleading would be difficult given the evolving nature of Epsilon's claims. (*Id.* at 5–7.) Third, Chesapeake argues that leave to amend should be denied to the extent that the proposed amended complaint is based on Chesapeake's Koromlan Well proposal because that proposal has expired and the proposed amendment is therefore futile. (*Id.* at 7.)

Epsilon argues in its reply brief that any delay in seeking leave to amend was not undue because case law in the circuit supports a finding that delays of similar duration are not undue and because Epsilon has good reason—the reproposal of the Craige Wells—for the delay. (Doc. 101, pp. 2–5.) Epsilon further argues that Chesapeake has not established prejudice because Epsilon

7

sought leave to amend as soon as possible after proposing the new wells and its proposed amendment "does not substantially change the theory of the case." (*Id.* at 6–7.) Finally, Epsilon concedes that the declaratory relief it seeks with respect to the Koromlan Well "is no longer required" and also states that the reproposed Koromlan Well will extinguish Epsilon's proposed Craige South Well. (*Id.* at 8–9.) Epsilon accordingly agrees to withdraw Count IV from the proposed amended complaint and to withdraw Counts I through III to the extent that they are based on the Craige South Well. (*Id.* at 9.)

After reviewing the parties' arguments, the court will grant the motion for leave to amend because no undue delay, bad faith, dilatory motives, futility, or prejudice is apparent from the record. Chesapeake's argument that Epsilon unduly delayed the filing of the motion is not supported by the record. Epsilon's proposed amendment is based primarily on the reproposal of the Craige Wells, but the need for Epsilon to repropose the Craige Wells did not arise until the court denied Epsilon's motion for preliminary injunction on May 14, 2021. (Doc. 81.) Once the court denied the preliminary injunction motion, Epsilon moved promptly to repropose the Craige Wells and to then move for leave to amend its complaint, accomplishing both tasks by June 7, 2021. (Doc. 96.)

The record also does not support Chesapeake's contention that it will suffer prejudice as a result of Epsilon amending its complaint. Although Chesapeake will

have to file a new responsive pleading, it does not appear to the court that doing so will present any particular difficulty given that Epsilon's theory of the case has not significantly changed. The primary legal issues in the case—whether the JOAs and the parties' settlement agreement allow Epsilon to act as the operator on a proposed well that Chesapeake has declined to participate in, and, if so, whether Chesapeake is obligated to allow Epsilon access to the Craige Well Pad in order to act as operator—remain unchanged.

Finally, Epsilon's decision to withdraw Count IV of the amended complaint and Counts I through III of the amended complaint to the extent that they are based on the Craige South Well resolve Chesapeake's futility argument. Accordingly, the court will grant the motion for leave to amend but dismiss the portions of the amended complaint that Epsilon has agreed to withdraw.

## Conclusion

For the foregoing reasons, Epsilon's motion for leave to withdraw (Doc. 96) is granted. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 2, 2021