# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,     :
                             :
        Plaintiff,                 :
                             :
      v.                       :          NO. 1:21-cv-00658
                             :
CHESAPEAKE APPALACHIA, L.L.C.,  :         JUDGE WILSON
                             :
       Defendant.          :          ELECTRONICALLY FILED

## CHESAPEAKE APPALACHIA, L.L.C.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503

Attorneys for Defendant,
Chesapeake Appalachia, L.L.C.

# INTRODUCTION

Epsilon Energy USA, Inc.'s ("Epsilon") claims contradict the plain language of the parties' Joint Operating Agreements ("JOA") and should be dismissed. Even under Epsilon's theory of contract construction, the claims for declaratory judgment and specific performance, premised on a purported unilateral right to assume operatorship and drill three proposed wells, fail to allege necessary conditions precedent to invoking that right. Specifically, assuming the applicability of the operator-shifting provision of Article VI.2(a), which Chesapeake contests, that provision requires that any shift in favor of a non-operating consenting party shall be at the designation of the consenting parties to the proposal. Epsilon has not – and cannot – allege that any JOA Party consented to its well proposals and designated Epsilon operator. In fact, Epsilon's well proposals and its erroneous interpretation of the JOAs have garnered no support from the other JOA Parties.

Moreover, Epsilon's proposals include commencement dates that exceed the requirements in the JOAs. As to each well proposal at issue in the Amended Complaint, Epsilon states that it will commence the proposed operations at dates well beyond the 90-day time limit confirmed by this Court in its May 14, 2021 Memorandum.

1

Finally, even assuming Epsilon had alleged and satisfied all conditions precedent to become operator for proposals lacking unanimous support, and it has not, the language of the JOAs forecloses a shift of operatorship under the circumstances alleged in the Amended Complaint. According to its plain language, the operator-shifting provision in Article VI.2(a) applies only to proposed operations "to Rework, Sidetrack, Deepen, Recomplete or Plug Back" existing wells. That is not what Epsilon proposes here. Rather, Epsilon's Amended Complaint seeks an Order permitting it to drill subsequent wells which are not within the scope of the operator-shifting language in Article VI.2(a).

For all of the above reasons, Epsilon's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

### A.     The Joint Operating Agreements and Settlement Agreement.

Chesapeake, Epsilon and other absent entities (a "JOA Party" or "JOA Parties") are parties to Joint Operating Agreements (herein "JOAs")[1] for the exploration and development of gas underlying land in Susquehanna County, Pennsylvania.  (Am. Compl. (ECF 104) ¶¶ 10, 12, 13-16.)  The JOA Parties designated Chesapeake as the "Operator" under the JOAs with "full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement."  (Am. Compl. at Exs. 1-4; Art. V.A.)  Chesapeake can resign or be removed as "Operator" pursuant to Article V.B.1 (*e.g.* operator removal).  (*Id.*) Article V removal requires an affirmative vote by Non-Operators holding a majority interest upon good cause and following written notice and opportunity to cure.  (*Id.* at Art. V.B.1.)  Epsilon has not initiated nor alleged that it has satisfied the Article V removal procedures.  (*See generally* Am. Compl.)

Pursuant to the JOAs, any JOA Party may propose operations on the Contract Area, by providing written notice of the proposed operation to the JOA Parties.  Upon receipt of a proposal, the receiving party has thirty (30) days to

---

[1]   The JOAs referenced by Epsilon are the following:  the February 1, 2010 Farmout Agreement which contained, *inter alia*, the Poulsen JOA; the October 18, 2010 Baltzley North JOA and the Baltzley South JOA; and the December 16, 2010 Craige JOA.  (Am. Comp. at ¶¶ 13-16.)

notify the proposing party whether they elect to participate in the cost of the proposed operation. (*Id.* at Art. VI.1.) For all operations that proceed under the JOAs, the party must "actually commence the proposed operation" within 90 days. (*Id.* at Art. VI.1; Article VI.2(a); *see also Epsilon Energy USA, Inc. v. Chesapeake Appalachia, L.L.C.*, No. 21-658, 2021 WL 1945699, at \*10 (M.D. Pa. May 18, 2021) (ECF 80 at pp. 24-25).)[2] The 90-day commencement date for proposed operations that have unanimous consent may be extended for up to thirty days upon written notice to all other parties if "reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter required for title approval or acceptance." (*Id.* at Art. VI.1; *see also Epsilon Energy USA, Inc.,* 2021 WL 1945699 at \*10)

Other than through the removal or resignation processes set forth in Article V, a non-operator can only become an "Operator" under the JOAs when Chesapeake elects not to participate in a proposed operation "to Rework, Sidetrack, Deepen, Recomplete or Plug Back" an *existing* well, and "the Consenting Parties" designate "one of the Consenting Parties as Operator to perform such work." (*Id.*

---

[2] Pursuant to Middle District Local Rule 7.8(a), copies of the unpublished opinions cited herein are reproduced in the attached Appendix.

at Art. VI.2(a))  Rather than re-work to an existing well, the operations proposed by Epsilon and at issue in the Amended Complaint are to drill subsequent wells.

