IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EPSILON ENERGY USA, INC., | : | |
| Plaintiff, | : | |
| v. | : | NO. 1:21-cv-00658 |
| CHESAPEAKE APPALACHIA, L.L.C., | : | JUDGE WILSON |
| Defendant. | : | ELECTRONICALLY FILED |

**CHESAPEAKE APPALACHIA, L.L.C.'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

Epsilon Energy USA, Inc.'s Amended Complaint, grounded on Joint Operating Agreements ("JOAs")[1] and an October 8, 2018 Settlement Agreement which cabins Chesapeake's cooperation "to the extent permitted under the JOA," *see Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC,* Civil No. 1:21-cv-658, 2021 WL 1945699 at *10 (M.D. Pa. May 18, 2021) (further noting that the Settlement Agreement "does not modify the JOAs"), fails to state a claim and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

---

[1] *See* ECF 110 at n.1.

[2] Pursuant to Middle District Local Rule 7.8(a), copies of the unpublished opinions cited herein are reproduced in the attached appendix.

1

Epsilon's claims for declaratory judgment and specific performance fall pursuant to the plain language of the JOAs.

First, Epsilon's claims are premised upon a purported unilateral right to assume operatorship and drill three Craige North Wells (which have no support from any other JOA Party). However, Epsilon fails to allege clear conditions precedent to invoking the contractual operator-shifting. Even assuming, *arguendo*, the applicability of the operator-shifting provision of Article VI.2(a), which Chesapeake contests, Epsilon has not – and cannot – allege that any JOA Party consented to its well proposals and, of course, cannot allege that "Consenting Parties" subsequently designated "one of the Consenting Parties as Operator" as expressly required by the plain language of that provision. Moreover, Epsilon's Craige North Wells include commencement dates that exceed the JOAs' 90-day time limit, a contractual deadline confirmed by this Court in its May 14, 2021 Memorandum.

Second, Epsilon's argument regarding the applicability of Article VI.2(a)'s operator-shifting provision to subsequent well proposals seeks to re-write this provision in its own uncommon view of "common sense" and to confuse the issues by casting the provision as complimenting others within Article VI. These arguments miss the mark. The operator-shifting provision of Article VI.2(a), pursuant to language limiting its application to "rework, sidetrack, deepen,

recomplete or plug back" operations, is plainly not applicable here, and Epsilon's Amended Complaint should be dismissed.

Dismissal of this action is proper under the standard set forth in Federal Rule of Civil Procedure 12(b)(6), but does not mean, as is intimated by Epsilon, that Epsilon is barred from proposing future operations under the JOAs. Nor would dismissal constitute, should the Court elect not to reach the question of whether Article VI.2(a)'s operator-shifting applies to subsequent wells, *see Epsilon Energy USA, Inc.,* 2021 WL 1945699 at *2 n.4, a judicial finding that Chesapeake has the right to exercise what Epsilon refers to as "veto power" over subsequent well proposals that lack unanimous support under Article VI.2(a). Rather, given the facts and claims alleged in the Amended Complaint and the plain language of the JOAs, dismissal would simply confirm that Epsilon is not entitled to relief on its current proposals (*i.e.* the Craige North Wells) because its Amended Complaint fails to allege that other JOA parties consented to the proposals and designated Epsilon to operate and because the proposals include commencement dates that do not meet the JOAs' timing requirements as previously recognized by this Court.

For all or any of the foregoing reasons, Epsilon's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

# ARGUMENT

Epsilon's Amended Complaint, consisting of declaratory judgment and specific performance claims, fails because of the plain and unambiguous language of the JOAs and the 2018 Settlement Agreement. Specifically, Epsilon, a non-operator under the JOAs, has no contractual right to unilaterally designate itself operator to drill wells that no other JOA Party supports and that do not comply with the JOAs' timing provisions. Epsilon's Amended Complaint, dependent on a finding to the contrary, should be dismissed. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001) ("The meaning of an unambiguous written instrument presents a question of law for resolution by the court."); *see also Walls v. Repsol Oil and Gas USA, LLC*, No. 20-00782, 2020 WL 5502151 (M.D. Pa. Sept. 11, 2020) (dismissing declaratory judgment claim based on plain language of lease agreement); *Messner v. Swepi, LP*, No. 13-14, 2013 WL 4417723 (M.D. Pa. Aug. 14, 2013) (same). Further, because Epsilon acknowledges that the JOAs are unambiguous, *see* Opp'n. Br. (ECF 111) at 7 n.3, any proffered extrinsic evidence should be rejected. *See TIG Ins. Co. v. Tyco Intern. Ltd.*, 919 F. Supp. 2d 439, 463 (M.D. Pa. 2013) ("When a court examines a contract containing facially clear language, Pennsylvania law requires that the court interpret the language without using extrinsic evidence").