Pursuant to an October 8, 2018 Settlement Agreement ("2018 Settlement Agreement"), Chesapeake agreed that Epsilon may propose wells under the JOAs "in accordance with the terms of the JOAs." (*See* Am. Compl. at Ex. 5 at ¶ 8.)  If Chesapeake elects to not participate in a well proposal and declines to serve as operator of a proposed well, Chesapeake agreed to cooperate (i) with permitting and access to jointly owned assets, and (ii) with the party "designated, **to the extent permitted under the JOA**, as operator . . . ." (*Id.* at ¶ 8d.) (emphasis added).

### B.     Epsilon's May 26, 2021 Well Proposals.

On May 26, 2021, Epsilon re-proposed the following four wells:  Craige N 1LH, Craige N 1UHC, Craige N 4UHC (the "Craige North Wells") and Craige S 3LHC (the "Craige South Well") (collectively the "Proposed Wells").  (*See* Am. Compl. ¶ 129)  Epsilon abandoned its Craige South Well Proposal in the face of a competing proposal, *see* ECF 101 at 8-9, and Counts I-III of the Amended Complaint, to the extent premised on the proposed Craige South Well, have since been dismissed.  (ECF 103.)[3]  Epsilon proposed the Craige North Wells to

---

3  Epsilon also abandoned its declaratory judgment claim at Count IV regarding the Koromlan Well Proposal and that Count has since been dismissed. (ECF 103.)

Chesapeake, Equinor and Jamestown with commencement dates on October 1, 2021 (Craige N 1LH), October 16, 2021 (Craige N 1UHC), and November 8, 2021 (Craige N 4UHC). (*See* Am. Compl. at Ex. 21 at¶ 129.) Chesapeake, Equinor and Jamestown elected not to participate in the Craige North Wells. (*See* Mot. To Dismiss (ECF 109) at Exs. A-C.)

## ANALYSIS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the requirements of Rule 8(a)(2), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A party must provide more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Id.* In considering a motion to dismiss under Rule 12(b)(6), a court should assume the veracity of well-pleaded factual allegations in the complaint and then determine whether they plausibly give rise to an entitlement to relief. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citation and quotation marks omitted). When applying these steps, "a

court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)).

Despite the benefit of multiple complaints and rulings from this Court, Epsilon fails to meet its pleading requirements and its Amended Complaint should be dismissed.

### A. Epsilon Has Failed to Allege Necessary Conditions Precedent to Operator-Shifting Under Article VI.2(a).

Epsilon's Amended Complaint seeks declaratory judgment and specific performance regarding a purported right to drill and operate the Craige North Wells under both the JOAs and the 2018 Settlement Agreement. Since Article V removal is not at issue, Epsilon's request relies upon application of Article VI.2(a)'s operator-shifting provision to provide Epsilon with the purported authority to serve as Operator. Even assuming the applicability of Article VI.2(a) to the Craige North Wells, Epsilon's reliance on Article VI.2(a) is unavailing given its failure to allege satisfaction of conditions precedent to utilizing that provision.

**(1) Epsilon Does Not, and Cannot, Allege That "Consenting Parties" Have Designated It "Operator" As Required by Article VI.2(a).**

The plain language of Article VI.2(a) does not permit Epsilon to appoint itself Operator to drill the Craige North Wells proposed on May 26, 2021. Even assuming, *arguendo*, its applicability to subsequent well proposals, Article VI.2(a)'s operating-shifting provision requires that "Consenting Parties" to a Well Proposal "designate one of the Consenting Parties as Operator" if, like here, the "Operator is a Non-Consenting Party." (Am. Compl. at Exs. 1-4 at Art. V1.2(a).) Epsilon fails to meet this requirement in both allegation and fact.[4] Epsilon's Amended Complaint does not allege that another JOA Party both consented to its Craige North Well Proposals and designated Epsilon as Operator pursuant to Article VI.2(a). Epsilon, by tracking the forgoing contract language, appears to concede throughout the Amended Complaint that a Consenting Party can become Operator pursuant to the Article VI.2(a) only if designated as such by Consenting Parties. (*See* Am. Compl. ¶ 26 ("If CHK elects not to participate in a Well Proposal and declines to serve as the operator, however, ***one of the consenting***