## I. Epsilon Fails To Allege Conditions Precedent to Operator-Shifting Under Article VI.2(a).

Even assuming the applicability of Article VI.2(a) to the Craige North Wells, Epsilon has failed to allege satisfaction of conditions precedent to invoking the operator-shifting contemplated by that provision. That failure is twofold.

First, the plain language of Article VI.2(a) requires that "Consenting Parties" to a well proposal "designate one of the Consenting Parties as Operator" if, like here, the "Operator is a Non-Consenting Party." Am. Compl. at Exs. 1-4 at Art. V1.2(a). Epsilon's Amended Complaint does not, pursuant to the operator-shifting provision of the JOAs, allege either that another JOA Party consented to its Craige North Wells proposals such that there were "Consenting Parties," or that the "Consenting Parties designate[d] one of the Consenting Parties," namely Epsilon, "as Operator to perform such work." There is no contractual basis for Epsilon to designate itself unilaterally as operator to drill and complete three subsequent wells which lack support from any other JOA Party. The notices of election by Chesapeake, Equinor and Jamestown reveal that Epsilon's Craige North Wells did not generate consent from any other JOA Party and Epsilon is incapable of alleging satisfaction of this condition. *See, e.g.,* ECF 109-2, 109-3, 109-4.

Trapped by the reality that no JOA Party consented and designated it as operator of the Craige North Well proposals, Epsilon offers no compelling argument to save their Amended Complaint. Instead, Epsilon clings to the

argument that the JOAs state, in the definitions section, that words in the singular include the plural and *vice versa*. *See* Opp'n Br. at 16-17. But this argument ignores well-settled Pennsylvania contract law that "the specific controls the general when interpreting a contract," *Southwestern Energy Prod. Co. v. Forest Res., LLC,* 83 A.3d 177, 187 (Pa. Super. 2013) (citations omitted), and conflicts with Article I's (Definitions) acknowledgement that "context" of a specific section defeats this general proposition. Am. Compl. at Exs. 1-4 at Art. I ("**Unless the context otherwise clearly indicates**, words used in the singular include the plural . . .") (emphasis added).

Here, the specific context and language of Article VI.2(a) mandates that, if the Operator (*i.e.* Chesapeake) is a Non-Consenting Party, *only* "Consenting Parties" may shift operator status away from Chesapeake. That language is undeniably purposeful given the care with which the JOA drafters wrote Article VI.2(a) to distinguish between contractual rights exercisable by "Consenting Parties," "a Non-Consenting Party," "one of the Consenting Parties," "any Consenting Party," and "a Consenting Party." Am. Compl. at Exs. 1-4 at Art. VI.2(a); *Epsilon Energy USA, Inc.,* 2021 WL 1945699 at *11 (noting that the JOA Drafters were purposeful in distinguishing between "other parties" and "Consenting Parties" within Article VI.1). Having been invoked and recognized by Epsilon itself in the operative pleading before this Court, *see* Am. Compl. ¶ 26

("If CHK elects not to participate in a Well Proposal and declines to serve as the operator, however, ***one of the consenting JOA Parties*** may serve as the operator in conjunction with that Well Proposal") (emphasis added); Ct. 1, WHEREFORE ("CHK must otherwise cooperate with the operator ***designated by the consenting parties*** to facilitate those drilling operations.") (emphasis added), this requirement, which precludes unilateral removal of the Operator by a JOA party, should not be ignored or excused now. *See Stuart v. McChesney*, 444 A.2d 659, 662 (Pa. 1982) ("Where the contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention.") (quoting 17A C.J.S. *Contracts* § 296(2)). Nor should the 2018 Settlement Agreement be used to justify Epsilon's argument on this, or any, point. As previously noted by the Court, the Settlement Agreement "does not modify the JOAs," *Epsilon Energy USA, Inc.*, 2021 WL 1945699 at *10, and cannot save Epsilon from the plain language of these agreements.