_____

[4] Epsilon acknowledged at the hearing before this Court on May 11, 2021 that Epsilon Operating, LLC – not Epsilon – is the entity permitted by the Pennsylvania Department of Environmental Protection. (*See, e.g.*, May 11, 2021 Hearing, Defendant's Ex. 17; Am. Compl. ¶ 118.) Epsilon Operating, LLC is not a party to any of the JOAs and thus was never eligible to be designated as Operator to perform such work.

***JOA Parties*** may serve as the operator in conjunction with that Well Proposal.")

(emphasis added); Ct. 1, WHEREFORE ("CHK must otherwise cooperate with the

operator ***designated by the consenting parties*** to facilitate those drilling

operations.") (emphasis added)).  In short, because the Amended Complaint fails to

allege that "consenting parties" designated Epsilon as operator, a necessary

precedent to any operator-shift, the Amended Complaint fails to state a claim.

The facts of this matter plainly expose Epsilon's inability to allege that

"consenting parties" designated Epsilon as Operator.  The notice of elections by

Chesapeake, Equinor and Jamestown reveal that Epsilon's Craige North Wells did

not generate consent from any other JOA Party.  (*See* Mot. To Dismiss at Exs. A-

C.)[5]  Article VI.2(a)'s requirement that authorize "Consenting Parties" to designate

"one of the Consenting Parties as Operator to perform such work" is clearly

purposeful.  The JOA drafters distinguish in Article VI.2(a) between requirements

and rights flowing to "Consenting Parties," "a Non-Consenting Party," "one of the

Consenting Parties," "any Consenting Party," and "a Consenting Party."  (Am.

Compl. at Exs. 1-4 at Art. VI.2(a).).  Indeed, this Court recognized the clear

language of Article VI.2(a) of the JOAs applies to "Consenting Parties."  *See, e.g.,*

---

5   In addition, Equinor's June 23, 2021 election form explicitly rejects
Epsilon's theory regarding Article VI.2(a).  (*See* Mot. to Dismiss at Ex. B)
("Equinor recognizes Chesapeake Appalachia, LLC is the operator under the above
referenced Operating Agreements.").

*Epsilon Energy USA, Inc.,* 2021 WL 1945699 at *11 (noting that the JOA Drafters were purposeful in distinguishing between "other parties" and "Consenting Parties" within Article VI.1) (ECF 80 at p. 27). Compliance with this requirement should not be excused, and Epsilon's Amended Complaint, hinging at bottom on a unilateral shift of operatorship unsupported by the plain language of the JOAs, should be dismissed with prejudice on this basis alone.

### (2) Epsilon's Proposals Fail to Allege Commencement Dates In Compliance with Article VI.

Epsilon's May 26 proposals to drill the Craige North Wells also fail on their face to include commencement dates in accord with the requirements of the JOAs. Article VI.1 and Article VI.2(a) both require that the proposing party "actually commence the proposed operation" within 90 days. (*See* Am. Compl. at Exs. 1-4, Art. VI.1; Article VI.2(a).) Epsilon issued the proposals to drill the subject wells on May 26, 2021. The notice period to vote on Epsilon's Proposed Wells concluded on Friday, June 25, 2021. As a consequence, the contractual deadline to commence the proposed operations expires on September 23, 2021. Nevertheless, none of the Proposed Wells include a commencement date within the contractual ninety-day deadline.[6] (*See* Am. Compl. at Ex. 21 at ¶ 129.) (*Id.*)

---

[6] Even assuming, *arguendo*, that the timing provisions in Article VI.1 were applicable, an argument which this Court has rejected, Epsilon's Amended Complaint fails to allege facts necessary to invoke the 30-day extension. *See Epsilon Energy USA, Inc.,* 2021 WL 1945699 at *11 (holding that, "even if a

Epsilon's non-compliance with the timing provisions of the JOAs is

troubling, given the Court's prior ruling on this precise issue.  In its May 14, 2021

Memorandum, the Court examined the timing provisions of both Article VI.1 and

Article VI.2(a).  *See Epsilon Energy USA, Inc.,* 2021 WL 1945699 at **10-12.