Separately, Epsilon's Craige North Well proposals contain commencement dates well beyond ninety-days, in conflict with the requirements of the JOAs, as recognized by this Court, in this case. *See* Am. Compl. at Ex. 21 at ¶ 129. In its opposition brief, Epsilon doubles down on the proposed commencement dates in its well proposals, arguing that "the Court did not conclude that the proposal for a new well must include a date for commencement of operations that is within 90

7

days of the election period," Opp'n Br. at 18, and that Article XVI, governing horizontal well proposals, sets the deadline for commencing operations by omission. Those arguments are, again, off base.

At the outset, Epsilon's argument concerning the application of Article XVI falls under the principle of contract interpretation that "the specific controls the general when interpreting a contract." *Southwestern Energy Prod. Co., LLC,* 83 A.3d at 187. Specifically, the absence of a deadline in Article XVI for the commencement of operations does not eliminate *any* deadline. Here, Article VI fills that gap and compliments rather than conflicts with the requirements of horizontal well proposals outlined in Article XVI. *See Gaffner Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (Pa. Super. 2007) ("[A]n interpretation that gives effect to all of the contract's provisions is preferred."). As such, contrary to Epsilon's position, there is no conflict between Articles XVI and VI.

Further, this Court previously rejected the argument advanced by Epsilon. In its May 14, 2021 Memorandum, the Court examined the JOA timing provisions in both Article VI.1 and Article VI.2(a). *See Epsilon Energy USA, Inc.,* 2021 WL 1945699 at \*\*10-12. This Court held that *both* provisions carried a 90-day time limitation for the commencement of operations, with Article VI.1 allowing a limited 30-day extension to cure a title defect. *Id.* at \*\*10-11. Even assuming an

entitlement to the 30-day extension, this Court held that Epsilon's proposals had expired because Epsilon had not provided written notice to all other JOA Parties of the purported justification for the extension. *Id.* at \*12.

Epsilon now argues that the Court held *only* that "Epsilon did not have an additional 30 days in which to commence operations," Opp'n Br. at 18, and otherwise made no finding establishing a ninety-day base for commencement of operations. That argument defies this Court's previous interpretation of the timing requirements applicable to Epsilon's proposals and is contradicted by its explicit holding. *See Epsilon Energy USA, Inc.,* 2021 WL 1945699 at \*10 ("The JOAs have two timing provisions that are relevant to the court's mootness discussion"); *see also id.* ("the ninety-day period under both Article VI.1 and Article VI.2 expired on April 22, 2021."). Epsilon's effort to re-write the law of the case should be rejected, and, on this basis alone, the Amended Complaint should be dismissed.[3]

Finally, in a footnote, Epsilon contends that Chesapeake's footnotes 4-6 should be rejected by this Court as raising new arguments. *See* Opp'n Br. at 17,

---

[3] Epsilon also argues that its non-compliance should be excused because Chesapeake allegedly engaged in similar conduct prior to this Court's May 14, 2021 Opinion. Opp'n Br. at 18-19. It is difficult to imagine how this alleged unchallenged conduct by Chesapeake, pre-dating the Court's analysis of the timing requirements and the May 26 proposals at issue in this case, excuses Epsilon's failures in the case at bar, reforms the JOAs, or overcomes the law of the case.

n.6. Chesapeake's footnotes 4-6 do not set forth new substantive arguments. For example, footnote 4 expands upon Chesapeake's substantive argument raised in its brief that Epsilon fails to meet the requirements of Article VI.2(a) by pointing out that Epsilon is not the entity holding DEP permits, as previously admitted by Epsilon during the preliminary injunction proceeding. *See* ECF 110 at p. 8, n.4. Further, footnote 5 reminds that Equinor's non-consent election (attached to Chesapeake's motion to dismiss at ECF 109-3) does not recognize Epsilon as the Operator. *Id.* at p. 9, n.5. Lastly, footnote 6 is an observation that the Amended Complaint fails to allege any facts to invoke the 30-day extension in Article VI.1. *Id.* at p. 10, n.6. In short, Chesapeake did not raise any substantive arguments in footnotes and its substantive arguments related to the JOAs are properly set forth in the body of its brief.

Epsilon's disregard, once again, for the contractual requirements of the JOAs warrants dismissal of the Amended Complaint.

### II. Epsilon's Claims Fail Because the Basis of Those Claims—a Shift in Operatorship Pursuant to Article VI.2(a)—Is Foreclosed by the Plain Language of That Provision.