Finding that Epsilon's claim for injunctive relief was moot, this Court reasoned

and held that both provisions carried a 90-day time limitation for the

commencement of operations.  (*Id.* at *12.)  Epsilon cannot now avoid the plain

language of the JOAs or this established law of the case.  *See Arizona v.*

*California*, 460 U.S. 605, 618 (1983) ("[T]he [law of the case] doctrine posits that

when a court decides upon a rule of law, that decision should continue to govern

the same issues in subsequent stages in the same case.").

Based on Epsilon's patent failure to satisfy a condition precedent to shift

operator under Article VI.2(a) and to propose operations that meet the contractual

commencement requirements, the Amended Complaint should be dismissed with

prejudice.

---

thirty-day extension could be obtained for a proposal that has received less than
unanimous consent," Epsilon was not entitled because it did not advance evidence
of a title defect and did not provide written notice to other JOA Parties).

**B.** **Epsilon Has Failed to State a Claim Upon Which Relief Can Be Granted Because the Basis of Epsilon's Claims—a Shift in Operatorship Pursuant to Article VI.2(a)—Is Foreclosed by the Plain Language of that Provision.**

Epsilon's claims are grounded on another mischaracterization of the operator-shifting provision in Article VI.2(a). In the Amended Complaint, Epsilon alleges that "[i]f CHK elects not to participate in a Well Proposal and declines to serve as the operator, however, one of the consenting JOA Parties may serve as the operator in conjunction with that Well Proposal." (Am. Compl. ¶ 26.) Epsilon's erroneous characterization of the JOAs may be rejected by this Court now as a matter of law. *See Walls v. Repsol Oil and Gas USA, LLC*, No. 20-00782, 2020 WL 5502151 (M.D. Pa. Sept. 11, 2020) (dismissing declaratory judgment claim based on plain language of lease agreement). Contract interpretation is a question of law which tasks the court to discern the parties' intent through the prism of the written agreement. *Department of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005) (citing *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973)). Where, as here, the plain language of the agreement as written is unambiguous, that plain language must be enforced by the court. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

In support of its request that the Court issue a declaratory judgment or compel specific performance allowing Epsilon to drill and operate its Proposed

Wells, Epsilon purports to invoke the operator shifting language within the first paragraph of Article VI.2(a). Specifically, Epsilon requests a declaration that, if Chesapeake declines to participate or to serve as operator of the Proposed Wells, Epsilon "has the right to drill and operate the proposed new well." (*See* Am. Compl., WHEREFORE, Ct. 1). This argument, however, is belied by the plain language. To be clear, the operator-shifting provision does not apply to Epsilon's proposed *subsequent* wells. Rather, the operator shifting language in Article VI.2(a) is applicable only if the proposed operation is "to rework, sidetrack, deepen, recomplete or plug back" an existing well. (*See* Am. Compl. at Exs. 1-4, Article VI.2(a).) Epsilon's May 26, 2021 Proposed Wells do not constitute such operations, and, per the plain language of the JOAs, Epsilon has not—and cannot—establish a right to declaratory and equitable relief under the JOAs to drill and operate its Proposed Wells. Nor does the Settlement Agreement alter the JOAs at Article VI.2(a) or permit Epsilon to become Operator unless designated pursuant to the JOAs. (*See* Am. Compl. at Ex. 5, ¶ 8.)

Accordingly, pursuant to the plain language of the JOAs and Settlement Agreement, Epsilon has not—and cannot—establish it has been (or can be) designated Operator pursuant to the JOAs.

## CONCLUSION

For the reasons set forth herein, Plaintiff Epsilon Energy USA, Inc.'s

Amended Complaint should be dismissed for failure to state a claim upon which

relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ John B. Dempsey
Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani

Attorneys for Defendant,
Chesapeake Appalachia, L.L.C.

Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
570-342-6100

Date: July 30, 2021

# CERTIFICATE OF SERVICE

I, John B. Dempsey, hereby certify that a true and correct copy of the

foregoing Memorandum of Law in Support of Motion to Dismiss was served upon

the following counsel of record via the Court's ECF system on this 30th day of

July 2021:

Gregory J. Krock, Esquire
Elizabeth M. Thomas, Esquire
McGuireWoods LLP
Tower Two-Sixty
Pittsburgh, PA  15222

Johnathan T. Blank, Esquire
McGuireWoods LLP
Peter Jefferson Parkway, Suite 350
Charlottesville, VA 22911

Yasser A. Madriz, Esquire
McGuire Woods LLP
JPMorgan Chase Tower
600 Travis Street
Suite 7500
Houston, TX 77002-2906

/s/ John B. Dempsey
John B. Dempsey