Given Epsilon's failures discussed above, the Court need not reach the question of whether the operator-shifting provision in Article VI.2(a) applies to proposals related to subsequent wells or is limited to operations to "rework, sidetrack, deepen, recomplete or plug back" existing wells. Specifically, even

10

assuming its applicability, the absence of "Consenting Parties" and delayed commencement dates confirm that Epsilon is not entitled to relief under any circumstances. However, should the Court reach this issue, Epsilon also fails to state a claim under the plain language of the JOAs.

Epsilon's claims mischaracterize and recast of the operator-shifting provision in Article VI.2(a). As noted in Chesapeake's opening brief, that provision is applicable only if the proposed operation is "to rework, sidetrack, deepen, recomplete or plug back" an existing well. *See* Am. Compl. at Exs. 1-4, Article VI.2(a). Epsilon argues that this interposed language within the operator-shifting provision simply "retains the 90-day commencement period for the listed operations." Opp'n Br. at 13. The Court should reject this revisionist argument and its strawman support.

First, Epsilon's interpretation runs contrary to the "fundamental principle of contract interpretation that every phrase of a contract should be given meaning and none should be treated as surplusage if any other construction of the contract is rationally possible." *Equitrans Services, LLC v. Precision Pipeline, LLC*, 154 F. Supp. 3d 189, 199 (W.D. Pa. 2015). Limiting the "rework, sidetrack, deepen, recomplete or plug back" language to simply "retain[ing] the 90-day commencement period for the listed operations," Opp'n Br. at 13, renders that language surplusage given that such operations would, even in the absence of such

language, be subject to this very time limitation. Indeed, Epsilon's whole argument necessarily depends on accepting its erroneous premise that Article XVI.A of the JOAs governs the commencement date for operations associated with drilling a new well and that clarity was therefore needed for operations to "rework, sidetrack, deepen, recomplete or plug back." *See* Opp'n Br. at 13 n.5. As outlined above, this argument is dispelled by sound principles of contract law and was rejected by the prior holding of this Court. *See Epsilon Energy USA, Inc.,* 2021 WL 1945699 at *10 ("The JOAs have two timing provisions that are relevant to the court's mootness discussion").

Attempting to bolster an argument which would render the "rework, sidetrack, deepen, recomplete or plug back" language surplusage, Epsilon moves beyond the operator-shifting language to cite provisions that purportedly support its position. Opp'n Br. at 14-15. Each of these provisions, however, are housed outside the operator-shifting detailed within the first paragraph of Article VI.2(a) and none expand operator-shifting to subsequent wells. In the Amended Complaint, Epsilon alleges that "[i]f CHK elects not to participate in a Well Proposal and declines to serve as the operator, however, one of the consenting JOA Parties may serve as the operator in conjunction with that Well Proposal." Am. Compl. ¶ 26. Epsilon's allegation is not loyal to the plain language of the JOAs. At bottom, Epsilon's claims rest on a unilateral request for operator-shifting under

Article VI.2(a). Given the absence of contractual authority for that shift, Epsilon's claims for specific performance and declaratory judgment should be dismissed.

## CONCLUSION

For the reasons set forth herein and in Chesapeake's opening brief, Plaintiff Epsilon Energy USA, Inc.'s Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ John B. Dempsey
Daniel T. Brier
John B. Dempsey
Nicholas F. Kravitz
Richard L. Armezzani

Attorneys for Defendant,
Chesapeake Appalachia, L.L.C.

Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
570-342-6100

Date: August 19, 2021

# CERTIFICATE OF SERVICE

I, John B. Dempsey, hereby certify that a true and correct copy of the foregoing Reply Brief in Support of Motion to Dismiss was served upon the following counsel of record via the Court's ECF system on this 19th day of August 2021:

        Gregory J. Krock, Esquire
        Elizabeth M. Thomas, Esquire
        McGuireWoods LLP
        Tower Two-Sixty
        Pittsburgh, PA 15222

        Johnathan T. Blank, Esquire
        McGuireWoods LLP
        Peter Jefferson Parkway, Suite 350
        Charlottesville, VA 22911

        Yasser A. Madriz, Esquire
        McGuire Woods LLP
        JPMorgan Chase Tower
        600 Travis Street
        Suite 7500
        Houston, TX 77002-2906

                          /s/ John B. Dempsey
                          John B. Dempsey